IN THE UNITED STATES COURT OF FEDERAL CLAIMS

18-1784
(Chief Judge Sweeney)

ROBERT J. LABONTE,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR
JUDGMENT UPON THE ADMINISTRATIVE RECORD

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:                          RICHARD P. SCHROEDER
                                     Trial Attorney
MAJOR MICHAEL TOWNSEND, JR.          Commercial Litigation Branch
United States Army                   Civil Division
Military Personnel Branch            Department of Justice
U.S. Army Legal Services Agency      P.O. Box 480
                                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     Tel: (202) 305-7788
                                     Richard.Schroeder@usdoj.gov

May 17, 2019                         Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

QUESTIONS PRESENTED ........................................................................................ 1

STATEMENT OF THE FACTS ................................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................................ 6

ARGUMENT .............................................................................................................. 7

I.  Standard Of Review ......................................................................................... 7

    A.  Subject Matter Jurisdiction – RCFC 12(b)(1) ........................................... 7

    B.  Judgment Upon The Administrative Record – RCFC 52.1 ...................... 7

II.  The Court Does Not Possess Jurisdiction To Entertain This Action ................ 9

    A.  Mr. LaBonte Does Not And Cannot Challenge His Court-Martial Conviction
        Or His Resulting Discharge Because Any Such Claims Would Be Barred By
        The Court's Six-Year Statute Of Limitations ........................................... 9

    B.  This Case Would Not Fall Within The Court's Narrow Jurisdiction To
        Entertain A Collateral Attack On A Court-Martial Conviction, Even Had Mr.
        LaBonte Timely Asserted Such A Claim ................................................ 10

    C.  Because Mr. LaBonte Cannot Challenge His Court-Martial Conviction Or
        Resulting Discharge, He Cannot Establish That The Court Possesses
        Jurisdiction To Entertain His Claims For Military Retirement, Pay, Benefits,
        And Allowances ..................................................................................... 12

    D.  Mr. LaBonte Cannot Establish That The Court Possesses Jurisdiction To
        Entertain His Disability Retirement Claim Through Artful Pleading Or
        Otherwise (Count I) ............................................................................... 15

        1.  Mr. LaBonte Cannot Cure The Jurisdictional Deficiencies Concerning
            His Disability Retirement Claim By Disregarding His Court-Martial
            (Count I) .......................................................................................... 15

        2.  Mr. LaBonte's Failure To Request A Disability Board Until More
            Than Seven Years After His Discharge Renders His Retirement
            Claim Untimely ............................................................................... 17

i

3.   The ABCMR Was Not Authorized To Review Mr. LaBonte's Court-
Martial Conviction Or Grant Him Disability Retirement ........................ 19

E.   The Court Does Not Possess Jurisdiction To Entertain Mr. LaBonte's
Ancillary Constitutional Claim (Count II) ........................................................ 27

III. Alternatively, The Court Should Grant The United States Judgment On The
Administrative Record ......................................................................................... 28

A.   The Material Facts Are Not Subject To Dispute ................................................. 28

B.   Mr. LaBonte Cannot Establish That The Board Or The Army Erred In
Denying His Request For Disability Retirement Because His Court-Martial
And Army Regulations Barred Him From Participating In The Disability
Evaluations Systems Process ............................................................................. 29

C.   Even Assuming That Mr. LaBonte Was Not Otherwise Barred From
Receiving Disability Retirement, The Board's Determination That His
Medical Records Established That He Did Not Require Such Processing
Should Be Sustained ......................................................................................... 34

CONCLUSION ............................................................................................................... 37

# TABLE OF AUTHORITIES

## Cases

*Adams v. United States*,
117 Fed. Cl. 628 (2014) ........................................................................................... 7, 8

*Anderson v. United States*,
111 Fed. Cl. 572 (Fed. Cl. 2013) ................................................................................ 28

*Antonellis v. United States*,
723 F.3d 1328 (Fed. Cir. 2013) ................................................................................... 8

*Balboa Ins. Co. v. United States*,
778 Fed. 2d 1158 (Fed. Cir. 1985) .............................................................................. 8

*Banks v. United States*,
741 F.3d 1268 (Fed. Cir. 2014) ................................................................................... 7

*Bolton v. Dep't of the Navy Bd. For Corr. of Naval Records*,
914 F.3d 401 (6th Cir. 2019) ..................................................................................... 21

*Bowling v. United States*,
713 F.2d 1558 (Fed. Cir. 1983) ...................................................................... 10, 11, 12

*Bowman Transp., Inc. v. United States*,
419 U.S. 281 (1974) ..................................................................................................... 8

*Buser v. United States*,
85 Fed. Cl. 248 (Fed. Cl. 2009) ................................................................................. 15

*Caguas Cent. Fed. Sav. Bank v. United States*,
215 F.3d 1304 (Fed. Cir. 2000) ................................................................................... 9

*Central Freight Lines v. United States*,
87 Fed. Cl. 104 (2009) ................................................................................................ 7

*Chambers v. United States*,
417 F.3d 1218 (Fed. Cir. 2005) ...................................................................... 17, 26, 27

*Clayton v. United States*,
225 Ct. Cl. 593 (1980) ................................................................................................ 7

*Cooper v. Marsh*,
807 F.2f 988 (Fed. Cir. 1986) ............................................................................. passim

*Cossio v. Donley*,
   527 Fed. Appx. 932 (Fed. Cir. 2013) ................................................................. 21

*de Cicco v. United States*,
   677 F.2d 66 (Ct. Cl. 1982) ................................................................................. 32

*Dodson v. United States*,
   988 F.2d 1199 (Ct. Cl. 1993) ................................................................................ 8

*Fisher v. United States*,
   81 Fed. Cl. 155 (2008) ...................................................................................... 33

*Flute v. United States*,
   210 Ct. Cl. 34 (1976) ....................................................................................... 13

*Freeman v. United States*,
   875 F.3d 623 (Fed. Cir. 2017) .............................................................................. 7

*Gay v. United States*,
   116 Fed. Cl. 22 (2014) ....................................................................................... 3

*Gossage v. United States*,
   394 Fed. Appx. 695 (Fed. Cir. 2010) ................................................................. 36

*Heisig v. United States*,
   719 F.2d 1153 (Fed. Cir. 1983) .................................................................. passim

*Holley v. United States*,
   124 F.3d 1462 (Fed. Cir. 1997) ........................................................................ 28

*James v. Caldera*,
   519 F.3d 573 (Fed. Cir. 1998) .......................................................................... 27

*Johnson v. United States*,
   125 Fed. Cl. 575 (2016) .................................................................................... 32

*Lechliter v. United States*,
   70 Fed. Cl. 536 (Fed. Cl. 2006) ....................................................................... 27

*Madsen v. United States*,
   48 Fed. Cl. 464 (2000) ...................................................................................... 11

*Martinez v. United States*,
   333 F.3d 1295 (Fed. Cir. 2003) .................................................................... 9, 10

*Martinez v. United States*,
   914 F.2d 1486 (Fed. Cir. 1990) ........................................................................ 21

*McNutt v. Gen. Motors Acceptance Corp.*,
298 U.S. 178 (1936) ........................................................................................ 7

*Moyer v. United States*,
190 F.3d 1314 (Fed. Cir. 1999) ............................................................... 23, 32

*Murphy v. United States*,
69 Fed. Cl. 593 (2006) ................................................................................... 15

*Myers v. United States*,
50 Fed. Cl. 674 (2001) ..................................................................................... 8

*O'Brien v. United States*,
120 Fed. Cl. 85 (2015) ................................................................................... 14

*Piotrowski v. United States*,
722 Fed. Appx. 982 (Fed. 2018) ................................................................. 9, 10

*Real v. United States*,
906 F.2d 1557 (Fed. Cir. 1990) ................................................................. 17, 26

*Rice v. United States*,
31 Fed. Cl. 156 (Fed. Cl. 1994), *aff'd* 48 F.3d 1236 (Fed. Cir. 1995) ................... 14

*Richardson v. Perales*,
402 U.S. 389 (1971) ......................................................................................... 8

*Sabree v. United States*,
90 Fed. Cl. 683 (2009) .................................................................................. 9, 26

*Schlesinger v. Councilman*,
420 U.S. 738 (1975) ....................................................................................... 11

*Schnable v. United States*,
105 Fed. Cl. 610 (2012) ........................................................................... passim

*Shaw v. United States*,
100 Fed. Cl. 259 (2011) .................................................................................... 3

*Skinner v. United States*,
594 F.2d 824 (Ct. Cl. 1979) ............................................................................. 8

*Slesinski v. United States*,
34 Fed. Cl. 159 (1995) ..................................................................................... 4

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........................................................................................... 7

*Van Cleave v. United States,*
   70 Fed. Cl. 674 (2006) ................................................................................. 8, 37

*Wagner v. United States,*
   365 F.3d 1358 (Fed. Cir. 2004) ........................................................................ 33

*Wells v. United States,*
   46 Fed. Cl. 178 (2000) ...................................................................................... 33

*Williams v. Secretary of the Navy,*
   787 F.2d 552 (Fed. Cir. 1986) .......................................................................... 11

*Zavislak v. United States,*
   29 Fed. Cl. 525 (1993) ........................................................................................ 8

## **Statutes**

10 U.S.C. § 1201 (2012) ........................................................................................ 32

10 U.S.C. § 1552 ........................................................................................... 19, 20

10 U.S.C § 1552(a) ....................................................................................... 20, 30

10 U.S.C. § 1552(f) ............................................................................. 21, 30, 32, 33

10 U.S.C. § 1552(f)(1)-(2) ..................................................................................... 31

10 USCS §§ 801 ................................................................................................... 20

28 U.S.C. § 1491(a)(1) ............................................................................................ 9

28 U.S.C. § 2501 .................................................................................................... 9

## **Rules**

RCFC 12(b)(1) ......................................................................................................... 7

RCFC 52.1 ........................................................................................................... 1, 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ROBERT J. LABONTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-1784C |
| | ) | (Chief Judge Sweeney) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY,**
**MOTION FOR JUDGMENT UPON THE ADMINSTRATIVE RECORD**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims

(RCFC), defendant, the United States, respectfully requests that the Court dismiss the complaint

of plaintiff, Robert J. LaBonte, because the Court does not possess jurisdiction to entertain this

action.  Alternatively, pursuant to RCFC 52.1, we respectfully request that the Court grant

judgment upon the administrative record in favor of the United States.

## QUESTIONS PRESENTED

1.      Mr. LaBonte challenges a correction board denial of his request for disability

retirement, despite having been discharged years earlier due to a court-martial conviction.  Mr.

LaBonte does not and cannot challenge his conviction in this Court and any such claim would be

time-barred and otherwise beyond the Court's jurisdiction.  Further, the Army and board are

statutorily precluded from overturning Mr. LaBonte's conviction, which in turn bars him from

receiving disability retirement.  Does the Court lack jurisdiction to entertain Mr. LaBonte's

claims for disability retirement, related pay, benefits, and allowances?

2.      Alternatively, should the Court grant the United States judgment on the

administrative record because the correction board and Army appropriately denied Mr.

LaBonte's request for correction of his records?

## STATEMENT OF THE FACTS

Mr. LaBonte enlisted in the Army in 2002.  AR103 ¶ 2; Compl. 5 ¶ 17.[1]  According to

Mr. LaBonte, he was deployed to Iraq in September 2003, where he was involved in combat and

witnessed disturbing events.  Compl. 6-7 ¶¶ 20-24.  Mr. LaBonte also states that in early 2004,

he was injured in a fall and received medical treatment.  Compl. 7 ¶¶ 26-27.

Mr. LaBonte complains that after his fall, he experienced various symptoms and began to

take painkillers.  Compl. 8 ¶¶ 28-29.  Mr. LaBonte indicates that he continued to experience

problems, "including increased mental distress[,]" after he returned to the United States from

Iraq in or about April 2004, and that "he felt both physically and mentally unable to continue

serving."  *See* Compl. 8-9 ¶¶ 30-31, 37, 38.

Mr. LaBonte contends that in November 2005, shortly before the unit to which he was

then assigned was scheduled to deploy to Iraq, he "went home to Connecticut for his

grandfather's funeral on emergency leave."  Compl. 9-10 ¶¶ 40, 42.  Thereafter, Mr. LaBonte

alleges that "he found himself unable to return to his impending deployment" and "instead

remained at his parents' home for about six months."  Compl. 10 ¶ 42.

Mr. LaBonte claims that in June 2006, after he returned to base, he received "an

administrative, non-judicial punishment, for going AWOL that lowered his rank to private first

class."  Compl. 10 ¶¶ 43-44.  Further, in September 2006 – as a result of his absence from his

unit during the period commencing on or about November 16, 2005, until on or about June 5,

2006 – Mr. LaBonte was charged with desertion, "with intent to shirk important duty, namely

deployment to and service in Iraq[.]"  AR265; *see also* AR643; Compl. 10 ¶ 45.

---

[1] "AR__" refers to a page or pages of the administrative record.  "Compl. __" refers to a page or pages of the complaint.  *See* ECF No. 1.  "Appx__" refers to a page or pages of the appendix attached to this motion.

On October 23, 2006, Mr. LaBonte was found guilty at a special court-martial pursuant to his guilty plea.  AR643 ¶ 1.  He was sentenced to four months confinement at Fort Sill Oklahoma, a reduction in his pay grade, forfeiture of four months of pay, and a bad conduct discharge.  AR643 ¶ 2; *See also* Compl. 10 ¶¶ 46-47.  After the Army Court of Criminal Appeals affirmed his sentence, the Army, on March 13, 2008, separated Mr. LaBonte with a bad conduct discharge.  AR115 ¶ 9; AR643 ¶ 6.

Mr. LaBonte states that his "bad conduct discharge . . . made him ineligible for" Veterans Administration (VA) benefits "and nearly all other post-service care and benefits."  Compl. 10 ¶ 47.  But in September 2014, the Army Discharge Review Board (ADRB),[2] upgraded the "*characterization of service* to general, under honorable conditions."  AR641 (emphasis added).  Mr. LaBonte claims that the ADRB had "upgraded his *discharge status* to general, under honorable conditions."  Compl. 13 ¶ 58 (emphasis added).  Mr. LaBonte's claim that the ADRB upgraded his "discharge status" is mistaken and conflicts with the ADRB's determination.

Specifically, the ADRB "determined that *clemency* was warranted based on" Mr. LaBonte's service record, medical issues, and testimony.  AR641 (emphasis added).  The ADRB, however, noted that a "change in the reason for the discharge" was "not authorized under the Federal statute."  AR641.

This is reflected in Mr. LaBonte's updated certificate of release or discharge (certificate of discharge) from active duty, dated November 22, 2014, showing his character of service as general, under honorable conditions, and noting that Mr. LaBonte's service characterization was upgraded on September 23, 2014.  *See* DD Form 214 (DD-214), AR637, blocks 18, 22.b, 24.

---

[2]  "The ADRB reviews discharges of former soldiers to determine whether they are proper and equitable."  *Gay v. United States,* 116 Fed. Cl. 22, 29 (2014) (citing 10 U.S.C. § 1553; 32 C.F.R. § 581.2; *Shaw v. United States,* 100 Fed. Cl. 259, 262 (2011)).

Previously, his character of service was listed as bad conduct.  *See* AR638, block 24.  But the reason for his separation remained unchanged on the updated form.  *Compare* AR637 and AR638 (blocks 23, 28).

On November 17, 2015, Mr. LaBonte petitioned the Army Board for Correction of Military Records (ABCMR or board)[3] for: (1) retroactive medical retirement; (2) an upgrade to an honorable discharge; and (3) amendment of "his separation documents to erase any indication that he was court-martialed[,]" among other things.  AR141, AR148; *see* Compl. 13 ¶ 59.

Mr. LaBonte acknowledges that on October 19, 2017, the ABCMR amended his "DD-214 to reflect some of his military accomplishments but denied his discharge upgrade request" because the board lacked authority "to remove his court-martial conviction."  Compl. 13 ¶ 61; *see also* AR115 ¶¶ 12-13.  The board found that it was statutorily "not empowered to set aside a conviction."  AR115 ¶ 12 (citing 10 U.S.C. § 1552).  And the board concluded that because Mr. LaBonte's "discharge resulted from his court-martial conviction, he [was] ineligible for processing through the" Physical Disability Evaluation System (PDES) "for possible medical evaluation" and, as a result, there was "no basis to amend [his] DD Form 214 by changing the reason and authority for separation."  AR115 ¶¶ 12-13.

In a November 27, 2017 memorandum, the Deputy Assistant Secretary of the Army (Review Boards) referred the ABCMR's decision to the Office of the Surgeon General of the Army to determine whether Mr. LaBonte "should have been retired or discharged by reason of physical disability through the Integrated Disability Evaluation System (IDES)."  AR81 ¶ 2.  The referral memorandum states, in part, as follows:

---

[3]  "The ABCMR was established to implement the Secretary of the Army's discretionary authority to correct a soldier's military records."  *Slesinski v. United States,* 34 Fed. Cl. 159, 163 (1995).

> Should a determination be made that the applicant should have
> been separated under the IDES, these proceedings will serve as
> authority to void his *administrative* separation and to issue him the
> appropriate separation retroactive to his original separation date,
> with entitlement to all back pay and allowance and/or retired pay,
> less any entitlements already received.

AR81 ¶ 2.b (emphasis added).  Mr. LaBonte, however, was separated as a result of his court-martial.  *See* AR637, block 28.

As a result of the referral, Mr. LaBonte states that "the Army began processing [him] through the Disability Evaluation System (DES)."  Compl. 2.  According to his complaint, Mr. LaBonte "submitted medical records and other evidence" and "[t]wo Army physicians examined him."  Compl. 2.  Nonetheless, he complains that "rather than completing the DES process, the Army abruptly terminated Mr. LaBonte's application."  Compl. 2, *see also* Compl. 18 ¶ 84 (alleging that Mr. LaBonte's Physical Evaluation Board officer, on May 21, 2018, "informed Mr. LaBonte that Dr. [Eric] Doane had unilaterally denied Mr. LaBonte access to the MEB" and "that Mr. LaBonte would not be permitted to appeal this decision through the regular DES channels").

The ABCMR, on June 21, 2018, issued a final decision denying Mr. LaBonte's claim for medical retirement.  AR73; *see also* Compl. 20 ¶ 99.  The board found that based on Mr. LaBonte's medical records, he "did not require disability processing at the time of separation from active duty service."  AR73.  And on September 7, 2018, the ABCMR reaffirmed the June 21, 2018 decision.  AR1; *see also* Compl. 21 ¶ 102.

Mr. LaBonte commenced this action on November 20, 2018.  ECF No. 1.  Mr. LaBonte does not seek to overturn his court-martial conviction.  Rather, in Count I of his complaint, Mr. LaBonte challenges the ABCMR's decision to deny him medical retirement.  Compl. 21 ¶ 106.

And in Count II, Mr. LaBonte asserts a due process claim pursuant to the Fifth Amendment of the Constitution.  Compl. 24 ¶ 125.  Mr. LaBonte alleges that the Army prematurely terminated the Disability Evaluation System process relating to his request for medical retirement.  Compl. 2, 24 ¶¶ 122, 125.  And Mr. LaBonte acknowledges that any jurisdiction over his constitutional claim is ancillary.  *See* Compl. 24 ¶ 120.

Mr. LaBonte seeks (1) back pay, retirement pay, benefits, and allowances, (2) an injunction directing the board to "correct" his military records to reflect "medical retirement by reason of permanent disability for" post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI) of at least 80 percent, and (3) costs and attorney fees.  Compl. 25 (prayer for relief).

For the reasons set forth below, we respectfully request that the Court dismiss Mr. LaBonte's complaint for lack of jurisdiction.  Further, to the extent that any aspect of Mr. LaBonte's complaint may survive a jurisdictional dismissal, the Court should grant the United States judgment on the administrative record.

## SUMMARY OF THE ARGUMENT

Mr. LaBonte does not challenge his court-martial conviction in this Court, nor could he do so, because and such challenge is time-barred and otherwise would be beyond the Court's jurisdiction.  Further, the Army and the ABCMR are statutorily precluded from overturning Mr. LaBonte's conviction, which in turn bars him from receiving disability retirement.  Given these facts, the Court does not possess jurisdiction to entertain Mr. LaBonte's claim for disability retirement or the related claims in his complaint for pay, benefits, and allowances.

In the alternative, the Court should grant the United States judgment on the administrative record because the correction board and Army appropriately denied Mr. LaBonte's request for disability retirement and for the other relief that he seeks.

# ARGUMENT

## I.   Standard Of Review

### A.   Subject Matter Jurisdiction – RCFC 12(b)(1)

The existence of jurisdiction is a threshold matter in every case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  The plaintiff bears the burden of establishing jurisdiction.  *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  Once jurisdiction is challenged, a plaintiff cannot rely upon mere allegations; the plaintiff must bring forth competent proof to establish jurisdiction.  *See McNutt*, 298 U.S. at 189.  If the Court does not possess subject-matter jurisdiction over the plaintiff's claim, the case should proceed no further.  *Central Freight Lines v. United States*, 87 Fed. Cl. 104, 107 (2009).

"When . . . a motion to dismiss 'challenges the truth of the jurisdictional facts,' the Court of Federal Claims 'may consider relevant evidence in order to resolve the factual dispute. . . .'  In such cases, the plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Freeman v. United States,* 875 F.3d 623, 627-28 (Fed. Cir. 2017) (quoting *Banks v. United States,* 741 F.3d 1268, 1277 (Fed. Cir. 2014)).  Mr. LaBonte cannot satisfy that burden given the indisputable facts of this case.

### B.   Judgment Upon The Administrative Record – RCFC 52.1

"'[R]eview of the administrative decision is limited to determining whether the . . . action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced.'"  *Heisig* v. *United States,* 719 F.2d 1153, 1156 (Fed. Cir. 1983) (quoting *Clayton v. United States,* 225 Ct. Cl. 593, 595 (1980)).  "The standard of review is narrow."  *Adams v. United States,* 117 Fed. Cl. 628, 653 (2014).  The Court does not

serve as a "'super correction board.'" *Van Cleave v. United States,* 70 Fed. Cl. 674, 678 (2006) (quoting *Skinner* v. *United States,* 594 F.2d 824, 830 (Ct. Cl. 1979)).

"Where the agency is entitled to exercise its discretion . . . great deference is to be given to its decisions, and the plaintiff has an unusually heavy burden of proof in showing that the determination was arbitrary and capricious." *Zavislak v. United States,* 29 Fed. Cl. 525, 532 (1993) (citing *Balboa Ins. Co. v. United States,* 778 Fed. 2d 1158, 1164 (Fed. Cir. 1985)).  And the Court will "'uphold a decision of less than ideal clarity if the agency's path may reasonably discerned.'" *Adams,* 117 Fed. Cl. at 653 (quoting *Bowman Transp., Inc. v. United States,* 419 U.S. 281, 286 (1974)).

Consistent with the deferential standard of review, the Court "does not reweigh the evidence, but determines "whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig,* 719 F.2d at 1157.  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Myers* v. *United States,* 50 Fed. Cl. 674, 688 (2001) *(*quoting *Richardson* v. *Perales,* 402 U.S. 389, 401 (1971) (internal citations omitted)).  "'When substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result.'" *Van Cleave*, 70 Fed. Cl. at 678-79 (citations omitted).

In addition, "military administrators are presumed to act lawfully and in good faith . . . and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Ct. Cl. 1993); *see also Antonellis v. United States,* 723 F.3d 1328, 1332 (Fed. Cir. 2013) ("judges are not given the task of running the Army") (citation omitted).

**II.**     **The Court Does Not Possess Jurisdiction To Entertain This Action**

    **A.**     **Mr. LaBonte Does Not And Cannot Challenge His Court-Martial Conviction Or His Resulting Discharge Because Any Such Claims Would Be Barred By The Court's Six-Year Statute Of Limitations**

"Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501.  The statute of limitations is jurisdictional.  *See Sabree v. United States,* 90 Fed. Cl. 683, 691 (2009) ("six-year time bar on actions against the United States is jurisdictional, because filing within the six-year period is a condition of the waiver of sovereign immunity in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1)") (citing *Caguas Cent. Fed. Sav. Bank v. United States,* 215 F.3d 1304, 1310 (Fed. Cir. 2000)) (additional citations omitted).

A claim for back pay arising from an alleged unlawful discharge accrues when the service member is discharged.  *See Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (citations omitted).  "The service member . . . has the right to sue immediately upon discharge . . . ."  *Id.*  "If the plaintiff does not file suit within the six-year statute of limitations prescribed in section 2501, the plaintiff loses all rights to assert a claim stemming from the challenged discharge."  *Id.* at 1304 (citation omitted).  And the statute of limitations for a collateral attack on a court-martial conviction is six years from the date a conviction became final.  *See Piotrowski v. United States,* 722 Fed. Appx. 982, 985 (Fed. 2018) (not published in West's Federal Reporter).

On March 13, 2008, the Army discharged Mr. LaBonte as a result of his court-martial conviction.  AR109 ¶¶ 9-10.  By that time, Mr. LaBonte's court-martial conviction had become final.  *See* Appx1-2 (July 11, 2007 decision of Army Court of Criminal Appeals affirming Mr.

LaBonte's conviction and sentence; July 16, 2007 letter advising Mr. LaBonte of 60-day period

to petition the Court of Appeals for the Armed Forces for review, which to our knowledge Mr.

LaBonte did not pursue).

Yet, Mr. LaBonte did not commence this action until November 20, 2018, more than 10

years after his court-martial conviction became final and he was discharged.  *See* ECF No. 1.

Consequently, the Court would not possess jurisdiction to entertain any claim – direct or indirect

– by Mr. LaBonte challenging his court-martial or subsequent discharge as unlawful or improper

because the statute of limitations has long expired.  *See Piotrowski v. United States,* 722 Fed.

Appx. 985-986 (affirming dismissal of "collateral attack on his court-martial conviction" as

barred this Court's six-year statute of limitations); *Martinez,* 333 F. 3d at 1303.

Although Mr. LaBonte does not appear to challenge his court-martial or related discharge

in this action, as we discuss in greater detail below, the fact that he cannot do so precludes him

from obtaining disability retirement as a result of this action.

### B.    This Case Would Not Fall Within The Court's Narrow Jurisdiction To Entertain A Collateral Attack On A Court-Martial Conviction, Even Had Mr. LaBonte Timely Asserted Such A Claim

The jurisdiction of Federal civil courts to review collateral attacks on court-martial

judgments is narrow.  *See Bowling v. United States,* 713 F.2d 1558, 1560 (Fed. Cir. 1983)

("judgments by courts-martial, although not subject to direct review by federal civil courts, may

nevertheless be subject to narrow collateral attack in such courts on constitutional grounds if the

action is otherwise within a court's jurisdiction"); *Schnable v. United States,* 105 Fed. Cl. 610,

615 (2012) (quoting *Bowling, id.* (additional citations omitted)).

"As an initial matter, it is critical to recognize that civilian courts owe 'extreme

deference' to judgments of the military court system."  *Schnable*, 105 Fed. Cl. at 616 (quoting

*Madsen v. United States,* 48 Fed. Cl. 464, 468 (2000)).  Because the military has an "'overriding interest in maintaining order within its own house, federal courts have properly avoided intervention and interference with respect to disciplinary actions taken by commanders or by military courts.'"  *Id.* (quoting *Williams v. Secretary of the Navy,* 787 F.2d 552, 561 (Fed. Cir. 1986); *Schlesinger v. Councilman,* 420 U.S. 738, 753 (1975) ("acknowledging 'the deference that should be accorded the judgments of the carefully designed military just system established by Congress'")).

Consequently, "there has . . . been developed a clear rule regarding exhaustion of military remedies" which "'requires that, before seeking to collaterally attack his court martial conviction in the civilian courts," the plaintiff first "'must have exhausted all remedies available to him within the military.'"  *Schnable,* 105 Fed. Cl. at 616 (quoting *Williams,* 787 F.2d at 558).  As stated in *Cooper v. Marsh,* "a plaintiff has exhausted his military remedies when he has attempted to obtain review in every forum which could provide relief."  807 F.2d 988, 991 (Fed. Cir. 1986) (citing *Bowling,* 713 F.2d at 1560-61).

In Mr. LaBonte's brief summary of the court-martial proceedings, he does not claim to have exhausted his military remedies concerning his court-martial conviction.  *See* Compl. 10 ¶¶ 45-47.  Further, although the Army Court of Criminal Appeals affirmed Mr. LaBonte's court-martial conviction and sentence, *see* AR643 ¶ 5; Appx1, we are unaware of any petition by Mr. LaBonte to obtain further review from the Court of Appeals for the Armed Forces (CAAF), and are unaware of any other information indicating that Mr. LaBonte exhausted that avenue of appeal.  *See* Appx2 (letter advising Mr. LaBonte of right to seek CAAF review).  Mr. LaBonte's failure to exhaust his military remedies to challenge his conviction precludes him from collaterally attacking his court-martial conviction in this action.  *See Cooper,* 807 F.2d at 991.

**C.    Because Mr. LaBonte Cannot Challenge His Court-Martial Conviction Or Resulting Discharge, He Cannot Establish That The Court Possesses Jurisdiction To Entertain His Claims For Military Retirement, Pay, Benefits, And Allowances**

Mr. LaBonte seeks (1) back pay, retirement pay, benefits, and allowances, and (2) an injunction directing the ABCMR to "correct" his military records to reflect "medical retirement by reason of permanent disability for" post-traumatic stress disorder and . . . TBI . . . of at least 80" percent.  Compl. 25 (prayer for relief).  Mr. LaBonte does not seek that relief in a vacuum. Rather, Mr. LaBonte was convicted pursuant to a court-martial that he cannot collaterally attack in this case because any such claim is time-barred and otherwise not within the jurisdiction of the Court, for reasons previously explained.

The existence of his Court martial conviction presents a legal bar to obtaining relief from in this action.  Mr. LaBonte did not exhaust his military remedies because he did not "attempt[] to obtain review in every forum which could provide relief."  *Cooper,* 807 F.2d at 991 (citing *Bowling,* 713 F.2d at 1560-61).  The fact that it is now too late for him to do so does not change this.  In particular, notwithstanding that he was notified on June 16, 2007, nearly 12 years ago, that he had the "right to petition the United States Court of Appeals for the Armed Forces for a grant of review" within 60 days (measured from the following day), there is no indication that he pursued or exhausted that avenue of appeal after the Army Court of Criminal Appeals affirmed Mr. LaBonte's conviction and sentence.  *See* AR643; *see also* Appx1-2.  Thus, Mr. LaBonte has failed to satisfy a jurisdictional prerequisite for this Court to exercise jurisdiction over any collateral challenge to his court-martial conviction.

In *Schnable,* the plaintiff sought "military back pay and allowances" and challenged "the validity of his court-martial conviction and subsequent dishonorable discharge from the United States Navy."  105 Fed. Cl. at 611-612.  The plaintiff alleged that irregularities during the

military appeal process violated his constitutional and statutory rights. *Id.* As a result, he contended that his discharge was unlawful and sought substantial back pay and allowances. *Id.*

The Government argued that the plaintiff had "failed to exhaust his remedies within the military court system as to his claims, and thus this Court [did] not possess jurisdiction over them." *Id.* (citation and internal quotation marks omitted). In particular, the Government argued that the plaintiff had "yet to present his constitutional claims to any military tribunal" and that because he "failed to exhaust his remedies within the military justice system," the plaintiff could "not pursue in this Court a collateral attack upon his court-martial convictions." *Id.* at 616 (citation and internal quotation marks omitted).

The Court agreed, explaining that "a plaintiff 'must have given the military courts an opportunity to pass upon the claims he . . . asserts as bases for attacking his court-martial.'" *Id.* (quoting *Cooper v. Marsh,* 807 F.2d at 990 (Fed. Cir. 1986)). And the Court expressly observed that it "'does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decision of the court-martial tribunal.'" *Id.* (citing *Flute v. United States,* 210 Ct. Cl. 34, 38 (1976)). Consequently, the Court dismissed the complaint for lack subject matter jurisdiction. *Id.* at 617. In doing so, the Court held that until the plaintiff "exhausted his remedies within the military justice system," the Court would lack subject matter jurisdiction. *Id.* at 617.

Importantly, although the Court in *Schnable* primarily focused on the court-martial, it dismissed the entire complaint for lack of jurisdiction which, as discussed above, included plaintiff's challenge to his discharge and his claim that he was entitled to back pay and allowances. *See id.* at 614, 617. In other words, the Court's lack jurisdiction over the court-

martial conviction, deprived the Court of jurisdiction to entertain the other aspects of his complaint, which were predicated on the plaintiff overturning his court-martial conviction.

The Court should reach the same result in this case, which presents analogous circumstances.  Mr. LaBonte makes no showing that he exhausted all of his military justice system remedies.  For that reason, and because the statute of limitations has long expired, the Court should dismiss the other aspects of Mr. LaBonte's complaint – including Mr. LaBonte's claims for medical retirement, back and pay – because those claims cannot stand on their own.

In particular, Mr. LaBonte's claims for disability retirement, back pay, and benefits no less depend on overturning his court-martial than the claims in *Schnable*.  Indeed, although Mr. LaBonte does not seek to overturn his court-martial in this action, he nonetheless reveals the connection to his military retirement claim when he contends that the "Army should have . . . granted him medical retirement" but "instead . . . court-martialed [him] and separated him with a bad conduct discharge."  *See* Compl. 1.

And Mr. LaBonte's complaint contains yet another major flaw.  He severely overreaches in requesting that the Court direct the board to correct his record that he was "medically retired by reason of permanent disability for PTSD and TBI" with a disability rating of not less than 80 percent.  The Court is not "a 'super correction board,' with responsibility for determining whether an officer is fit to serve."  *O'Brien v. United States,* 120 Fed. Cl. 85, 93 (2015).  Consequently, the Court does not possess "the primary equitable jurisdiction necessary to order the retirement of an individual from the military in the first instance."  *Rice v. United States,* 31 Fed. Cl. 156, 164 (Fed. Cl. 1994), *aff'd* 48 F.3d 1236 (Fed. Cir. 1995) (table).  Yet, this is effectively what Mr. LaBonte requests the Court to do in this case.

14

In sum, because Mr. LaBonte cannot obtain disability retirement – or related pay or benefits – while his court-martial conviction stands, and because the Court does not possess jurisdiction to disturb his conviction, the Court should dismiss Mr. LaBonte's complaint.

**D.      Mr. LaBonte Cannot Establish That The Court Possesses Jurisdiction To Entertain His Disability Retirement Claim Through Artful Pleading Or Otherwise (Count I)**

Mr. LaBonte's complaint contains two counts.  In Count I, he challenges the ABCMR's decision denying him medical retirement.  *See* Compl. 21 ¶ 106.  In Count II, which we address in Point II.E below, he asserts an ancillary due process challenge concerning his claim for disability retirement.  *See* Compl. 24-25 ¶¶ 120-126.

Mr. LaBonte soft peddles his 2007 court-martial conviction and, in fact, he does not even mention that seminal event in Count I or Count II of his complaint, or in his prayer for relief. *See* Compl. 21-25.  This approach gets Mr. LaBonte nowhere.  Mr. LaBonte's cannot establish jurisdiction by treating his claims as if they are unrelated to his court-martial conviction.[4]

**1.      Mr. LaBonte Cannot Cure The Jurisdictional Deficiencies Concerning His Disability Retirement Claim By Disregarding His Court Martial (Count I)**

When jurisdiction is challenged, "'the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction.'" *Buser v. United States,* 85 Fed. Cl. 248, 254 (Fed. Cl. 2009) (quoting *Murphy v. United States,* 69 Fed. Cl. 593, 600 (2006)) (footnote omitted).  Thus, Mr. LaBonte has the burden to establish that the Court possesses jurisdiction to grant him the "back pay, retirement pay, benefits, and allowances" that he seeks.  Compl. 25 (prayer for relief).

---

[4]  Both Count I and Count II incorporate by reference all of the prior allegations of the complaint.  Compl. 21 ¶ 103; Compl. 24 ¶ 119.  This includes Mr. LaBonte's allegations concerning his court-martial and bad conduct discharge.  *See, e.g.,* Compl. 1.

Mr. LaBonte cannot plead around the Court's jurisdictional limitations by disregarding his court-martial conviction and attempting to assert a stand-alone claim that ABCMR should have corrected his record to reflect that he was retired.  Yet, this is what he appears to do in Count I of his compliant.

Notwithstanding Mr. LaBonte's attempt to downplay the court-martial, his conviction and resulting discharge are part of his service history, which he cannot challenge in this Court for reasons previously discussed at length.  Nor can Mr. LaBonte establish jurisdiction by glossing over those crucial aspects of his military record as if they are of no real import.  To the contrary, Mr. LaBonte's retirement claim is inextricably intertwined with his court-martial conviction and his 2008 discharge from the Army.

To recap, as of March 2008, Mr. LaBonte had been court-martialed, pled guilty, received a sentence of confinement and discharge from the Army, served his sentence, and was not retired from the Army but, instead, received a discharge as a result of his court-martial conviction.  And the court-martial conviction still is reflected in his DD-214 as the reason for his discharge.  AR637, block 28.

And although Mr. LaBonte does not now focus on the court-martial conviction in his complaint, he attempted to challenge his conviction in his November 17, 2015 petition to the ABCMR, which he filed more than seven years after his March 2008 discharge.  In particular, Mr. LaBonte requested that the board grant him, among other things (1) retroactive medical retirement, (2) an additional upgrade to an honorable discharge, and (3) amendment of his separation documents to remove references to his court-martial.  Compl. 13 ¶ 59.  This merely highlights the relationship between Mr. LaBonte's claim for disability retirement, and his court-martial conviction and resulting discharge.

Regardless of whether Mr. LaBonte has structured his complaint to avoid challenging his court-martial conviction, his claim for disability retirement and back pay cannot be considered independently of his court-martial, which the Court lacks jurisdiction to review. *See Schnable,* 105 Fed. Cl. at 611, 617 (dismissing complaint seeking back pay, allowances, and other relief, for lack of subject matter jurisdiction, where the Court concluded that it did not possess jurisdiction to entertain the plaintiff's underlying claim that his discharge was unlawful because his constitutional rights allegedly were violated during the process of appealing his court-martial conviction).

## 2.     Mr. LaBonte's Failure To Request A Disability Board Until More Than Seven Years After His Discharge Renders His Retirement Claim Untimely

Even if Mr. LaBonte's attempt to assert an independent disability retirement claim were not otherwise barred, such claim would be time-barred by the statute of limitations based on the facts set forth in Mr. LaBonte's complaint.

In particular, the failure of a service member to request a disability board prior to discharge "can invoke the statute of limitations when the service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge." *Chambers v. United States,* 417 F.3d 1218, 1226 (Fed. Cir. 2005) (citing *Real v. United States,* 906 F.2d 1557, 1562 (Fed. Cir. 1990)).  The complaint itself demonstrates that Mr. LaBonte had such knowledge.

Specifically, Mr. LaBonte alleges that upon returning from his tour of duty in Iraq, he "unsuccessfully sought help from superiors in his chain-of command and from military mental health resources."  Compl. 1.  And he further asserts that the "Army should have recognized [his] service-connected injuries and granted him medical retirement" but that the Army "[i]nstead . . .

court-martialed [him] and separated him with a bad conduct discharge." Compl. 1.  The events
to which Mr. LaBonte refers to all unfolded more than 10 years before he commenced this action
and before he was court-martialed.

Indeed, Mr. LaBonte claims that between April 2004 and June 2004, he reported his
medical symptoms to his chain of command, "including increased mental distress due to the
traumatic events he witness in Iraq" and "that he felt both physically and mentally unable to
continue serving."  Compl. 8 ¶ 31.  And Mr. LaBonte alleges that his parents also contacted his
"chain of command several times to plead with the Army to provide . . . the medical attention he
needed."  Compl. 8 ¶ 32.

Similarly, when his unit dissolved in 2004, Mr. LaBonte claims that he "told his new
chain of command that he was not physically or mentally ready to deploy for a second time,
reporting severe symptoms including panic attacks."  Compl. 9 ¶ 40.  And in 2006, after he
returned from the absence that ultimately led to his discharge, Mr. LaBonte alleges that he
continued to seek help from his chain of command but was not referred for evaluation or
treatment.  Compl. 10 ¶ 43.

Based on the allegations of his complaint, Mr. LaBonte had actual or constructive notice
well before his discharge.  Indeed, he claims that by 2004, he "did not feel that he was able to
continue serving[,]" "believed he could not handle life in the Army any longer" and wanted to be
"chapter[e]d out of the Army."  Compl. 8-9 ¶¶ 34-35, 37.  As a result, Mr. LaBonte's claim for
military retirement is time-barred by the statute of limitations.  This provides an additional and
independent ground upon which to dismiss Mr. LaBonte's disability retirement claim.

### 3.    The ABCMR Was Not Authorized To Review Mr. LaBonte's Court Martial Conviction Or Grant Him Disability Retirement

Mr. LaBonte's claim for medical retirement contains another major flaw.  In Count I, Mr. LaBonte asserts among other things that the ABCMR's decision denying him "medical retirement was arbitrary, capricious, unsupported by substantial evidence, and an abuse of discretion . . . ."  Compl. 21 ¶ 106.

But in considering Mr. LaBonte's request for correction of his military records pertaining to his claim for "separation/retirement for medical reasons," the ABCMR correctly concluded in its original decision that "in accordance with" 10 U.S.C. § 1552, it was "not empowered to set aside a conviction."  AR115 ¶ 12 (Oct. 19, 2017 decision).  And as the board also correctly noted, Mr. LaBonte's March 13, 2008 separation was the result of his "court-martial with a bad conduct discharge."  AR104 ¶ 10.  The board explained that because Mr. LaBonte's "discharge resulted from his court-martial conviction, he" was "ineligible for processing through the" Physical Disability Evaluation System "for possible medical retirement."  AR115 ¶ 12 (emphasis added).  Consequently, the board determined that there was "no basis to amend" Mr. LaBonte's "DD Form 214 by changing the reason and authority for separation."  AR115 ¶ 13.

In other words, not only is Mr. LaBonte precluded from challenging his court-martial conviction for reasons set forth above, he attempts to challenge the board's decision denying him medical retirement even though the board lacked the authority to grant him that relief.  Because the board correctly concluded that it lacked authority, this provides additional support for our motion to dismiss.

More specifically, the ABCMR elaborated that convictions pursuant to a court-martial "stand as adjudged or modified by appeal or through the judicial process" and that pursuant to 10 U.S.C. § 1552, "the authority under which [the] Board acts," it lacks the authority to "set aside a

conviction" and "is only empowered to change the severity of the sentence imposed in the court-

martial process and then only if clemency is determined to be appropriate." AR111 ¶ 11. And as

the board further observed: "Clemency is an act of mercy or instance of leniency to moderate

severity of the punishment imposed." AR111 ¶ 11.

Thus, the board concluded that it had no authority to grant Mr. LaBonte's request to

correct "his records by removing all documents relating to his court-martial proceedings" and

process "his record through the Physical Disability Retirement System[.]" *See* AR84-85 ¶ 2(a)-

(c); AR115 ¶¶ 12-13. Simply stated, the board lacked authority to overturn Mr. LaBonte's court-

martial conviction or to correct his record to eliminate the court martial conviction. And his

conviction, in turn, rendered Mr. LaBonte ineligible to be processed through the physical

disability evaluation system.

The board's decision that it lacked authority to grant Mr. LaBonte relief finds support in

the language of 10 U.S.C. § 1552. That provision provides, in part, as follows:

> The Secretary of a military department may correct any military
> record of the Secretary's department when the Secretary considers
> it necessary to correct an error or remove an injustice. Except as
> provided in paragraph (2), such corrections shall be made by the
> Secretary acting through boards of civilians of the executive part of
> that military department.

10 U.S.C § 1552(a).

But pursuant to subsection 1552(f):

> With respect to records of courts-martial and related administrative
> records pertaining to court-martial cases tried or reviewed under
> chapter 47 of this title [10 USCS §§ 801 et seq.] (or under the
> Uniform Code of Military Justice (Public Law 506 of the 81st
> Congress)), action under subsection (a) may extend only to--
>
> (1)  correction of a record to reflect actions taken by reviewing
> authorities under chapter 47 of this title [10 U.S.C. § 801 et seq.]

(or under the Uniform Code of Military Justice (Public Law 506 of
the 81st Congress)); or

(2)  action on the sentence of a court-martial for purposes of
clemency.

In other words, the Secretary, or the board acting on behalf of the Secretary, can only
provide clemency type relief, which Mr. LaBonte already received from the board.  But the
court-martial conviction cannot be overturned.

In *Cooper,* the Court of Appeals for the Federal Circuit observed that prior to a 1983
amendment to section 1552, the "ABCMR exercised broader powers."  And with the addition of
subsection 1552(f), the ABCMR still lacked "the power to overturn a court-martial conviction[,]"
but that subsection further limited the board's authority "in the extent to which it [could] correct
a court-martial record."  807 F.2d at 991; *see also Cossio v. Donley,* 527 Fed. Appx. 932, 935
(Fed. Cir. 2013) (board lacks "authority to amend sentencing judgments other than through a
grant of clemency") (per curiam); *Martinez v. United States,* 914 F.2d 1486, 1488 (Fed. Cir.
1990) (board cannot "void court-martial convictions").

*Cooper* involved a collateral attack on a court-martial conviction on constitutional
grounds.  807 F.2d at 990.  The court held that in light of subsection 1552(f), the "ABCMR [was]
incapable of providing meaningful relief for the constitutional violations claimed in [the
plaintiff's] amended complaint."  *Id.* at 990-991.  And in *Bolton v. Dep't of the Navy Bd. For
Corr. of Naval Records*, 914 F.3d 401, 407-408 (6th Cir. 2019), the court recently explained that
10 U.S.C. § 1552(f) "limits the Secretary's power to correct 'records of court-martial'" to "only
two circumstances: (1) 'to reflect actions taken' by other military 'reviewing authorities' or (2)
as 'action on the sentence of a court-martial for purposes of clemency.'"

Thus, the board's determination in its October 19, 2017 decision that because subsection 1552 precluded it from setting aside Mr. LaBonte's court-martial conviction, and because the discharge resulted from his conviction, he was "ineligible for processing through the PDES for possible medical retirement[,]"AR115 ¶ 12, is supported by the statute and authorities that have interpreted it for more than 30 years.

Given this context, Mr. LaBonte fails to establish how the Court possesses jurisdiction to grant him any relief that ultimately could result in his obtaining the medical retirement that he seeks, when the board and the Army had no authority to do so in the first instance, especially given that Mr. LaBonte does not and cannot challenge his court-martial conviction.

Specifically, Mr. LaBonte requests the Court to "[d]irect, by issuance of an injunction, that the Board correct [his] record to reflect medical retirement by reason of permanent disability . . . with a disability rating of at least 80% for all purposes, including healthcare and education benefits and backpay retirement[.]"  Compl. 25 ¶ 2.  Thus, Mr. LaBonte is requesting that the Court direct the board to grant him relief that the board has no power to grant.

While the board made some corrections to Mr. LaBonte's service record that did not involve wiping away his court-martial conviction, and while the board recognized that on September 8, 2014, another board – the Army Discharge Review Board – had granted Mr. LaBonte "clemency in the form of an upgrade to the characterization of his service to general under honorable conditions," the ADRB did not change the "narrative reason" for Mr. LaBonte's separation.  *See* AR114 ¶ 9; AR637, block 28 (showing Mr. LaBonte's court martial as the reason for separation).

To be clear, in 2014, Mr. LaBonte persuaded the Army Discharge Review Board to grant him "clemency by upgrading" his "*characterization of service* to general, under honorable

conditions." AR641 (emphasis added). Yet, that same decision expressly noted that a "change

in the *reason for discharge* is not authorized under Federal statute." AR641 (emphasis added).

This is consistent with the ABCMR's decision. *See* AR115 ¶ 12.

The ABCMR's lack of authority over Mr. LaBonte's claim also is consistent with the

procedures set forth in Army Regulation 635-40, Physical Evaluation for Retention, Retirement,

or Separation (2006). Pursuant to that regulation, soldiers could not be referred for, or continue

in, disability processing if under military sentence of dismissal or punitive discharge unless the

sentence was suspended. Army Reg. 635-40, ¶ 4-2 (2006), Appx4. In addition, the regulation

provided, in pertinent part, as follows:

> **Soldiers charged with an offense**
>
> *a. Uniform Code of Military Justice action.* The case of a Soldier
> charged with an offense under the Uniform Code of Military
> Justice (UCMJ) or who is under investigation for an offense
> chargeable under the UCMJ which could result in dismissal or
> punitive discharge, may not be referred for, or continue, disability
> processing unless—
>
> (1) The investigation ends without charges.
>
> (2) The officer exercising proper court-martial jurisdiction
> dismisses the charges.
>
> (3) The officer exercising proper court-martial jurisdiction refers
> the charge for trial to a court-martial that cannot
> adjudge such a sentence.

Army Regulation 635-40 ¶ 4-1 (2006), [5] Appx4 (described at AR109).

Mr. LaBonte has not satisfied any of those conditions. And because he ultimately was

convicted and received a punitive discharge, he never became eligible for disability processing,

which is what he seeks in this case. *See* Compl. 25 ¶ 2. In *Moyer v. United States,* 190 F.3d

---

[5] This language of this provision has since been amended. *See* 635-40 ¶ 4-3 (2017)

1314, 1321 (Fed. Cir. 1999), the court recognized that an earlier version of Army Regulation

635-40 "expressly preclude[d] continued disability processing for soldiers charged under the

UCMJ." Thus, the numerous allegations throughout his complaint regarding disability

processing provide no basis for the Court to assume jurisdiction over Mr. LaBonte's claims. Mr.

LaBonte simply was not entitled to participate in that process. *See* Compl. 1-2, 14-25.

Although the October 19, 2017 decision was not the board's final decision, Mr.

LaBonte's reliance on the November 27, 2017 referral of his case to the Army's Office of the

Surgeon General "to determine if he should have been retired or discharged by reason of

physical disability through the Integrated Disability Evaluation System (IDES)," fares no better.

AR81; *see* Compl. 14 ¶ 63. The referral states, in part, as follows:

> a. In the event that a formal physical evaluation board (PEB)
> becomes necessary, the individual concerned will be issued
> invitational travel orders to prepare for and participate in
> consideration of his case by a formal PEB. . . .
>
> b. Should a determination be made that the applicant should have
> been separated under the IDES, these proceedings will serve as the
> authority to void his *administrative separation* and to issue him the
> appropriate separation retroactive to his original separation date,
> with entitlement to all back pay and allowances and/or retired pay,
> less any entitlements already received.

AR81 (emphasis added).

The reference to an "administrative separation" was in error, as confirmed by Mr.

LaBonte's DD-214, and does not lead to a more favorable result for Mr. LaBonte. *See* AR637

(showing his court-martial as the reason for his separation). Indeed, Mr. LaBonte expressly

acknowledges in his complaint that the Army discharged him as a direct result of his court-

martial conviction. Compl. 20 ¶ 96 ("Mr. LaBonte received a bad conduct discharge by way of

court-martial"). And on June 21, 2018, the board notified Mr. LaBonte that "[a]fter a thorough

review of [his] medical records it was determined that [he] did not require disability processing

at the time of separation from active duty service." AR73.  Although the reasoning is different

from the reasoning in the board's October 19, 2017 decision, the ultimate conclusion is the same.

Mr. LaBonte was not entitled to disability processing.  *See* AR73; AR115 ¶ 12.

The same is true with Deputy Assistant Secretary of the Army, Francine Blackmon's

letter reaffirming the board's decision to deny Mr. LaBonte relief, which states, in part:

> I directed the Office of the Surgeon General [to] conduct a review
> of Mr. LaBonte's records to determine if disability evaluation
> system processing was warranted at the time of his separation.  An
> authorized official representing the office of the Surgeon General
> conducted a review of Mr. LaBonte's records and determined Mr.
> LaBonte did not have any medical conditions which failed to meet
> retention standards at the time of his separation.  Based on this
> determination, there is currently no reason to proceed with further
> disability evaluation system processing.

AR1.  The reasoning is different from the October 19, 2017 decision but the ultimate conclusion

is the same.

Mr. LaBonte complains that after the Disability Evaluation System process was

undertaken following the November 27, 2017 referral, "the Army abruptly terminated his

application" instead of completing the process.  *See* Compl. 2.  This gets him nowhere.

Regardless of whether there was a false start concerning of that process after the November 27

referral, and regardless of any issues regarding the language of those decisions, the important

point is that Mr. LaBonte was not entitled to participate in the Disability Evaluation System at all

because his court-martial conviction still stood.

As a result, Mr. LaBonte's objections to the manner in which the Disability Evaluation

System process was conducted or terminated provide no jurisdictional basis for the Court to

review this aspect of Mr. LaBonte's claims.  That there appears to have been a misunderstanding

regarding the nature of Mr. LaBonte's discharge – it was not an administrative discharge, as indicated in the November 27, 2017 referral, but resulted from a court-martial – changes nothing.

Indeed, when the Army Discharge Review Board upgraded the characterization of Mr. LaBonte's service from a bad-conduct to general under honorable conditions in September 2014, the board, in discussing its regulatory authority, expressly stated as follows:

> The ADRB may not upset the finality of a court-martial conviction. It may only act to change the characterization of service. . . . With respect to a discharge adjudged by a special court-martial, the action of the ADRB is restricted to upgrades based on clemency.

AR331 ¶¶ 2-3.

Mr. LaBonte's allegation that the June 2018 decision of the ABCMR "was the first time any *competent* military board had denied the claim in a final decision" likewise gets him nowhere. *See* Compl. 20 ¶ 99 (emphasis added). To the extent that Mr. LaBonte may be attempting to invoke the language of the "first competent board rule," described below, this provides him no jurisdictional refuge because the ABCMR was not a competent board to decide the particular claims that Mr. LaBonte pursues in this case, for reasons previously discussed.

Specifically, the principle that "a claim for disability retirement pay generally does not accrue until an *appropriate* military board denies the claim in a final decision, or refuses to hear the claim" – *see Sabree,* 90 Fed. Cl. at 694 (citing *Chambers v. United States,* 417 F.3d at 1218, 1224 (Fed. Cir. 2005) (citing *Real v. United States,* 906 F.2d 1557, 1560 (Fed.Cir.1990))) – is not helpful to Mr. LaBonte in this case. Mr. LaBonte's circumstances do not fit within the "first competent board rule" because the board was not appropriate – that is, it was not statutorily authorized or competent – to correct his records to reflect that he was medically retired, rather

than discharged as a result of his court-martial.  *See Cooper,* 807 F.2d at 991 ("ABCMR is

incapable of providing meaningful relief").

Because the ABCMR was not authorized to consider the claim that Mr. LaBonte now

asks the Court to review, there is no basis to conclude that Mr. LaBonte could invoke the "first

competent board rule" in order to avoid the dismissal of his complaint.  *See Chambers* 417 F.3d

at 1224 (citation omitted).

In a nutshell, Mr. LaBonte cannot challenge his court-martial conviction because it is

time-barred and otherwise is not subject to challenge before this Court.  Nor does Mr. LaBonte

challenge his conviction.  Further, he cannot obtain medical retirement because his court-martial

conviction would first have to be overturned, and neither the board nor the Army have the

authority to do so.  In light of the above, Mr. LaBonte's cannot establish the Court possesses

jurisdiction to review the board's decision or provide him with any relief that could ultimately

lead to his obtaining the disability retirement that he seeks.

**E.      The Court Does Not Possess Jurisdiction To Entertain Mr. LaBonte's
         Ancillary Constitutional Claim (Count II)**

The Court does not possess jurisdiction to entertain the constitutional claim set forth in

Count II of Mr. LaBonte's complaint.

Mr. LaBonte alleges that his due process rights guaranteed by the Fifth Amendment of

the United States Constitution have been violated.  Compl. 2, 24-25 ¶¶ 119-126.  It is well-

established that this Court does not possess jurisdiction over an alleged violation of rights under

the due process clause of the Fifth Amendment because it is not money-mandating.  *James v.

Caldera*, 519 F.3d 573, 581 (Fed. Cir. 1998).

Nor may Mr. LaBonte bootstrap that claim to his other claims because, as previously

demonstrated, the Court does not possess jurisdiction to entertain those claims.  *See Lechliter v.*

*United States,* 70 Fed. Cl. 536, 544 (Fed. Cl. 2006) (Court may consider procedural due process claim where jurisdiction otherwise had been established) (citing *Holley v. United States,* 124 F.3d 1462, 1466 (Fed. Cir. 1997)); *Anderson v. United States,* 111 Fed. Cl. 572, 580 (Fed. Cl. 2013) (to the extent complaint contained "independent" Fifth Amendment due process claim, the claim was not within the Court's jurisdiction) (citations omitted).  Indeed, Mr. LaBonte acknowledges that his constitutional claim is ancillary.  Compl. 24 ¶ 120.

Accordingly, Mr. LaBonte's allegation of a Fifth Amendment due process violation should be dismissed for lack of jurisdiction.

## III.   Alternatively, The Court Should Grant The United States Judgment On The Administrative Record

In the event the Court concludes that it possesses jurisdiction to entertain any aspect of the complaint, the Court should grant judgment on the administrative record to the United States.

### A.   The Material Facts Are Not Subject To Dispute

The facts relevant to our motion for judgment on the administrative record are straightforward and are not subject to any material dispute.

Mr. LaBonte was court-martialed and discharged as a result of his court-martial in 2008.  Compl. 1, 10 ¶¶ 46-47.  The Army did not grant him "medical retirement."  *See* Compl. 1.  Because Mr. LaBonte does not have retiree status, he does not receive retirement pay or related medical benefits.  Compl. 2.

Mr. LaBonte petitioned the ABCMR for retroactive retirement in 2015, seeking disability retirement, the correction of his DD-214 to remove his court-martial conviction as the reason for his discharge, and other relief.  Compl. 13 ¶ 59.  The ABCMR, in October 2017, "found that it did not have authority to amend his DD-214 to remove his court-martial conviction."  Compl. 13 ¶ 61.

In June 2018, the ABCMR, following additional proceedings, "denied Mr. LaBonte's claim for medical retirement[,]" *see* Compl. 20 ¶ 99, albeit based the Office of the Surgeon General's review of Mr. LaBonte's medical records.  AR73.  In September 2018, the board reaffirmed that decision.  *See* Compl. 21 ¶ 102.  And in November 2018, more than 10 years after his court-martial and discharge, Mr. LaBonte filed this action.  *See* ECF No. 1.

Mr. LaBonte challenges the board's rejection of his claim for medical retirement and requests that the Court find that the Army's decision was unlawful.  *See* Compl. 2.  He also requests that the Court award him "back pay, retirement pay, benefits, and allowances[.]" Compl. 25 ¶ 1.

Mr. LaBonte's court-martial conviction precludes him from obtaining any relief in this action that could result in him obtaining the disability retirement, pay, and the other relief that he seeks.  As a result, the Court should grant the Government judgment on the administrative record regarding any claims that survive our motion to dismiss.

**B.      Mr. LaBonte Cannot Establish That The Board Or The Army Erred In Denying His Request For Disability Retirement Because His Court-Martial And Army Regulations Barred Him From Participating In The Disability Evaluation System Process**

Mr. LaBonte challenges the decisions of the ABCMR and Army to deny his application for medical retirement.  *See* Compl. 2.  The Court should enter judgment on the administrative record for the Government on Mr. LaBonte's claim because he cannot establish that the Army or board acted in a manner that was "was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced.'"  *See Heisig* 719 F.2d at 1156.

Mr. LaBonte does not and cannot challenge his court-martial conviction in this action. And Mr. LaBonte's court-martial conviction precluded the board from granting him the disability retirement that he seeks.  As previously established, this is precisely what the board found in its October 19, 2017 decision.  AR115.

In particular, with respect to Mr. LaBonte's request for disability retirement, the board concluded that "based on the available post-service medical evidence, it could be argued" that Mr. LaBonte "met the criteria for referral to the PDES prior to going AWOL."  AR115 ¶ 12. Nonetheless, the board's analysis did not end there.  Rather, the board expressly found that it was "not empowered to set aside a conviction."   AR115 ¶ 12 (citing 10 U.S.C. § 1552).

The board also found that because Mr. LaBonte's discharge "resulted from his court-martial conviction, he [was] ineligible for processing through the PDES for possible medical retirement."  AR115 ¶ 12.  In light of this, the board correctly concluded that there was "no basis to amend" Mr. LaBonte's "DD Form 214 by changing the reason and authority for separation." AR115 ¶ 12.

In other words, the court-martial conviction both rendered Mr. LaBonte ineligible for "possible medical retirement" and precluded the board from amending Mr. LaBonte's record to reflect that he was medically retired, which is the main relief that he hopes to ultimately obtain as a result of filing this action.  The board was correct in that determination because 10 U.S.C. § 1552(f) statutorily precluded the board from disturbing Mr. LaBonte's court-martial conviction, rendering the board "incapable of providing meaningful relief . . . ."  *See Cooper,* 807 F.2d at 990-991.

In particular, as we previously demonstrated, 10 U.S.C. § 1552(a) grants the Secretary of a military department (and in most cases the board, acting for the Secretary), authority to correct

a military record "to correct an error or remove an injustice."  But in situations involving a court-martial, subsection 1552(f) only permits the Secretary (or board) to correct a service record "to reflect actions taken by reviewing authorities" under the Uniform Code of Military Justice, or to take "action on the sentence of a court-martial for purposes of clemency."  10 U.S.C. § 1552(f)(1)-(2).

Thus, neither the Secretary nor the board were statutorily empowered to overturn a court-martial conviction, or to change Mr. LaBonte's record to reflect that he was medically retired, rather than separated as a result of his court-martial.

Subsection 1552(f) is a hurdle that Mr. LaBonte cannot overcome.  Because Mr. LaBonte cannot demonstrate that board's decision was unlawful, arbitrary and capricious, unsupported by substantial evidence, or otherwise failed to satisfy the applicable standard of review, *see Heisig* 719 F.2d at 1156, he cannot prevail.  Indeed, just the opposite is true.  The board's original decision finding that it lacked authority was required by statute.

And Mr. LaBonte's complaints about the board's determinations concerning his disability processing, or lack thereof, both before and after his case was referred to the Army's Office of Surgeon General, get him nowhere.  Specifically, Mr. LaBonte argues that instead of separating "him with a bad conduct discharge" as a result of his court-martial, the Army should have granted him medical retirement.  *See* Compl. 1.  And he contends that the "Army violated its own procedures in processing" his Disability Evaluation System (DES) referral and that it violated his due process rights by allegedly "prematurely terminating the DES o MEB procedures . . . ."  Compl. 22, 24 ¶¶ 112, 125.  Mr. LaBonte arguments provide no basis for granting him relief.

In particular, the timeframe relevant to Mr. LaBonte's claim for disability retirement is the time of his discharge.  *See Johnson v. United States,* 125 Fed. Cl. 576-578 (2016) (defining the relevant issue as involving a determination of whether former service member was "disabled and eligible for military disability retirement benefits in 1988 [the time of discharge] pursuant to 10 U.S.C. § 1201 (2012)" and citing *de Cicco v. United States,* 677 F.2d 66, 70 (Ct. Cl. 1982)).

This is important because, as we previously established, at the time of Mr. LaBonte's discharge in 2008, Army Regulation 635-40, cited by the board, provided that "a Soldier charged with an offense under the Uniform Code of Military Justice (UCMJ) or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge, may not be referred for, or continue, disability processing[,]" with certain exceptions that are not applicable to Mr. LaBonte.  Army Reg. 635-40 ¶ 4-1 (2006) (described at AR109); *see also Moyer,* 190 F.3d at 1321 ("Army Regulation 635–40 expressly provides: 'a soldier charged with an offense under the UCMJ . . . may not be referred for, or continue disability processing'" except in certain circumstances that do not apply) (citing previous version of regulation).  In addition, Army Regulation 635-40 ¶ 4-2 (2006), in relevant part, provided that a "Soldier may not be referred for, or continue, disability processing if under sentence or dismissal or punitive discharge."  Appx4 (described at AR109).

Given those regulations and 10 U.S.C. § 1552(f), which limits the Army's and board's authority to correct records relating to court-martials, Mr. LaBonte cannot establish that the board erred in its initial determination that it lacked authority to overturn his court-martial conviction or in concluding that as a result, Mr. LaBonte was "ineligible for processing through the PDES for possible medical retirement."  AR115 ¶ 12.

And although the Army Review Boards Agency apparently was under the incorrect impression that Mr. LaBonte was administratively separated when it later decided to refer his case to the Office of the Surgeon General, *see* AR83 ¶ 81, this provides no basis to overturn the board's decision because it was not prejudicial to Mr. LaBonte. *See Fisher v. U.S.,* 81 Fed. Cl. 155, 159 (2008) ("We agree with defendant that the 2007 Board decision is controlling now, although we think it has no practical impact for plaintiff. Even if the first Board decision may have been tainted by reference to an improper standard for proof of disability, plaintiff still would have to establish that the error was prejudicial, *i.e.,* that it affected the Board's ultimate conclusion . . . .") (citing *Wagner v. United States,* 365 F.3d 1358, 1362 (Fed. Cir. 2004) (harmless error does not require overturning correction board's decision); *Wells v. United States,* 46 Fed. Cl. 178, 183 (2000) ("correction board's decision may be overturned if it 'materially violated' regulations thereby 'prejudic[ing] the plaintiff'") (additional citation omitted)).

For a similar reason, the board's June 21, 2018 decision – that following "a thorough review of [Mr. LaBonte's] medical records, it was determined that [he] did not require disability processing at the time of separation from active duty service" – provides Mr. LaBonte for a successful challenge. *See* AR73. Even if Mr. LaBonte's objections regarding the medical review conducted by the Office of the Surgeon General were well-founded, Mr. LaBonte's court-martial, 10 U.S.C. § 1552(f), and Army regulations, still would have precluded him from receiving disability processing at the time of his separation.

Mr. LaBonte's admittedly ancillary claim that the Army violated his right to due process by allegedly prematurely terminating the disability evaluation process based on Dr. Doane's memorandum fails for the same reason. *See* Compl. 24-25 ¶¶ 120, 125.

For these reasons, the Court should grant our motion for judgment on the administrative record.

### C.   Even Assuming That Mr. LaBonte Was Not Otherwise Barred From Receiving Disability Retirement, The Board's Determination That His Medical Records Established That He Did Not Require Such Processing Should Be Sustained

Even if Mr. LaBonte's challenge is not rejected for the reasons previously discussed, the Court still should grant judgment on the administrative record in favor of the United States.  The Army's Office of the Surgeon General independently evaluated Mr. LaBonte's medical history at the request of the Deputy Assistant Secretary of the Army (Review Boards).  AR81-82.

Subsequently, the board, for the second time, concluded that Mr. LaBonte was not entitled to disability retirement.  Specifically, as we previously established, in a final decision dated June 21, 2018, the board notified Mr. LaBonte that "[a]fter a thorough review of [his] medical records, it was determined that [he] did not require disability processing at the time of separation from active duty service."  AR73.

And on September 7, 2018, the Deputy Assistant Secretary – in response to correspondence from Mr. LaBonte's counsel – similarly observed that an "official representing the Office of the Surgeon General" had determined that "Mr. LaBonte did not have any medical conditions which failed to meet retention standards at the time of his separation" and that there was "currently no reason to proceed with further disability evaluation system processing."  AR1.

Thus, notwithstanding that Mr. LaBonte was barred from receiving disability retirement due to his court-martial and bad conduct discharge, the Army concluded that his medical history did not support his claim for medical retirement.  That conclusion was not arbitrary or capricious, and is supported by substantial evidence.

In particular, after reviewing Mr. LaBonte's medical records, the representative of the Office of the Surgeon General, Dr. Eric Doane, determined Mr. LaBonte did not require disability processing at the time of separation from active duty.  AR77, AR79.  Dr. Doane was correct.

Dr. Doane noted that Mr. LaBonte had sought a mental health evaluation in June of 2004, after being absent without leave for two days.  AR77.  He was diagnosed with adjustment disorder and reported problems with the Army and his girlfriend.  AR77.  At the end of this 2004 evaluation session, Mr. LaBonte was counseled to call and make an appointment if he felt he needed to come back.  AR77.  Dr. Doane determined that Mr. LaBonte never sought psychiatric services again.  AR77.

And Dr. Doane pointed out that in November 2005, Mr. LaBonte participated in a medical deployment readiness program in which his medical records were reviewed and he was also counseled in person by a medical professional.  AR77.  Dr. Doane's review of the session reveals Mr. LaBonte indicated he was in excellent health.  AR77.  Dr. Doane also noted that Mr. LaBonte had been "specifically asked about mental health issues, and he indicated he had none." AR77.  Further, Dr. Doane found that "[a]fter careful review by the medical community [Mr. LaBonte] was determined to be deployable."  AR77.

And Dr. Doane found that even after Mr. LaBonte "went AWOL[,]" "missed his deployment" and "was placed in confinement at Fort Sill" in November 2006, he underwent "a complete physical examination" and "was cleared for confinement."  AR78.  In addition, Dr. Doane found that throughout Mr. LaBonte's confinement, "up until the time Mr. LaBonte left Active Duty, he had access to the military health system."  AR78.  But while Mr. LaBonte "was

seen and treated for occasional acute minor illnesses," Dr. Doane observed that he never was

treated "for behavioral health issues."  AR78.

Mr. LaBonte, in his complaint, focuses extensively on the medical treatment and other

events beginning in 2012, but this was years *after* he was discharged from the Army following

his conviction by a military court.  *See, e.g.,* Compl. 11-12 ¶¶ 52-55.  This includes the VA

granting Mr. LaBonte a disability rating in September 2016 for various conditions.  *See* Compl.

13 ¶ 60.

Mr. LaBonte's success in obtaining VA benefits years after his discharge does not mean

that he was entitled to disability retirement.  "[T]he Army provides for disability retirement

based on fitness for military duty . . . while the VA's disability rating decision is based on

capacity to function in the civilian world . . . ."  *Gossage v. United States,* 394 Fed. Appx. 695,

698 (Fed. Cir. 2010) (citing 10 U.S.C. § 1201 (1970); 38 U.S.C. § 355 (1970), *available at* 38

U.S.C. § 1155).

"Moreover, the Army's disability retirement decision is based on the service member's

ability to continue service *at that time*, while the VA's disability rating decision is based on the

service member's projected earning capacity in the future."  *Id.* (emphasis added).  Mr. LaBonte

has not established that when he was discharged due to his court-martial conviction in 2008, the

medical evidence would before the Army at the time required the Army to grant him disability

retirement.  And the board's decision that that his medical records did not justify disability

processing at the time the Army discharged him was supported by substantial evidence, and was

not arbitrary and capricious.  As such, the board's decision should be sustained.

Further, even if the Court would not have reached the same conclusion as the Army, this

is not a sufficient basis to overturn the board's decision because the standard of review does not

involve "a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157 (emphasis omitted); *Van Cleave*, 70 Fed. Cl. at 678-79 (Court does not serve as a "super correction board" thus, if "substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result").

Finally, although Mr. LaBonte vehemently objects to the manner in which the Army, the Office of the Surgeon General, and Dr. Doane reviewed his request for correction of his records, *see, e.g.,* Compl. 22-25 ¶¶ 107-118, 125-126, he fails to recognize that because the Army and board were precluded from granting him disability retirement due to his court-martial conviction, any objections that he raises about the Army's medical conclusions ultimately are immaterial, as we previously demonstrated.

In sum, to the extent that any of Mr. LaBonte's claims survive our motion to dismiss, the Court should enter judgment on the administrative record in our favor, and deny Mr. LaBonte's claims in their entirety.

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court dismiss the complaint or, in the alternative, grant the United States judgment on the administrative record.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ *Douglas K. Mickle*
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:                          s/ *Richard P. Schroeder*
                                     RICHARD P. SCHROEDER
Major Michael Townsend, Jr.          Trial Attorney
United States Army                   Commercial Litigation Branch
Military Personnel Branch            Civil Division
U.S. Army Legal Services Agency      U.S. Department of Justice
                                     PO Box 480
                                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     Tele:  (202) 305-7788
                                     Fax: (202) 305-7643
                                     Email: Richard.Schroeder@usdoj.gov

Dated: May 17, 2019                  Attorneys for Defendant

# APPENDIX

## INDEX TO APPENDIX

Department of the Army Letter Regarding Notification of USACCA Decision,
dated July 16, 2017 ..................................................................................................................... 1

Army Court of Criminal Appeal Decision, dated July 11, 2007 .................................................... 2

Excerpt from the Department of the Army's Physical Evaluation for Retention, Retirement,
or Separation, dated February 8, 2006............................................................................................ 3



REPLY TO
ATTENTION OF

**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY JUDICIARY
901 NORTH STUART STREET
ARLINGTON, VA  22203-1837

July 16, 2007

Office of the Clerk of Court

SUBJECT:  Notification of USACCA Decision (ARMY 20061066)

Private First Class Robert L. Labonte, Jr.
90 Lavender Lane
Rocky Hill , CT 06067

Dear Private First Class Labonte,:

    This letter is notification of the decision of the United States Army Court of Criminal Appeals and informs you of your right to petition the United States Court of Appeals for the Armed Forces for a grant of review.  The 60-day period within which you may petition the Court of Appeals for the Armed Forces begins on the day following the date this letter was mailed to you.

    If you select to petition the United States Court of Appeals for the Armed Forces (CAAF), please sign and date the five copies of DA Form 4918-R, which are enclosed, and mail them to that Court in the envelope provided.  If you DO NOT select to petition CAAF, you may request final action in your case by completing the enclosed DA Form 4919-R and mail it directly to your Appellate Defense Counsel.  DO NOT do both.

    A copy of the Army Court of Criminal Appeals decision is enclosed.  Your appellate rights are more fully explained in DA Form 4917-R, Advice as to Appellate Rights, a copy of which is enclosed.

Sincerely,

*Randall M. Bruns*

RANDALL M. BRUNS
Paralegal Specialist

Enclosures

Copy Furnished:
Defense Appellate Division, U.S. Army Legal Services Agency, 901 North Stuart Street,
 Arlington, Virginia  22203-1837

**1**

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SCHENCK, ZOLPER, WALBURN
Appellate Military Judges

**UNITED STATES, Appellee**

v.

**Private First Class Robert L. Labonte, Jr.**
**United States Army, Appellant**

ARMY 20061066

Headquarters, Fort Hood
Gregg A. Marchessault, Military Judge

For Appellant:  Major Fansu Ku; Captain Richard P. Pizur

For Appellee:   Pursuant to A.C.C.A Rule 15.2, no response filed.

11 July 2007

---------------
DECISION
---------------

Per Curiam:

On consideration of the entire record, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact.  Accordingly, those findings of guilty and the sentence are AFFIRMED.


FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court


# JALS-CCR(2)

Army Regulation 635–40

Personnel Separations

# Physical Evaluation for Retention, Retirement, or Separation

Headquarters
Department of the Army
Washington, DC
8 February 2006

**UNCLASSIFIED**

## Chapter 4
## Procedures

### Section I
### Eligibility for Disability Evaluation

### 4–1. Soldiers charged with an offense

*a. Uniform Code of Military Justice action.* The case of a Soldier charged with an offense under the Uniform Code of Military Justice (UCMJ) or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge, may not be referred for, or continue, disability processing unless—

(1) The investigation ends without charges.

(2) The officer exercising proper court-martial jurisdiction dismisses the charges.

(3) The officer exercising proper court-martial jurisdiction refers the charge for trial to a court-martial that cannot adjudge such a sentence.

*b. Civil court action.* If civil criminal court action is pending and the Soldier is present for duty, disability processing continues provided any movement of the Soldier is cleared with responsible military and civilian authorities.

### 4–2. Soldiers with suspended sentences

A Soldier may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge. If the sentence is suspended, the Soldier's case may then be referred for disability processing. A copy of the order suspending the sentence must be included in the Soldier's records. If action to vacate the suspension is started after the case is forwarded for disability processing, the PEB serving the area must be promptly notified to stop disability processing. Disability processing may resume if the commander decides not to vacate the suspension.

### 4–3. Enlisted Soldiers subject to administrative separation

*a.* Except as provided below, an enlisted Soldier may not be referred for, or continue, physical disability processing when action has been started under any regulatory provision which authorizes a characterization of service of under other than honorable conditions.

*b.* If the case comes within the limitations above, the commander exercising general court-martial jurisdiction over the Soldier may abate the administrative separation. This authority may not be delegated. A copy of the decision, signed by the general court-martial convening authority (GCMCA), must be forwarded with the disability case file to the PEB. A case file may be referred in this way if the GCMCA finds the following:

(1) The disability is the cause, or a substantial contributing cause, of the misconduct that might result in a discharge under other than honorable conditions.

(2) Other circumstances warrant disability processing instead of alternate administrative separation.

*c.* A Soldier being considered for separation because of unsatisfactory performance (AR 635–200, chap 13), must be referred for disability processing upon approved recommendation of a MEBD (AR 635–200, para 1–35a).

### 4–4. Commissioned or warrant officers who may be separated under other than honorable conditions

*a.* A commissioned or warrant officer will not be referred for disability processing instead of elimination action (administrative separation) that could result in separation under other than honorable conditions. Officers in this category who are believed to be unfit because of physical disability will be processed simultaneously for administrative separation and physical disability evaluation.

*b.* Commanders exercising general court-martial authority will ensure that the foregoing actions processed together are properly identified and cross-referenced. The administrative separation will be forwarded to the Commander, USA HRC, ATTN: AHRC–OPP–M, Alexandria, VA 22332–0418.

*c.* The Commander, USA HRC, will refer the entire file, including both courses of action, to the Office of the Secretary of the Army, ATTN: SAMR–RB, Washington DC 20310–3073 for necessary review. The SA will decide the proper disposition of the case.

### 4–5. Soldiers absent without leave

A Soldier may not be processed through the Army Physical Disability Evaluation System unless he or she is under military control. The Soldier must be available to be notified of the findings of the PEB and to indicate concurrence or nonconcurrence with the PEB findings and recommendations. If absent without leave (AWOL), the Soldier's case file may not be sent to a PEB. If determined AWOL after the Soldier's case file has been referred, the PEB must be promptly notified in order to suspend processing. If the Soldier returns within 10 days, the PEB must be notified so that processing may resume. Any substantial change in the Soldier's condition during a period of AWOL must be recorded by an addendum to the original MEBD or by a new MEBD and furnished to the PEB.