IN THE UNITED STATES COURT OF FEDERAL CLAIMS

18-1784C
(Judge Hertling)

ROBERT J. LABONTE, JR.,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Sam Davis, Law Student Intern
Matthew D. Handley, Law Student Intern
Jared Quigley, Law Student Intern
Renée A. Burbank, Supervising Attorney
Michael J. Wishnie, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

July 1, 2020                    *Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................... iv

QUESTION PRESENTED ......................................................................................... 1

STATEMENT OF THE CASE ................................................................................... 2

FACTS AND PROCEEDINGS .................................................................................. 4

    I.       Service History .................................................................................................. 4

    II.     Medical Evaluations and Administrative Appeals ...................................... 5

    III.   Initial Proceedings at the Court of Federal Claims ................................... 7

    IV.  Proceedings at the ABCMR and Court of Federal Claims on Remand ... 7

SUMMARY OF ARGUMENT ................................................................................ 10

ARGUMENT ............................................................................................................. 11

    I.       Standard of Review ........................................................................................ 11

    II.     The ABCMR's decision is arbitrary, capricious, and unsupported by substantial
          evidence. ......................................................................................................... 12

         a.    The evidence that Mr. LaBonte should have been medically retired prior
             to his separation. ...................................................................................... 13

         b.    The ABCMR's decision relies on a factually incorrect characterization of
             the Narrative Summary. ........................................................................... 16

         c.    The Office of the Surgeon General medical advisory opinions do not
             detract from this overwhelming weight of evidence. .................................. 19

    III.   The ABCMR's decision is unlawful because the Board's decision-making
          process failed to comport with this Court's remand order. .................................... 23

IV.    The ABCMR's decision violates Mr. LaBonte's due process rights under the Fifth Amendment of the United States Constitution. ..............................................25

      a.    The ABCMR's persistent failure to consider the competent medical evidence violates the Due Process Clause by denying him an "opportunity to be heard at a meaningful time and in a meaningful manner." ..................26

      b.    The ABCMR's application of an entirely different presumption to Mr. LaBonte's case than it has deployed in other similar decisions strongly suggests that the ABCMR prejudged Mr. LaBonte's claim. .........................28

V.     Mr. LaBonte is eligible for medical retirement benefits, and the ABCMR has the legal authority to grant them. .........................................................................29

      a.    The ABCMR can grant Mr. LaBonte's request for retroactive medical retirement status because he is not currently "under sentence of . . . a punitive discharge." ...................................................................................30

      b.    The ABCMR's authority to grant Mr. LaBonte relief under 10 U.S.C. §1552(a) is not limited by 10 U.S.C. §1552(f), which is irrelevant to his claim. .......................................................................................................32

      c.    The ABCMR has now issued two rulings disposing of Mr. LaBonte's claims on the merits without doubting its own statutory authority to issue appropriate relief. ........................................................................................36

      d.    This Court can and should intervene to ensure that the ABCMR promptly provides Mr. LaBonte with the benefits he is legally entitled to. .................37

CONCLUSION.......................................................................................................................38

# TABLE OF AUTHORITIES

## CASES

*AMS Associates v. United States*, 737 F.3d 1338 (Fed. Cir. 2013)..............................................34

*Armstrong v. Manzo*, 380 U.S. 545 (1965)..........................................................................26

*Beckham v. United States*, 392 F.2d 619 (Ct. Cl. 1968) .......................................................37

*Bolton v. United States*, 914 F.3d 401 (6th Cir. 2019)..........................................................34

*Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610 (1986).................................................................23

*Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204 (1988) ........................................................36

*Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009)..........................................................25

*Dayley v. United States*, 180 Ct. Cl. 1136 (1967).................................................................20

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, No. 18–587

    (S. Ct. June 18, 2020) ...........................................................................................11, 36

*Ferrell v. United States*, 23 Cl. Ct. 562 (1991).................................................................21, 37

*Heisig v. United States*, 719 F.2d 1153 (Fed. Cir. 1983) ....................................... 10, 11, 22, 23

*Holley v. U.S.*, 124 F.3d 1462 (Fed. Cir. 1997)...................................................................25

*Horan v. Astrue*, 350 F. App'x 483 (2d Cir. 2009)...............................................................16

*Jordan v. United States*, 205 Ct. Cl. 65 (1974)................................................................18, 21

*Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362 (D.C.

    Cir. 1993) ..............................................................................................................34

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ...........................................................................35

*Larson v. Dep't of the Army*, 260 F.3d 1350 (Fed. Cir. 2001) .................................................16

*Lasky v. McHugh*, 92 F. Supp. 3d 3 (D. Conn. 2015)...........................................................30

*Loeh v. United States*, 73 Fed. Cl. 327 (2006)....................................................................31

*Martinez v. United States*, 914 F.2d 1486 (Fed. Cir. 1990) ....................................................34

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................................................. 10, 25, 26

*McCord v. United States*, 943 F.3d 1354 (Fed. Cir. 2019) ........................................29

*Robbins v. United States*, 29 Fed. Cl. 717 (1993).......................................................29

*Sanders v. United States*, 219 Ct. Cl. 285 (1979) ......................................................29

*Strickland v. United States,* 69 Fed. Cl. 684 (2006) ..................................................30

*United States v. Carter*, 42 M.J. 745 (A.F. Ct. Crim. App. 1995)..............................31

*United States v. Dejonge*, 16 M.J. 974 (A.F.C.M.R. 1983) .......................................35

*United States v. Hail*, No. ACM 36283, 2006 WL 3526762 (A.F. Ct. Crim.

    App. Nov. 17, 2006) ............................................................................................35

*United States v. Lee*, 43 M.J. 518, 520 (A.F. Ct. Crim. App. 1995).....................27, 34

*United States v. Reed*, 54 M.J. 37 (C.A.A.F. 2000).....................................................31

*Van Cleave v. United States*, 70 Fed. Cl. 674 (2006) .....................................11, 12, 22

*Verbeck v. United States*, 89 Fed. Cl. 47 (2009)..................................................passim

*Walters v. United States*, 175 Ct. Cl. 215, 225 (1966) ...............................................18

*Ward v. United States,* 133 Fed. Cl. 418 (2017)........................................... 17, 20, 37

*Watson v. United States*, 113 Fed. Cl. 615 (2013) ......................................................36

*Woodard v. United States*, 167 Ct. Cl. 306 (1964) .....................................................37

## STATUTES

10 U.S.C. §1552..................................................................................................passim

28 U.S.C. § 1491(a)(2) ................................................................................................37

Military Justice Act of 1983, Pub. L. 98-209 (1983).............................................33, 34

## OTHER AUTHORITIES

Army Regulation  635-200 (2016).................................................................................30

Army Regulation 40-502 (2019)................................................................................15

Army Regulation 635-40 (2006).......................................................................29, 30

Army Regulation 635-40 (2017)................................................................................17

*Army Review Boards Agency Briefing*, ARMY REVIEW BOARDS AGENCY (Dec. 3, 2018)............24

Department of the Army Pamphlet 611-21 (Nov. 22, 2017).......................................................15

Jeff Walker, The Practical Consequences of a Court-Martial Conviction, ARMY LAW 1,

12 (2001) ................................................................................31

S. Rep. No. 98-53 (1983) ................................................................................33

Under Secretary of Defense Kurta, *Memorandum for Secretaries of the Military*

*Departments: Clarifying Guidance to Military Discharge Review Boards and Boards*

*for Correction of Military/Naval Records Considering Requests by Veterans for*

*Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or*

*Sexual Harassment*, August 25, 2017 ................................................................................18

**RULES**

RCFC 52.1(c)................................................................................1

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROBERT J. LABONTE,

      Plaintiff,

    v.

THE UNITED STATES,

      Defendant.

No. 18-1784C
(Judge Hertling)

## PLAINTIFF'S MOTION FOR
## JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Rule 52.1(c) of the Rules of the Court of Federal Claims (RCFC), Mr. LaBonte respectfully requests that the Court grant judgment on the administrative record in his favor, order him medically retired, and grant him all appropriate back pay and retirement benefits to which he is entitled. Alternatively, this Court should vacate the Army Board for Correction of Military Records' decision and remand for further proceedings with specific instructions requiring a Medical Evaluation Board ("MEB") Approval Authority to (1) affirm the unanimous conclusions of the Army physicians as codified in the Narrative Summary ("NARSUM")) and (2) refer Mr. LaBonte to an informal Physical Evaluation Board (PEB).

## QUESTION PRESENTED

Was the decision by the Army Board for Correction of Military Records ("ABCMR" or "Board") to deny Mr. LaBonte medical retirement—or even the full processing through the Disability Evaluation System that he would have received in 2004 had the Army followed its own laws and procedures—arbitrary and capricious, unsupported by substantial evidence, contrary to law, and an abuse of discretion because it simply reincorporated and reiterated its previous incorrect conclusions about the evidence in support of Mr. LaBonte's claim?

1

## STATEMENT OF THE CASE

In 2018, following a decade-long fight to obtain the medical care and benefits he earned as a wounded Iraq combat veteran, Robert LaBonte, Jr., briefly appeared to have won a fair opportunity to be considered for the medical retirement status to which he is entitled. The ABCMR referred him to the disability evaluation system, asking the expert military medical professionals who composed Mr. LaBonte's Medical Evaluation Board to determine if Mr. LaBonte suffered from any medical conditions that rendered him unfit to continue his Army service prior to his separation. Their answer was a unanimous yes. Prior to his separation, Mr. LaBonte incurred a traumatic brain injury ("TBI"), post-traumatic stress disorder ("PTSD"), major depressive disorder, and generalized anxiety disorder that precluded him from performing his duties as a soldier. According to standard Army practice under the applicable regulations, Mr. LaBonte's claim should have immediately been forwarded to a Physical Evaluation Board ("PEB"), which would have made a final determination as to which of Mr. LaBonte's conditions qualified him for medical retirement benefits.

Instead, the ABCMR abruptly denied Mr. LaBonte's claim. Their decision rested solely on a medical advisory opinion by an official from the Office of the Surgeon General who possessed little relevant medical training or expertise relating to Mr. LaBonte's conditions, who had not personally examined Mr. LaBonte, and who refused to consider competent evidence as required by law. Because the ABCMR relied on this legally defective opinion, this Court properly held the ABCMR's actions unlawful and ordered Mr. LaBonte's case remanded for further proceedings.

On remand, however, the Board failed—again—to provide Mr. LaBonte with the fair, thorough evaluation of his claim that the law demands. Instead, the ABCMR rendered another arbitrary and capricious decision unsupported by substantial evidence, a decision which also violates the Due Process Clause of the Fifth Amendment of the United States Constitution. Rather

than considering the overwhelming evidence supporting Mr. LaBonte's claim, the ABCMR cursorily reproduced portions of it but then failed to draw rational connections between the facts and the Board's ultimate conclusion. Rather than obtaining a new medical opinion that considered the evidence as directed by this Court, the ABCMR relied upon a perfunctory medical opinion that merely restated the legally inadequate conclusions of its predecessor. And rather than respecting the conclusions of multiple expert military medical officers who determined that Mr. LaBonte was unfit for continued service prior to his discharge, the ABCMR disregarded their conclusions entirely by claiming—without any evidence—that the MEB physicians who evaluated Mr. LaBonte erroneously assessed his contemporaneous medical condition instead of his pre-discharge status, an action which is flatly contradicted by the plain terms of the MEB physicians' medical opinion and which would directly contravene Army regulations.

As the ABCMR now rightfully acknowledges, the Board possesses the statutory authority to refer Mr. LaBonte into the disability evaluation system and to retroactively place him in medical retirement status. There is overwhelming evidence in Mr. LaBonte's in-service and post-service medical records conclusively establishing that he suffered from multiple conditions that rendered him eligible for medical retirement prior to his discharge. On this record, there is only one conclusion properly supported by substantial evidence: Mr. LaBonte should receive the medical retirement status for which he has long been eligible.

## FACTS AND PROCEEDINGS

This is the second time that this Court has considered the legality of an ABCMR decision denying Mr. LaBonte's claim for retroactive medical retirement.

### I.    Service History

Mr. LaBonte has previously detailed his service history and the proceedings prior to his initial suit in this Court. *See* Compl. ¶ 16-102, ECF No. 1; Pl.'s Br. in Opp'n to the Gov't's Mot. to Dismiss and Pl.'s Mot. to Complete and Suppl. the Admin. R. at 3-8, ECF No. 36; Pl.'s Resp. and Cross-Mot. for J. on the Admin. R. at 4-8, ECF No. 52. He briefly re-summarizes that history for the Court's convenience here.

Mr. LaBonte enlisted in the U.S. Army in 2002 at age 18, inspired by his police officer father to become a military police officer. AR221-22. In 2003, Mr. LaBonte deployed to Iraq, where he engaged in firefights with enemy combatants, manned guard towers, supervised prisoners of war, and served as a turret gunner on combat patrols. AR223. During this deployment, Mr. LaBonte fell out of a 30-foot guard tower. AR800, 817-18. Another soldier found him at the base of the tower, unconscious and bleeding from a head wound. *Id.* Mr. LaBonte received first aid from that soldier and stitches at the local aid station. AR800, 818. The Army did not provide Mr. LaBonte with any further medical care for this head injury. AR106.

After returning from Iraq, Mr. LaBonte sought help for symptoms of mental distress, anxiety, disrupted sleep, and panic attacks—first from his chain of command and then from the Fort Hood Mental Health Clinic. AR802-08; *see also* AR769-89; 2067. Instead of ensuring that he was evaluated by a physician, Mr. LaBonte's chain of command referred him to an Army Chaplain. AR803. Mr. LaBonte next visited the Fort Hood Mental Health Clinic, where an unqualified "intake specialist" documented his symptoms and misdiagnosed him with an adjustment disorder. AR804, 873. The Mental Health Clinic did not inform Mr. LaBonte or his superiors of this

diagnosis and did not conduct any follow-up. AR804.

In 2004, shortly after his visit to the Mental Health Clinic, Mr. LaBonte learned that he was scheduled to deploy to Iraq once again. *Id*. Mr. LaBonte informed his chain of command that he was not prepared, physically or mentally, to deploy. AR805. Instead of referring him for any medical evaluation or treatment, the Army ordered Mr. LaBonte to deploy to Iraq. *Id.* Mr. LaBonte's symptoms continued to worsen as he trained to prepare for this deployment. AR805-06. Ultimately, Mr. LaBonte could not bring himself to return to his unit, and he went absent without leave for six months. AR805-06. In 2006, Mr. LaBonte returned to Fort Hood voluntarily. AR806. He pled guilty to a charge of desertion in a court-martial proceeding and was separated from the Army with a Bad Conduct Discharge. AR1176.

## II.    Medical Evaluations and Administrative Appeals

After his discharge, Mr. LaBonte continued to struggle with the untreated symptoms of his PTSD, TBI, and related conditions. AR809-10. In 2012, Mr. LaBonte sought treatment from a clinical psychologist who diagnosed him with PTSD stemming from his combat service in Iraq. AR1362-63. The psychologist determined that when Mr. LaBonte visited the Mental Health Clinic in 2004, it was "clear" that he was "seriously depressed and anxious," and "may have been a threat to himself." AR873. He concluded that Mr. LaBonte's condition should have been taken "very seriously" by the staff at Fort Hood and referred for treatment by a trained professional. *Id.*

Over the next several years, Mr. LaBonte obtained extensive medical evidence that he suffered from a TBI, PSTD and other mental health conditions prior to his discharge. In March 2014, Mr. LaBonte was evaluated by an experienced psychiatrist. AR759-68. The psychiatrist diagnosed Mr. LaBonte with PTSD resulting from his combat service in Iraq and concluded that it was "highly likely" that he had both major depressive disorder and PTSD when he presented to

the Mental Health Clinic in 2004. AR767.  In August 2015, an expert neurologist diagnosed Mr. LaBonte with TBI caused by his fall from the guard tower in 2004 based on imaging of Mr. LaBonte's brain and a thorough evaluation of the history of his symptoms. AR190.

In 2014, the Army Discharge Review Board, recognizing Mr. LaBonte's PTSD as a mitigating factor for his misconduct, relieved Mr. LaBonte's punitive discharge and upgraded his discharge to the administrative discharge of General, Under Honorable Conditions. AR118; *see also* AR639.

After receiving the upgrade an administrative discharge, in 2015, Mr. LaBonte applied to the ABCMR for retroactive medical retirement, and that proceeding is the subject of this litigation. Mr. LaBonte explained that he was entitled to medical retirement because of his permanent disability for PTSD, TBI, depression, and anxiety incurred during his service, which caused him to be unfit for service prior to his absence without leave and prior to his discharge. AR145-83.

The ABCMR initially denied Mr. LaBonte's request. However, after reviewing the Board's decision, Deputy Assistant Secretary of the Army (Review Boards) Francine Blackmon concluded that "there [wa]s sufficient evidence to grant additional relief." AR11-12. Blackmon directed the Office of the Surgeon General "to determine if [Mr. LaBonte] should have been retired or discharged by reason of physical disability through the [Disability Evaluation System]." *Id.*

The Army began this process by assigning Mr. LaBonte a Physical Evaluation Board Liaison Officer. At the Liaison Officer's request, Mr. LaBonte provided detailed post-discharge medical records. AR1796. Two Army physicians conducted an evaluation of Mr. LaBonte as part of a Medical Evaluation Board in order to determine "whether [disability evaluation system] processing was warranted at the time of separation." AR60. Their conclusions, summarized in Mr. LaBonte's Narrative Summary, stated that Mr. LaBonte failed to meet medical retention standards

in 2003 because of his PTSD, generalized anxiety disorder, and major depressive disorder, and in 2004 because of his TBI. AR62-65. They unanimously agreed that Mr. LaBonte was "not deployable" at the time he was separated because his conditions precluded him from effectively discharging the duties assigned to him as a soldier. *Id*.

Following the MEB evaluation, however, Dr. Eric L. Doane, issued a medical advisory opinion ignoring the Narrative Summary, incorrectly stating that no evidence supported Mr. LaBonte's claim, and declaring—with no factual analysis or reasoning—that Mr. LaBonte had not been eligible for disability processing at the time of his separation. AR68-70. The ABCMR adopted the Doane opinion in full as its sole basis for denying Mr. LaBonte's claim. AR71.

### III.    Initial Proceedings at the Court of Federal Claims

Mr. LaBonte filed a complaint in this Court on November 20, 2018, asserting that the ABCMR's denial of his claim was arbitrary and capricious, in bad faith, unsupported by substantial evidence, and a violation of the Due Process Clause of the Fifth Amendment. Compl. ¶ 103-26. After briefing and oral argument, this Court (1) held that it had jurisdiction over Mr. LaBonte's claim for medical retirement because the ABCMR "considered this claim on the merits;" (2) vacated the ABCMR's decision to deny Mr. LaBonte's claim as "contrary to law" because the Board "relied on a medical opinion that failed to consider medical evidence as required by 10 U.S.C. § 1552(h)(2)(B);" (3) remanded to the Board to "obtain a further medical opinion that considers the medical evidence as required by law and thereafter resolve plaintiff's claim;" and (4) dismissed all other claims for lack of jurisdiction. Order at 1, ECF No. 57 ("Order").

### IV.    Proceedings at the ABCMR and Court of Federal Claims on Remand

Pursuant to the remand order, the ABCMR obtained a medical advisory opinion from the Office of the Surgeon General. AR2431. The one-page opinion, which exclusively considered

evidence already examined in the Office of the Surgeon General's inadequate 2018 advisory opinion, concluded that "there is no evidence to support the need for disability processing" because there was "a dearth of medical records available during Mr. LaBonte's time in service." AR2432. On April 20, 2020, Mr. LaBonte submitted rebuttal comments. AR2415-27. In particular, he highlighted for the ABCMR that the medical advisory opinion again failed to consider evidence it was legally required to examine, and that the opinion drew an impermissible inference against Mr. LaBonte's claim based on a supposed "dearth" of contemporaneous medical records in his file. *Id.*

On April 29, 2020, the ABCMR issued its final opinion, denying Mr. LaBonte's claim. AR2369. The Board declined this Court's invitation to "reassert its jurisdictional defense" to Mr. LaBonte's claim by, once again, considering his claim on its merits, this time expressly acknowledging that it possessed the legal authority to retire Mr. LaBonte given "the previous upgrade of his discharge to general (under honorable conditions)[.]" AR 2408-2409. The bulk of the ABCMR's decision is devoted to recounting, without independent analysis, Mr. LaBonte's own description of his service history and the arguments he has presented to various military review boards, the results of various examinations conducted by both military and civilian physicians, and summaries of some of the evidence Mr. LaBonte has proffered during these proceedings, AR2383-2408. Despite this Court's holding that the Doane opinion "failed to consider medical evidence as required by 10 U.S.C. § 1552(h)(2)(B)," the ABCMR's decision once again incorporated and relied upon this opinion, AR2398-2399,[1] as well as the 2020 medical

---

[1] While most of the Doane opinion is reproduced essentially verbatim, the Board made several minor but notable modifications in the section on TBI. When discussing the fall that led to Mr. LaBonte's TBI, the board modified Dr. Doane's statement that "there is no documentation of this event," AR69, to read: "there is no documentation of this event *in the applicant's service records*," AR2399 (emphasis added). The Board modified Dr. Doane's statement that "the symptoms of TBI improve with time, not worsen," AR69, to read: "the symptoms of TBI *usually*

advisory opinion which failed to correct its predecessor's legal defects. AR2400-2401.

In the 44-page memorandum, the ABCMR's explanation of its reasons for denying Mr. LaBonte's claim is just four paragraphs long. AR2408-2409. The only evidence the Board cited as supporting Mr. LaBonte's claim is the "findings of the draft MEB . . . that indicated certain disabilities failed medical retention standards." AR2409. The Board rejected this evidence by saying it was "based on the state of disabilities in 2018 and not prior to service separation in 2008." *Id.* The Board did not, however, provide any explanation for this claim, which is contradicted by the physicians who completed his Narrative Summary, who unanimously concluded that Mr. LaBonte should have been medically retired prior to his separation from the Army because he "was experiencing PTSD, depression, anxiety, and mTBI symptoms after *his deployment to Iraq in 2004*[;]" that "[t]he onset of his conditions was determined to have been *during his deployment to Iraq between October 2003 and March 2004*[;]" and that "it is unlikely that any further interventions for these conditions *would have returned him to duties consistent with his rank and [Military Occupational Specialty]*." AR2397 (emphasis added). Nowhere in its decision does the ABCMR explain why it concluded the MEB did not make the evaluation it said it was making, or why there was insufficient evidence to warrant "referral into [the disability evaluation system] or disability separation/retirement." AR2409.

---

improve with time, not worsen," AR2399 (emphasis added). The Board modified Dr. Doane's statement that "Mr. LaBonte and his legal team report that he suffered a 30 foot fall and subsequent head bump," AR69, to read "the applicant and his legal team report the applicant suffered a 30-foot fall and subsequent *head injury*[.]" AR2399. The Board also omits Dr. Doane's entire paragraph on the "Regulatory requirements for examinations." *Compare* AR69 *with* AR2399. This omission is perplexing, given that the regulatory and statutory basis for the physician's opinion appears to be an essential element of what the Board requests when soliciting a medical advisory opinion, *see* AR2433 (requesting citation of the statutory and regulatory provisions supporting the opinion), which Dr. Richardson omitted, AR2432 ¶3.

## SUMMARY OF ARGUMENT

The Court should reverse the ABCMR's decision because the decision fails to meet this Court's standards of review on both substantive and procedural grounds, *see Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983), and violates due process, *see Mathews v. Eldridge*, 424 U.S. 319, 333-34 (1976).[2]

First, the Board's decision is arbitrary, capricious, and not supported by substantial evidence because it fails to meaningfully consider the overwhelming evidence that Mr. LaBonte should have been medically retired prior to his separation, as illustrated by his pre-discharge records and confirmed by post-discharge medical opinions by Army, Department of Veterans Affairs, and civilian medical professionals. The ABCMR also attempts to evade the unanimous conclusions of these physicians that Mr. LaBonte suffered multiple medically unfitting conditions prior to his discharge that would qualify him for medical retirement.  Instead, the ABCMR mischaracterizes the 2018 MEB physicians' Narrative Summary and relies on a 2018 Office of the Surgeon General medical advisory opinion that this Court has previously found legally insufficient as well as a 2020 Office of the Surgeon General advisory opinion which again fails to consider relevant evidence.

Second, the Board's decision is unlawful because it ignores the Court's remand order. Rather than complying with the Order by obtaining "a further medical opinion that considers the medical evidence as required by law," the Board procured a cursory, one-page decision that merely rehashes the 2018 Office of the Surgeon General opinion and contains its same errors and omissions. Once again, the Board failed to properly evaluate the relevant evidence as required by

---

[2] To the extent this Court determines that it previously dismissed the due process claim in Mr. LaBonte's original complaint, he reasserts it here based on the ABCMR's new decision on remand and to preserve his rights for appeal.

law and provide a rational explanation for its decision. *See Verbeck v. United States*, 89 Fed. Cl. 47, 62 (2009).

Finally, the ABCMR violated Mr. LaBonte's due process rights by ignoring the evidence he produced and, in effect, denying him the opportunity to be heard. In addition, the ABCMR violated Mr. LaBonte's due process rights by applying an entirely different presumption to his claim than it has utilized in adjudicating claims by other, similarly situated veterans.

The ABCMR has now twice proven either incapable or unwilling to give Mr. LaBonte a fair review of his claim for retroactive medical retirement status. Accordingly, this Court should grant Mr. LaBonte the medical retirement benefits he seeks or, alternatively, remand for further proceedings with specific instructions to refer Mr. LaBonte to an informal Physical Evaluation Board for expeditious processing through the disability retirement system.

## ARGUMENT

### I.    Standard of Review

A plaintiff challenging an administrative decision of the ABCMR is entitled to relief if the decision "was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Although this Court is not a "super correction board," judicial review is necessary to ensure that the Board "examine[s] relevant data and articulate[s] satisfactory explanations for their decisions." *Van Cleave v. United States*, 70 Fed. Cl. 674, 678-79 (2006). When an administrative agency makes a new decision on remand, they must "deal with the problem afresh" and issue new agency action that complies with the requirements governing that decision. *Dep't of*

*Homeland Sec. v. Regents of the Univ. of California*, No. 18–587, slip op. at 13-14 (S. Ct. June 18, 2020).

This Court may find the Board's decision arbitrary and capricious if it "fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Van Cleave* at 679. "When a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." *Id.* The deferential standard normally accorded to decisions of the Board does not excuse them from "considering all of the relevant evidence" and producing a decision that "establishes a rational connection between the facts found and the choice made." *Verbeck v. United States*, 89 Fed. Cl. 47, 62 (2009).

## II.   The ABCMR's decision is arbitrary, capricious, and unsupported by substantial evidence.

The ABCMR's decision is arbitrary, capricious, and unsupported by substantial evidence. First, it fails to consider and give due weight to the overwhelming evidence that Mr. LaBonte should have been medically retired prior to his separation, once again ignoring numerous sources of competent evidence produced both during and after his service. Second, instead of considering the overwhelming evidence in favor of Mr. LaBonte's claim, the ABCMR deals with evidence detracting from its conclusion by flatly mischaracterizing it, asserting without any basis in fact that the MEB's Narrative Summary failed to asses Mr. LaBonte's medical condition prior to his discharge. Last, the opinion impermissibly relies on a legally deficient 2020 Office of the Surgeon General medical advisory opinion, which is itself derivative of the 2018 memorandum by Dr. Eric Doane which this Court held was insufficient evidence upon which to deny Mr. LaBonte's claim. Taken together, these failures render the ABCMR's remand decision unlawful.

### a. The evidence that Mr. LaBonte should have been medically retired prior to his separation.

In denying Mr. LaBonte's application, the Board failed to properly consider the evidence in favor of granting his claim for medical retirement status. This does not mean simply that there is overwhelming evidence to support granting Mr. LaBonte's retirement (though there is). Rather, denying his claim is unsupported by substantial evidence. That is, no decisionmaker could weigh the evidence on the record before the ABCMR on remand and make the "rational connection" that the evidence requires that they deny Mr. LaBonte's application. *See Verbeck*, 89 Fed. Cl. at 62. Unable to counter the evidence in Mr. LaBonte's favor or produce evidence that Mr. LaBonte should not have been medically retired, the Board denies Mr. LaBonte the medical retirement he deserves by relying on a factually inaccurate characterization of the Narrative Summary and an advisory opinion which copies the errors of the unlawful Doane advisory opinion. The Board's failure to engage the competent evidence renders its denial of Mr. LaBonte's application's arbitrary, capricious, and unsupported by substantial evidence.

Evidence in favor of Mr. LaBonte's medical retirement includes Mr. LaBonte's contemporaneous reports of PTSD symptoms to Army medical examiners and his superiors and post-discharge medical evidence confirming his conditions from Army, VA and civilian physicians, including the MEB's Narrative Summary which found that his conditions precluded Mr. LaBonte's from performing his duties as a soldier prior to his discharge. Here is a partial list of the evidence the Board had to avoid or ignore to deny Mr. LaBonte's claim:

- In 2004 at Fort Hood, Mr. LaBonte sought help from his chain of command, reporting that he suffered from significant mental distress because of his traumatic experiences in Iraq. See, e.g., AR657-58;

13

- On June 30, 2004, Mr. LaBonte sought help from an Army mental health specialist and stated that "I can't take being here or in the military any longer" and that he hoped his chain of command would "realize[] I need to be chapterd [sic] out of the Army ASAP." *Id.* He reported symptoms including "poor disrupted sleep, decreased appetite, excessive anxiety, rapid breathing, rapid heartbeat, crying a lot, difficult[y] control[ling] worry, decreased ability to have fun, sadness, rage, anxiety, [and] hopeless[ness]." AR490;

- On October 23, 2006, an Army physician performed a physical examination of Mr. LaBonte which would be the last physical exam recorded in his active duty medical records. AR2067. Mr. LaBonte reported symptoms including "fever, chills, visual change, sore throat, chest pain, sputum, abdominal pain, vomiting, dysuria, hematuria, rash, headache, depression" and another neurological symptom that is indecipherable in the record. *Id.*

- On January 7, 2014, clinical psychologist Dr. Mark Hall concluded that Mr. LaBonte suffered from "residual symptoms of Major Depressive Disorder and [active symptoms of [PTSD]." Dr. Hall opined that it was "highly likely that he had both Disorders *when he presented to ... the Fort Hood Mental Health Clinic in 2004*." AR873 (emphasis added).

- On December 23, 2014, the VA concluded, based on a medical opinion from a VA examiner, that Mr. LaBonte suffered an "*inservice* (sic) head trauma with loss of consciousness" and was exposed to close-range mortar blasts, resulting in TBI. AR363 (emphasis added).

- The Board's October 19, 2017 decision included an advisory opinion from the Army Review Boards Agency psychiatrist, who noted that, when Mr. LaBonte was seen at Fort Hood on June 20, 2004, he was diagnosed by an enlisted Army behavioral health specialist, not a psychologist or psychiatrist. The ARBA psychiatrist concluded that "based on the symptoms documented during his mental health intake, it is clear the applicant *was suffering* from a diagnosis more severe than adjustment disorder." AR106–07 (emphasis added).

- On March 14, 2018, an MEB physician concluded that "[b]ased on the fact that he had a head trauma with LOC [loss of consciousness] and was exposed to multiple mortar blasts at close range and had AOC [alteration of consciousness] but no structural brain damage, it is at least as likely as not that he suffered mild traumatic brain injury." AR46-53;

- On March 29, 2018, another MEB Physician concluded that "[Mr. LaBonte] was experiencing PTSD, Depression, Anxiety and mTBI symptoms post his deployment from Iraq in 2004" and that "[t]hese

symptoms interred [sic] with his sleep, appetite, concentration, focus, energy, and ability to perform his duties." AR54-59;

The MEB summarized its findings based on all this evidence and their own in-person medical evaluations of Mr. LaBonte in the April 2, 2018 Narrative Summary. They concluded that Mr. LaBonte failed to meet retention standards due to four conditions: (1) "post-traumatic stress disorder;" (2) "generalized anxiety disorder;" (3) "major depressive disorder (recurrent, moderate);" and (4) "m-TBI with residuals of migraine headache and cognitive impairment." AR61. This Narrative Summary formed the basis Mr. LaBonte's "MEB Packet," which concludes that Mr. LaBonte failed to meet medical retention standards as a result of those four conditions prior to his discharge and is signed by Dr. Labib and Dr. Joseph Marasia, PhD, ABPP, Psychologist. AR1935.

Specifically, the MEB's Narrative Summary found that Mr. LaBonte could not "[c]arry and fire [an] individual assigned weapon" because of his PTSD, that he was unable to "[l]ive in an austere environment without worsening the medical condition", and that he was "not deployable" AR61. His PULHES code, which is a standard used to determine servicemembers' eligibility for continued military service,[3] concluded that on the "physical/systemic" metric Mr. LaBonte was "[u]nable to perform full effort except for brief or moderate period" and on the "psychiatric" metric he was experiencing "remission from an acute psychotic or neurotic episode . . . ."AR61; Army Regulation 40-502 ¶ 3-4 (2019). These metrics would have definitively rendered Mr. LaBonte unable to continue serving as a Military Police officer. Department of the Army Pamphlet 611-21

---

[3] The PULHES code rates a servicemember on a scale of 1-4 (with 1 indicating no or minimal limitations and 4 indicating serious limitations) in six metrics: **P**hysical/systemic, **U**pper extremity, **L**ower extremity and spine, **H**earing, **E**yes, and p**S**ychological.

¶ 10-31B(b)(2) (Nov. 22, 2017) (requiring a PULHES code of no higher than 2 for physical/systemic and no higher than 1 for psychiatric).

Rather than review and rely on this evidence, the ABCMR bases its decision on just two incorrect summaries of the evidence listed above. First, the ABCMR decision falsely states that the MEB's Narrative Summary was "based on the state of disabilities in 2018 and not prior to service separation in 2008." AR2409. The Narrative Summary and MEB Packet, however, explicitly offer opinions about Mr. LaBonte's condition "at the time of separation." AR60. The ABCMR offered no rational explanation for why it concluded otherwise. Second, the decision relies upon the 2018 and 2020 Office of the Surgeon General medical advisory opinions, which as this Court already determined for the 2018 opinion, mischaracterize and fail to consider important evidence. AR2408-09; Order at 1.

No reasonable factfinder could determine that these incorrect summaries of evidence outweigh the overwhelming primary evidence in the record in support of Mr. LaBonte's claim. The ABCMR's decision is therefore unsupported by substantial evidence.

### b. The ABCMR's decision relies on a factually incorrect characterization of the Narrative Summary.

Misstated evidence is not substantial evidence. *See, e.g.*, *Horan v. Astrue*, 350 F. App'x 483, 485 (2d Cir. 2009) (when an agency determination is "based largely on . . . factual errors, we cannot say it is supported by substantial evidence"); *Larson v. Dep't of the Army*, 260 F.3d 1350, 1356 (Fed. Cir. 2001) (overturning agency decision as not supported by substantial evidence "in light of . . . factual errors and [the agency's] incomplete treatment of . . . the record"). Because the ABCMR relied on a misstatement of the Narrative Summary's conclusions, its decision fails this Court's standard of review.

16

Despite the Board's unfounded claims to the contrary, the MEB's Narrative Summary assessed the state of Mr. LaBonte's disabilities prior to separation in 2008. First, the Narrative Summary itself gives every reason to believe that the MEB physicians comported with applicable regulations and evaluated Mr. LaBonte's condition at the time of separation. The Narrative Summary clearly states that it is concerned with Mr. LaBonte's medical conditions at the time of his service, not years later, as the Board suggests. The first page of the Narrative Summary begins: "PVT Robert J. LaBonte is … referred . . . to determine whether [disability evaluation system] processing *was warranted at the time of separation*." AR60 (emphasis added). The MEB physicians determine that Mr. LaBonte failed to meet retention standards in "2003" because of his post-traumatic stress disorder, AR62, generalized anxiety disorder, AR63, and major depressive disorder, AR64, and that he failed to meet retention standards in "2004" because of his traumatic brain injury, AR65. The ABCMR cannot escape the findings and conclusions of the Narrative Summary—"the heart of the disability evaluation system"—by relying on an unfounded assertion that it answered an entirely different question than the one the Army's own physicians plainly answered. *See Ward v. United States,* 133 Fed. Cl. 418, 421 (2017).

Second, the ABCMR's characterization of the Narrative Summary is inconsistent with the Army regulations that governed the process through which the Narrative Summary was produced. Army regulations clearly establish that when the ABCMR refers a former servicemember for disability evaluation system processing, the examiners use what is known as the "legacy" disability evaluation system to "address conditions *in the context of their status at the time of the Veteran's separation*." Army Regulation ("AR") 635-40 ¶ 4-18 (2017) (emphasis added). The record demonstrates that the MEB understood this, AR1903 (directing the West Point examiners to

17

"review the case and process accordingly via Legacy"); AR1905 ("We're doing a Legacy Board on him."), and there is nothing in the record to suggest the MEB did not follow Army regulations.

Finally, the ABCMR's mischaracterization of the Narrative Summary means that the Board has, once again, failed to consider a competent source of medical evidence that it was required to consider by law. Under both the "liberal consideration" standard codified in 10 U.S.C. §1552(h)(2) and the "substantial evidence" standard that governs all of the agency's determinations, the ABCMR must consider medical evidence produced after a servicemember has been discharged. Such consideration is even more critical to making a lawful determination when the underlying medical record is conflicting and complex. *See Jordan v. United States*, 205 Ct. Cl. 65, 72 (1974) (evidence that plaintiff had a medical condition, when the ABCMR concluded that he did not, "should have put the [ABCMR] on notice of the importance . . . of considering the applicant's medical condition subsequent to his discharge, and the professional evaluation and treatment thereof, in its determination of fitness for duty as of the date of discharge."). Post-discharge medical records "may be decisive if [they] can establish that plaintiff's incapacity while in service was substantially more serious than suspected and that previous diagnoses were inadequate or incorrect." *Walters v. United States*, 175 Ct. Cl. 215, 225 (1966); *see also* Under Secretary of Defense Kurta, *Memorandum for Secretaries of the Military Departments: Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment*, August 25, 2017 at 3 ("liberal consideration applies to applications based…on…misdiagnosed TBI or mental health conditions, including PTSD"). No reasonable decisionmaker could rely upon the legally insufficient evidence the

ABCMR credited to overcome the overwhelming evidence that Mr. LaBonte should have been medically retired, which his post-discharge medical records only confirm.

The Board found that Mr. LaBonte's PTSD was a mitigating factor in his misconduct, but that Mr. LaBonte should not have been medically retired at the time of his service. AR2409. However, the only evidence in the record that evaluates medical retention standards, rather than whether Mr. LaBonte had mental health conditions at all, weighs in Mr. LaBonte's favor, not against him.  The Narrative Summary concluded that Mr. LaBonte could not, in 2004, "[c]arry and fire [an] individual assigned weapon," that he was unable to "[l]ive in an austere environment without worsening the medical condition", and that he was "not deployable." AR61. In other words, Mr. LaBonte failed to meet the standards for medical retention prior to his discharge and should have been medically retired.

The Board cannot escape the only reasonable conclusion from the Narrative Summary and the numerous sources of competent evidence Mr. LaBonte has supplied by misstating the MEB physicians' conclusions.  As the Narrative Summary concluded, Mr. LaBonte clearly did not meet retention standards at the time of his service and should have been medically retired.

### c.  The Office of the Surgeon General medical advisory opinions do not detract from this overwhelming weight of evidence.

The unreasonableness of the ABCMR's choice to entirely disregard the MEB physicians' conclusions, bolstered by competent medical evidence produced by other military, civilian, and VA physicians, is further illustrated by the fact that the evidence the ABCMR does credit is simply not probative. The Board states that the Narrative Summary's conclusions are outweighed by "the other evidence of record addressing the state of disabilities in 2008 that indicate the applicant met medical retention standards prior to service separation." AR2409. The Board does not say what

this evidence is, but the only evidence that purportedly detracts from Mr. LaBonte's claims are the 2018 and 2020 reviews conducted by the Office of the Surgeon General physicians. *Id*.

The Office of the Surgeon General officials who authored the 2018 and 2020 advisory opinions never personally examined Mr. LaBonte and lacked significant training or expertise in any mental health or neurological field or sub-field. Compl. ¶ 74-75.  By contrast, the military, civilian, and VA physicians who conducted Mr. LaBonte's post-discharge examinations personally examined Mr. LaBonte and had training and expertise in specialties relevant to his medical conditions. See AR46-53, 191, 212, 446-53. Evidence produced by medical examiners who "are personally familiar with the individual whose condition is under inquiry" is "obviously . . . far preferable to those who did not have that opportunity and who rely on an incomplete knowledge of the written record." *Dayley v. United States*, 180 Ct. Cl. 1136, 1147-48 (1967). Evidence produced by medical examiners with specialized expertise in a field encompassing an applicant's medical issues is particularly credible. *Cf. Ward*, 133 Fed. Cl. at 429 (faulting the ABCMR for relying on a dentist's opinion rather than a gastroenterologist's in resolving medical dispute over plaintiff's severe gastroesophageal reflux).

In the 2020 medical advisory opinion, the Office of the Surgeon General official fails to consider the overwhelming evidence of Mr. LaBonte's condition during the time of his service, instead incorrectly asserting that there is "there is no documentation to indicate that Mr. LaBonte required disability processing at the time of his separation from the Army." *See* AR2432. Given the extensive competent evidence Mr. LaBonte has produced, the claim that there is "no documentation" supporting his claim is untenable.

The Office of the Surgeon General 2020 opinion is plagued by the same errors of its predecessor. In evaluating Mr. LaBonte's PTSD and related conditions, the opinion once again

notes Mr. LaBonte's misdiagnosis of adjustment disorder but does not examine the obvious symptoms of significant medical distress that he was showing at the time of the misdiagnosis. *See* AR69. As multiple physicians who examined Mr. LaBonte later confirmed, his reported symptoms indicated serious PTSD, TBI, depression, anxiety, and other conditions. AR2067. The Army Review Boards Agency Psychiatrist came to the same conclusion, finding that "based on the symptoms documented during his mental health intake, it is clear that the applicant was suffering from a diagnosis more severe than adjustment disorder, most likely PTSD." AR107. To be clear, the ABCMR does not ultimately credit the adjustment disorder diagnosis, and apparently agrees with Mr. LaBonte that he had PTSD, TBI, and related conditions instead. The Board, relying on the 2020 Office of the Surgeon General advisory opinion, cannot support its decision by vaguely citing an incorrect adjustment disorder diagnosis, which was obtained through the Army's failure to follow its own regulations and properly diagnose Mr. LaBonte and which the ABCMR itself does not seem to believe was correct. *See Ferrell v. United States*, 23 Cl. Ct. 562, 570 (1991) ("it is the agency's own procedural errors which put plaintiff into a position of having to overcome" [the presumption of fitness]"); *Jordan*, 205 Ct. Cl. at 72.

The 2020 advisory opinion makes even more egregious errors when discussing Mr. LaBonte's TBI.  Again, the opinion mirrors the unlawful 2018 opinion in attempting to undermine Mr. LaBonte's credibility by implying that the fall that triggered his TBI never occurred. The Office of the Surgeon General asserted that they "did not find any medical records to support a 30 foot fall to support the diagnosis of TBI." AR2432. Yet this statement ignores significant evidence of Mr. LaBonte's fall and the traumatic brain injury that resulted from it. In a sworn affidavit, one of Mr. LaBonte's fellow soldiers reported finding him unconscious in a pool of his own blood at the base of a guard tower; in another, a different solider recalled hearing of Mr. LaBonte's injury

and seeing "a huge gash on his forehead that was stitched up." AR217-18, AR249. In another affidavit, Mr. LaBonte's father reported receiving an email from his son the day after the fall reporting the injury, discussing the incident with his son via telephone a few days later, and he recounted the physical and personality differences his son displayed in the aftermath of the fall. AR 828-30. Finally, Mr. LaBonte's fall and subsequent injuries have repeatedly been recognized by the Army and VA decisionmakers and form the basis of Mr. LaBonte's service-connected TBI and facial scar disability rating. AR36.

The Board effectively denies this evidence exists, and simply relies on the statement in the 2020 medical advisory opinion that no *medical* records of the 30-foot fall exist. There is no basis for the ABCMR's implication, against the overwhelming evidence, that his fall never occurred. To claim as much, the ABCMR must assert that Mr. LaBonte and the other servicemembers who testified about the incident simply made it up, and that Mr. LaBonte has now been engaged in an elaborate, decade-long hoax that includes doctoring photographic evidence of his injury. AR2140. Of course, in its record review, the ABCMR did not make such a credibility determination of Mr. LaBonte, and the record would not support it. The Board simply, and impermissibly, insinuates that Mr. LaBonte is lying without making a rational connection between the facts found and the choice it made to deny his claim. *See Verbeck*, 89 Fed. Cl. at 62.

Along with echoing the conclusions and arguments from Dr. Doane's opinion, the ABCMR's explicit reliance on the 2020 opinion—which incorporates the 2018 Doane opinion— renders its conclusions arbitrary and capricious. The 2018 Doane opinion claimed that Mr. LaBonte had no symptoms of TBI or disabling PTSD at the time of his separation, plainly contrary to the overwhelming evidence in the record. AR77. Dr. Doane ignored the findings of physicians who, unlike him, had the relevant training and examined Mr. LaBonte personally. *See* AR60-67;

AR68-73, AR1935. Dr. Doane's opinion was also rife with factual misstatements, concerning Mr. LaBonte's disability rating, pre-discharge medical history, eligibility for DEERS/TRICARE, and the evidence of the fall that caused Mr. LaBonte's traumatic brain injury. *Id.* The Office of the Surgeon General's continued reliance on the Doane opinion further undermines the legality of its decision.

By relying on the 2020 Office of the Surgeon General medical advisory opinion, the Board substantially based its decision on an opinion that failed to consider any of the evidence that Mr. LaBonte produced. The ACBMR cannot cherry-pick which evidence to consider, ignoring evidence that does not conform to its own conclusions. *Heisig,* 719 F.2d at 1157; *Van Cleave v. United States*, 70 Fed. Cl. 674, 679 (2006).

In sum, the Board failed to consider "all of the competent evidence," *Heisig*, 719 F.2d at 1157. Although the Board's lengthy decision *listed* Mr. LaBonte's arguments and evidence, it did not actually engage with it or make a "rational connection" between that evidence and the it conclusion. *See Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986). In relying on an incorrect interpretation of the Narrative Summary and a legally deficient medical advisory opinion, the ABCMR remand decision fails just like the last one.

### III.   The ABCMR's decision is unlawful because the Board's decision-making process failed to comport with this Court's remand order.

In addition to being arbitrary, capricious, and unsupported by substantial evidence on its own terms, the ABCMR decision is also unlawful because the remand medical advisory opinion (1) did not comport with this Court's remand order, and (2) fails to meet statutory requirements.

*First*, this Court remanded for further proceedings with specific instructions to "obtain a further medical opinion that considers the medical evidence as required by law and thereafter resolve the plaintiff's claim." Order at 1. Yet rather than comply with this Court's instructions, the

Board instead obtained a cursory, one-page medical advisory opinion that not only duplicated the errors, omissions, and the exact language of the 2018 Office of the Surgeon General advisory opinion, but also relied directly upon it. AR2432.

Contrary to this Court's remand order, the Board relied upon a medical advisory opinion that failed to cure the legal defects of its predecessor, and indeed substantially relied upon the same 2018 opinion this Court found to be a legally insufficient basis upon which to dispose of Mr. LaBonte's claim. The Board reproduces essentially the entire discredited Doane opinion in the portion of its decision listing findings of fact. AR2398–99. Furthermore, in the new 2020 advisory opinion, the new medical advisory opinion highlights *only* the Doane opinion in its summary of the evidence considered, noting that the author reviewed "all available documents, to include the United States Court of Federal Claims No. 18-1784 and a previous MFR written by Dr. Eric Doane." AR2432 (emphasis added). It then makes the same improper conclusions of the Doane opinion, considering only *in-service* medical records and erroneously concluding that "there is *no* evidence to support the need for disability processing prior to his discharge in 2008." (emphasis added). *Id.* As this Court has already concluded that reliance on the Doane opinion was contrary to law because it failed to consider substantial relevant medical evidence, this Court should similarly reject the new decision from the Board for the same reasons.

*Second*, the Board's reliance on these two legally deficient medical advisory opinions renders its ultimate decision unlawful because the advisory opinions do not provide the legally required advice. When the Board evaluates a claim based on PTSD and TBI, they are required to make their decision with the "advice and counsel" of a "psychiatrist, psychologist, or social worker." 10 U.S.C. §1552(g)(2). Relatedly, the Board must "review medical evidence of the Secretary of Veterans Affairs or a civilian health care provider that is presented by the claimant"

and grant the servicemember's claim "liberal consideration." 10 U.S.C. §1552(h). Those requirements cannot be fulfilled with an advisory opinion like the ones here, that fail to review the relevant medical evidence.[4]

Instead, after allegedly reviewing "all available documents," the medical advisory opinion concludes that: (1) there is "no documentation" that Mr. LaBonte had a condition which required disability processing in 2008; (2) there was "no further [behavioral health] documentation" after his evaluation on June 30, 2004; and (3) there were not "any medical records" to support Mr. LaBonte's TBI. AR2432. All these conclusions are plainly incorrect and belie the fact that, once again, the physician preparing the advisory opinion chose to confine their review to only the evidence within Mr. LaBonte's in-service medical records. It is thus unmistakably clear that the new advisory opinion does not comply with this Court's order to "obtain a new medical opinion that comports with the governing law by evaluating the full record and *not simply the Plaintiff's military medical records*." Tr. of Oral Arg. 43:21–23 (emphasis added). Because the medical advisory opinions relied upon by the board do not evaluate the full record as ordered by this Court, the Board has no basis to proffer an explanation that makes a rational connection between the lay and VA medical evidence and their ultimate decision. *See Verbeck*, 89 Fed. Cl. at 62.

## IV.    The ABCMR's decision violates Mr. LaBonte's due process rights under the Fifth Amendment of the United States Constitution.

In addition to being arbitrary, capricious, unsupported by substantial evidence, and

---

[4] The ABCMR members themselves cannot fulfill these standards, because they are "[Department of the Army] Senior Civilians," assembled randomly into a three-person panel. *Army Review Boards Agency Briefing*, ARMY REVIEW BOARDS AGENCY (Dec. 3, 2018), https://arba.army.pentagon.mil/documents/AgencyBriefing20181203.pdf; A*pplicant's Guide*, Army Board for Correction of Military Records, https://arba.army.pentagon.mil/documents/ABCMRApplicantsGuide20160601.pdf. They lack the expertise or training to independently properly evaluate, contextualize, and weigh medical evidence, especially regarding complex, frequently misdiagnosed conditions like PTSD.

contrary to this Court's previous order and 10 U.S.C. §1552, the ABCMR's denial of Mr. LaBonte's claim violates the Due Process Clause of the Fifth Amendment of the United States Constitution.

As a preliminary matter, the Court of Federal Claims has ancillary jurisdiction over a constitutional claim when jurisdiction has been previously established over a Tucker Act claim. *See Holley v. U.S.*, 124 F.3d 1462, 1466 (Fed. Cir. 1997). As this Court previously established, it has jurisdiction over Mr. LaBonte's Tucker Act claim that he should have been medically retired. Order at 1. Military disability retirement status and its corresponding benefits constitute a statutorily granted property interest within the meaning of the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319 (1976); *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009) (holding that veterans' "entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment").

The ABCMR's decision violates due process for two reasons. First, the ABCMR's repeated refusals to adequately consider the medical evidence Mr. LaBonte has proffered denies him the "meaningful" opportunity to be heard in an agency adjudication that the Due Process Clause demands. Second, the ABCMR's application of an entirely different presumption to Mr. LaBonte's case than it has applied to other similarly situated servicemembers demonstrates that Mr. LaBonte has not received the same process afforded to others.

### a. The ABCMR's persistent failure to consider the competent medical evidence violates the Due Process Clause by denying him an "opportunity to be heard at a meaningful time and in a meaningful manner."

Procedural due process requires notice and an opportunity to be heard prior to deprivation of life, liberty, or property. *See Mathews*, 424 U.S. at 333. It is not enough that the opportunity to be heard merely comport with technical legal rules. Rather, "the fundamental requirement of due

process is the opportunity to be heard 'at a meaningful time and *in a meaningful manner.*'" *Id*. at 333-34 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) (emphasis added). Notably, the Supreme Court has specifically noted that one of the factors that contributed to the "fairness," "reliability," and "probative value" of an administrative process used to determine whether a disabled claimant meets the requirements for a grant of benefits is whether the adjudicators consider "unbiased medical reports by physician specialists . . . concerning a subject whom they have personally examined." *See Mathews*, at 343-44.

Mr. LaBonte has submitted numerous unbiased medical reports by expert physicians who have personally examined him along with substantial amounts of evidence corroborating the existence and severity of his PTSD and TBI during his service. The decision rendered by the ABCMR so diminishes the value of that evidence as to render it virtually meaningless. In the "Board Discussion" portion of the ABCMR decision, all of the evidence submitted by Mr. LaBonte, including the medical opinions of Dr. Hall, Dr. Chitpheng, Dr. Lee, and Dr. Rathi—all of whom personally examined Mr. LaBonte—are reduced to a single phrase: "the Board considered the lay and medical evidence submitted by the applicant." AR2408. The Board then spends the rest of the relevant paragraph explaining why they chose to discount the medical opinions of the Army's own physicians documented in the 2016 ARBA advisory opinion and the 2018 MEB. AR2408-09. The Board never engages in any substantive discussion of the many pieces of evidence that show Mr. LaBonte *did* suffer from severe PTSD and TBI prior to his discharge. Merely comporting with the technical rules by receiving Mr. LaBonte's evidence and pasting it into the "Counsel states" portion of the decisional document, AR2372, does not provide Mr. LaBonte a meaningful opportunity to be heard and thereby constitutes a denial of his right to substantive due process.

**b. The ABCMR's application of an entirely different presumption to Mr. LaBonte's case than it has deployed in other similar decisions denies him the same fair process afforded to others.**

The ABCMR has treated Mr. LaBonte differently than similarly situated applicants, denying him his right to due process. In one case before the ABCMR in 2016, the Board referred an applicant to IDES based on a VA disability rating of 70 percent for PTSD and an ARBA Clinical Psychologist's opinion that the PTSD existed at the time of service. ABCMR Proceedings, Docket No. AR20150000040 (May 26, 2016).[5] The Board concluded that based on these two pieces of evidence, "it is reasonable to presume that [the servicemember's] PTSD condition may have failed retention standards." *Id.* It is unclear why the Board refused to apply the same presumption to Mr. LaBonte's case, where there is significantly more evidence of the existence of PTSD and TBI.

That case is not the only case in which ABCMR treated applicants much differently than its treatment of Mr. LaBonte. In a case before the Board in 2008, *before* the implementation of the liberal consideration standard, the Board decided that, "as a matter of equity," a servicemember who had not presented sufficient evidence should, nevertheless, undergo MEB and PEB processing. ABCMR Proceedings, Docket No. AR20080000492 (Aug. 12, 2008). In yet another case, the Board granted an MEB "[a]s a matter of equity, when there was "*some indication* that her condition interfered with the performance of [the servicemember's] duties." (emphasis added). Mr. LaBonte would easily pass this bar, considering that his Narrative Summary concluded that he was unfit to continue as a Military Police Officer. Finally, the Board has referred a servicemember for MEB/PEB processing on the basis of an adjustment disorder and PTSD diagnosis, even when the servicemember lacked service-connected awards for either condition. ABCMR Proceedings, Docket No. 20140000675 (Oct. 7, 2014). These cases demonstrate that Mr.

---

[5] ABCMR decisions are available at https://boards.law.af.mil/ARMY_BCMR.htm

LaBonte has not been treated the same as similarly situated applicants, violating his due process rights.

V.     **Mr. LaBonte is eligible for medical retirement benefits, and the ABCMR has the legal authority to grant them.**

The Board did not disclaim its authority to provide the relief Mr. LaBonte seeks, and in fact made a decision on the merits. Because the Board's authority has been a subject of this litigation, however, it is important to understand why the ABCMR was correct in exercising its jurisdiction on remand.

Mr. LaBonte seeks retroactive placement in medical retirement status entitling him to backpay and TRICARE health insurance, which would extend coverage to his minor children. This is relief that the ABCMR is plainly authorized to issue as a general matter. *See* 10 U.S.C. §1552(a); *see also McCord v. United States*, 943 F.3d 1354 (Fed. Cir. 2019); *Robbins v. United States*, 29 Fed. Cl. 717 (1993).

As for Mr. LaBonte specifically, no statutory or regulatory provisions prohibit the Army from processing him through the disability evaluation system and retroactively medically retiring him. Pursuant to Army Regulation 635-40, Part 4-2 (2006), Mr. LaBonte *was previously* ineligible for disability evaluation system processing after being sentenced to a Bad Conduct Discharge because he was, at that time, "under sentence of . . . punitive discharge." However, the Army Discharge Review Board restored Mr. LaBonte's eligibility for disability retirement processing when, in a lawful exercise of the Secretary of the Army's Article 74(b) clemency power, it relieved him of his punitive discharge and upgraded it to a "General, Under Honorable Conditions" discharge. AR636-38. In other words, the discharge review board did not overturn or review his court-martial conviction, but did change his sentence to no longer include a discharge with a punitive characterization. Because Mr. LaBonte's court-martial sentence no longer includes a

punitive discharge, placing Mr. LaBonte in medical retirement status does not in any way require the ABCMR to alter, amend, or overturn any portion of his concededly unreviewable conviction under the Uniform Code of Military Justice. Thus, the ABCMR's authority to grant Mr. LaBonte the relief that he seeks is in no way impinged by 10 U.S.C. §1552(f). Accordingly, the ABCMR possesses the clear legal authority to provide Mr. LaBonte with the "thorough and fitting relief" his claim clearly warrants. *Sanders v. United States*, 219 Ct. Cl. 285, 301 (1979).

### a. The ABCMR can grant Mr. LaBonte's request for retroactive medical retirement status because he is not currently "under sentence of . . . a punitive discharge."

Mr. LaBonte's present eligibility for disability retirement processing is confirmed by examining the source of the Army Discharge Review Board's clemency authority. When a military review board acts on a petition for clemency, it acts pursuant to Article 74 of the Uniform Code of Military Justice. *See Lasky v. McHugh*, 92 F. Supp. 3d 3, 13 (D. Conn. 2015). (defining the military review board's clemency authority as identical to the Secretary's Article 74 powers). Article 74(b) of the UCMJ states that the military review board "may, for good cause, substitute an administrative form of discharge for a discharge or dismissal executed in accordance with the sentence of a court-martial." Mr. LaBonte's Bad Conduct Discharge was "executed in accordance with the sentence of a court-martial." AR328. A "General, Under Honorable Conditions" discharge is an "administrative form of discharge." *See* Army Reg. 635-200, Part 3-7(b) (listing a "general discharge" with a "characterization of under honorable conditions" in a section titled "**Types of administrative discharges / character of service**"); *see also Strickland v. United States,* 69 Fed. Cl. 684, 693 (2006) ("[T]he Assistant Secretary approved Plaintiff's administrative discharge with a characterization of General (Under Honorable Conditions.")). When the Army Discharge Review Board granted Mr. LaBonte's request for clemency, it "substitute[d] an administrative form of

discharge for a discharge . . . executed in accordance with the sentence of a court-martial," rendering Army Reg. 635-40 inapplicable.

The only barrier preventing the Army from processing Mr. LaBonte through the disability retirement system was his punitive discharge, which rendered him ineligible under Army Regulation 635-40, Part 4-2. Yet because Mr. LaBonte is not currently "under" a punitive discharge, he can be processed through disability evaluation system. The ABCMR, as it must, acknowledges that this interpretation is the correct one:

> "The Board, while noting that the applicant was ineligible for referral into the Disability Evaluation System (DES) prior to service separation because of [sic] he was charged with an offense under the Uniform Code of Military Justice (UCMJ) that could, and did, result in a punitive discharge, considered whether the applicant failed medical retention standards and was unfit prior to service separation **in light of the previous upgrade of his discharge to general (under honorable conditions)."** AR 2408 (emphasis added).

This interpretation is consistent with decisions issued by courts within the Uniform Code of Military Justice system recognizing that clemency restores to a servicemember the eligibility to receive retirement benefits that they lost when they were sentenced to a punitive discharge. *See United States v. Carter*, 42 M.J. 745, 747–48 (A.F. Ct. Crim. App. 1995) ("On November 19, 1993, the convening authority changed the bad-conduct discharge to an additional 24 months' confinement. . . . On September 9, 1996, the Secretary of the Air Force approved appellant's application for immediate retirement in the grade of technical sergeant."). It is consistent with this Court's interpretation of the effect of clemency on a servicemember's ability to receive retirement benefits. *See Loeh v. United States*, 73 Fed. Cl. 327, 330 (2006) ("Other than requesting clemency, soldiers have no venue to appeal the loss of retirement benefits that result from the court-martial's sentence of a punitive discharge or dismissal.") (quoting Jeff Walker, The Practical Consequences of a Court-Martial Conviction, ARMY LAW 1, 12 (2001)). And it is consistent with the purpose

of clemency which, without disturbing a servicemember's conviction under the Uniform Code of Military Justice, relieves a servicemember of one element of their sentence and, by extension, the collateral consequences that attach to that sentence. *See United States v. Reed*, 54 M.J. 37, 45 (C.A.A.F. 2000) ("Because the denial of retirement benefits is not found in the UCMJ . . . such benefits have historically been considered by military courts to be a collateral consequence of a sentence and not properly part of that sentence."). Because no Army regulation prevents the ABCMR from processing a servicemember with a "General, Under Honorable Conditions" discharge through the disability evaluation system, Mr. LaBonte is plainly eligible to receive medical retirement benefits.

> **b. The ABCMR's authority to grant Mr. LaBonte relief under 10 U.S.C. §1552(a) is not limited by 10 U.S.C. §1552(f), which is irrelevant to his claim.**

The ABCMR possesses jurisdiction not just under Army Regulation, but also under statute. The Board possesses expansive authority to amend military records to correct "errors" and "injustices" in a former servicemembers' record. 10 U.S.C. §1552(a). Mr. LaBonte's request for relief asks for something plainly within the ABCMR's authority because Mr. LaBonte: (1) does not challenge his court-martial conviction or any element of the underlying proceedings; (2) need not seek correction of any element of his court-martial proceedings to be eligible for medical retirement processing, having already received clemency; and (3) seeks relief involving placement in medical retirement status, which is expressly not an element of a court-martial sentence. The limitation on the ABCMR's §1552(a) that Congress imposed in enacting 10 U.S.C. §1552(f) in no way alters the ABCMR's authority to correct Mr. LaBonte's records to reflect retroactive medical retirement.

Congress circumscribed the ABCMR's §1552(a) authority through the passage of the "Military Justice Act of 1983." Pub. L. 98-209 (1983) (codified as 10 U.S.C. §1552(f)). In relevant

part, §1552(f) provides that "[w]ith respect to records of courts-martial and related administrative records pertaining to court-martial cases tried or reviewed under . . . the Uniform Code of Military Justice . . . action under subsection (a) may extend to— (1) correction of a record to reflect actions taken by reviewing authorities under the [UCMJ]; or (2) action on the sentence of a court-martial for purposes of clemency." However, §1552(f) does nothing to limit the ABCMR's authority as it pertains to Mr. LaBonte's claim for retroactive medical retirement benefits. Mr. LaBonte has already received clemency from the Army Discharge Review Board that restored his eligibility for medical retirement by reducing the severity of his court-martial sentence. And, as Defendant has conceded, Mr. LaBonte does not challenge any element of his underlying court-martial conviction or current sentence. *See* ECF 36 at 13. Because granting Mr. LaBonte's requested relief does not require the ABCMR to alter, amend, or remove any "records" of his court martial, §1552(f) does nothing to obviate the ABCMR's obligation to correct the "errors" and "injustices" in Mr. LaBonte's record.

Both the text and purpose of 10 U.S.C. §1552(f) clearly establish that the provision does not preclude the ABCMR from granting Mr. LaBonte's request for retroactive medical retirement benefits. §1552(f) is inapplicable because Mr. LaBonte is not seeking correction of a "record" of his court-martial proceedings or a "related administrative record." As defined in the Military Justice Act of 1983, the term "record, when used in connection with the proceedings of a court-martial, means . . . (A) an official written transcript, written summary, or other writing relating to the proceedings; or (B) an official audiotape, videotape, or similar material from which sound, or sound and visual images, depicting the proceedings may be reproduced." Pub. L. 98-209 (1983); *see also* R.C.M. 103(23) at II-6. A "related administrative record" is a non-original record that incorporates or reflects the facts or legal conclusions codified in a "record" of a court-martial

proceeding. The purpose of this limitation is to foster an independent military criminal justice system and to protect the finality of its decisions:

> "The bill adjusts the authority of the administrative boards established pursuant to 10 U.S.C. §1552 (Boards for the Correction of Military/Naval Records) and §1553 (Discharge Review Boards). In view of the military justice appellate system these administrative bodies should not render legal judgments on the results of courts-martial by overturning, as a matter of law, findings or sentences of courts-martial. This task is the job of the appellate review system established by the UCMJ." S. Rep. No. 98-53, at 11 (1983).

Consistent with the text and purpose of §1552(f), the ABCMR could not, for example, change the underlying factual record developed during Mr. LaBonte's court-martial proceedings, nor could it alter the court-martial convening authority's legal conclusions by declaring Mr. LaBonte innocent on charges brought under the Uniform Code of Military Justice. *See, e.g.*, *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 364 & n.2 (D.C. Cir. 1993) (ABCMR "properly decided that it lacked jurisdiction" where sole issue was setting aside servicemembers' court-martial conviction or deleting record of court-martial proceedings entirely); *Martinez v. United States*, 914 F.2d 1486, 1488 (Fed. Cir. 1990) (ABCMR "has no authority to void court-martial convictions" under § 1552(f)). Similarly, the ABCMR could not order the "expungement of the record of [a] summary court-martial." *Bolton v. United States*, 914 F.3d 401, 408 (6th Cir. 2019).

Clearly, the ABCMR cannot change the facts and legal conclusions established through Mr. LaBonte's court-martial proceedings by altering either the "records" of those proceedings or "related administrative records." But nothing Mr. LaBonte asks for requires the ABCMR to do anything prohibited by §1552(f). By naming two possible sentences arising from a court-martial conviction—"punitive discharge" and "dismissal"—Army Regulation 635-40 establishes that neither a court-martial conviction standing alone nor a sentence of reduction in pay, reduction in

grade, period of confinement, and a "General, Under Honorable Conditions" discharge—the various terms of Mr. LaBonte's sentence as it now stands—precludes a servicemember from being processed through the disability evaluation system. *See, e.g.*, *AMS Associates v. United States*, 737 F.3d 1338 (Fed. Cir. 2013) (applying the *expressio unius est exclusio alterius* canon of statutory interpretation to agency regulations).

Recognizing a servicemember's restored eligibility for medical retirement benefits does not require the ABCMR to act on a record of the sentence of the court martial itself because ineligibility for medical retirement processing is "indisputabl[y] . . . a consequence of the [court-martial] sentence and forms no part of the sentence itself." *United States v. Lee*, 43 M.J. 518, 520 (A.F. Ct. Crim. App. 1995). Even if some element of Mr. LaBonte's current legally valid sentence did preclude immediate disability evaluation system processing—which, because Mr. LaBonte's punitive discharge has already been upgraded, it does not—the ABCMR could amend that sentence through an exercise of clemency pursuant to 10 U.S.C. §1552(f)(2).

No regulation or statute states that a servicemember's records cannot at the same time include a court-martial conviction and medical retirement status, as long as the court-martial sentence does not include a punitive discharge. Given that the convening authorities in court-martial proceedings often recommend reducing the severity of a servicemember's sentence in order to preserve their future eligibility for retirement benefits, granting retirement benefits to a servicemember who has been *convicted and sentenced to anything other than a punitive discharge* under the Uniform Code of Military Justice is routine. *See, e.g.*, *United States v. Hail*, No. ACM 36283, 2006 WL 3526762, at *3 (A.F. Ct. Crim. App. Nov. 17, 2006) (noting that "[t]he clemency package particularly highlighted the impact of the loss of retirement"); *United States v. Dejonge*, 16 M.J. 974, 977 (A.F.C.M.R. 1983) ("We deliberately did not impose a punitive discharge as part

of the sentence. Our primary reason for not doing so was to allow his family to retain eligibility for medical benefits and other benefits normally available to active duty or retired military dependents.").

### c. The ABCMR has now issued two rulings disposing of Mr. LaBonte's claims on the merits without doubting its own statutory authority to issue appropriate relief.

The ABCMR's own conclusion that the relevant statutes and regulations provide it the authority to medically retire Mr. LaBonte is the correct one, and it is entitled to deference. *See generally Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). By contrast, Defendant's newfound claim, presented for the first time during the last round of litigation, that Army regulations preclude the ABCMR from granting relief is a perfect example of a "convenient litigating position or *post hoc* rationalization[n] advanced to defend past agency action against attack" that a court "should decline to defer to." *Id.* at 17. *See also Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *Watson v. United States*, 113 Fed. Cl. 615, 635 (2013) ("Plaintiff counters that defendant's argument is merely a 'post hoc rationalization of counsel' because the Board did not rely on this line of reasoning in reaching its findings. . . . The court agrees."); *Verbeck v. United States*, 97 Fed. Cl. 443, 460 n.25 (2011) (noting that government arguments aimed at "substantiat[ing] the Board's conclusions" which were "submitted for the first time in response to [the plaintiff's] petition for judicial review" amounted to "improper post hoc justification[s]"). Defendant must "defend its actions based on the reasons in gave when it acted." *Department of Homeland Security v. Regents of Univ. of Cal.*, No. 18–587, slip op. at 17 (2020). This court should defer to the ABCMR's correct determination that it possessed the legal authority to grant Mr. LaBonte the relief he seeks and, consistent with basic principles of administrative law, dispose of Mr. LaBonte's case on its merits.

**d.  This Court can and should intervene to ensure that the ABCMR promptly provides Mr. LaBonte with the benefits he is legally entitled to.**

The ABCMR's failure to comport with this Court's remand order and provide Mr. LaBonte with the thorough, dispassionate review the law demands indicates that absent further judicial intervention, the Board may continue to unlawfully delay proceedings and deny Mr. LaBonte the benefits to which he is legally entitled. To prevent further delay, and because the current record cannot support denying Mr. LaBonte's claims, this Court should order the ABCMR to provide Mr. LaBonte his requested relief. The Tucker Act explicitly states "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, *issue orders directing . . . placement in appropriate duty or retirement status*, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2) (emphasis added); *see also Ferrell*, 23 Cl. Ct. at 572 (ordering Air Force Board for Correction of Military Records to AFBCMR to "correct plaintiff's military records to reflect a disability discharge"); *Beckham v. United States*, 392 F.2d 619, 626 (Ct. Cl. 1968) (holding that plaintiff is entitled to disability retirement pay and entering judgment to that effect); *Woodard v. United States*, 167 Ct. Cl. 306, 306 (1964) (directing military to provide retroactive disability retirement pay).

This Court should order Mr. LaBonte be placed in medical retirement status. Alternatively, this Court may vacate the ABCMR's decision and remand for further proceedings with specific instructions requiring an MEB Approval Authority to (1) approve the unanimous conclusions of the Army MEB physicians as codified in the Narrative Summary  and (2) refer Mr. LaBonte to an informal Physical Evaluation Board (PEB) for expeditious processing. *Cf. Ward v. United States*, 133 Fed. Cl. 418, 432 (2017) (ordering disability retirement processing consistent with "the

procedures, presumptions and requirements in Army Regulation 635–40, ¶ 3–2" to determine "whether Plaintiff is entitled to disability benefits").

## CONCLUSION

Mr. LaBonte suffered grievous injuries while serving in Iraq more than 15 years ago. The Army's persistent failures to appropriately diagnose and treat those injuries have only exacerbated their debilitating consequences. In the nearly five years since Mr. LaBonte first sought relief from the ABCMR, the Board has steadfastly refused to give his claim the fair, thorough, dispassionate review that the law demands. Instead of obtaining such review after remand from this Court, Mr. LaBonte received a cursory review from the Board, which relied on the same Doane opinion and the same unlawfully narrow view of the evidence that was previously deemed contrary to law. Continued delay will irreparably harm Mr. LaBonte by denying him and his children the medical care and benefits he earned through his service to his country.

Given the ABCMR's inexcusable obfuscations and delays, it is up to this Court to ensure that Mr. LaBonte receives the benefits he earned through his service and which he needs to care for himself and his family. Accordingly, this Court should vacate the Army Board for Correction of Military Records's decision and remand for further proceedings with specific instructions requiring a Medical Evaluation Board (MEB) Approval Authority to (1) affirm the unanimous conclusions of the Army physicians as codified in the Narrative Summary  and (2) refer Mr. LaBonte to an informal Physical Evaluation Board (PEB).

Dated: July 1, 2020                    Respectfully submitted,

                                       /s/ Michael J. Wishnie, by Renée A. Burbank

                                       Sam Davis, Law Student Intern
                                       Matthew D. Handley, Law Student Intern
                                       Jared Quigley, Law Student Intern
                                       Renée A. Burbank, Supervising Attorney
                                       Michael J. Wishnie, Supervising Attorney
                                       Veterans Legal Services Clinic
                                       Jerome N. Frank Legal Services Organization
                                       Yale Law School[*]
                                       P.O. Box 209090
                                       New Haven, CT 06520-9090
                                       t. (203) 432-4800
                                       f. (203) 432-1426
                                       renee.burbank@ylsclinics.org
                                       Attorneys for Plaintiff

---

[*] This brief does not purport to represent the views of Yale Law School, if any.