No. 18-1784C
(Judge Hertling)

_____

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

ROBERT J. LABONTE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

_____

DEFENDANT'S RENEWED MOTION TO DISMISS AND, IN THE
ALTERNATIVE, CROSS-MOTION FOR JUDGMENT ON THE
ADMINSTRATIVE RECORD REGARDING REMAND DECISION,
AND OPPOSITION TO PLAINITFF'S MOTION

_____

ETHAN P. DAVIS
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:

MAJOR NICHOLAS D. MORJAL
Litigation Attorney
United States Army
U.S. Army Legal Services Agency

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
PO Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele:  (202) 305-7788
Fax: (202) 305-7643
Email: Richard.Schroeder@usdoj.gov

Dated: August 19, 2020

Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

QUESTIONS PRESENTED....................................................................................... 1

NATURE OF THE CASE .......................................................................................... 2

STATEMENT OF THE FACTS ................................................................................ 6

    I.     Mr. LaBonte's Deployment To Iraq And Subsequent Conviction ......................... 7

    II.    Administrative Proceedings And The Court's Remand Order .............................. 8

    III.   The ABCMR's Denial Of Mr. LaBonte's Claim On Remand............................ 10

          A.     Dr. Richardson's Advisory Opinion Finding That The Record Did Not Require Disability Processing At The Time Of Separation............... 10

          B.     The ABCMR Decision Denying Relief To Mr. LaBonte ......................... 11

ARGUMENT ........................................................................................................... 14

    I.     Legal Standards................................................................................................ 14

          A.     The Court's Standard Of Review............................................................. 14

          B.     Legal Framework For Disability Retirement Claims................................ 16

    II.    Mr. LaBonte's Remaining Claim Should Be Dismissed For Lack of Jurisdiction Or Because It Fails To State A Claim On Which Relief May Be Granted ....................................................................................................... 16

          A.     The United States Respectfully Reasserts Its Jurisdictional Defenses.................................................................................................. 17

          B.     Mr. Labonte Did Not Become Eligible For Military Retirement After The Characterization Of Service Was Upgraded ........................... 22

          C.     The Board Lacks The Authority To Change Mr. Labonte's Record Outside Of Its Authority Under 10 U.S.C. § 1552(f)................................ 27

          D.     The Board Originally Concluded It Did Not Have Legal Authority To Grant Mr. LaBonte's Request, And Its Decision On The Merits Does Undermine Its Original Conclusion................................................. 29

III.    Mr. LaBonte Has Failed To Provide Any Basis On Which To Overturn The
        Remand Results ................................................................................................. 31

        A.      Mr. LaBonte's Claim Must Be Considered In Light Of His Service
                History, His Court-Martial Conviction, And His Resulting Discharge .... 31

        B.      Mr. LaBonte's Attack On The 2020 Surgeon General's Advisory
                Opinion Concerning His Alleged 30 Foot Fall From A Guard Tower Is
                Unwarranted .......................................................................................... 36

        C.      Mr. Labonte Merely Disagrees With How The Board Weighed The
                Evidence ................................................................................................ 37

                1.      Mere Disagreement As To How The ABCMR Weighed The
                        Evidence Provides No Basis To Overturn The Board's
                        Decision ..................................................................................... 38

                2.      The Board Reasonably Weighed The Evidence And
                        Appropriately Denied Mr. LaBonte's Claim ............................... 39

CONCLUSION ................................................................................................................ 48

## **TABLE OF AUTHORITIES**

**CASES**                                                                          **PAGE(S)**

*Adams v. United States,*
    117 Fed. Cl. 628 (2014) ............................................................................. 36

*Anderson v. United States,*
    111 Fed. Cl. 572 (Fed. Cl. 2013) ............................................................... 45

*Antonellis v. United States,*
    723 F.3d 1328 (Fed. Cir. 2013) .................................................................. 38

*Arbaugh v. Y & H Corp.,*
    546 U.S. 500 (2006) .................................................................................... 30

*Balboa Ins. Co. v. United States,*
    775 Fed. 2d 1158 (Fed. Cir. 1985) ............................................................. 38

*Banks v. United States,*
    741 F.3d 1268 (Fed. Cir. 2014) .................................................................. 15

*Bolton v. Department of Navy Board for Naval Corrections,*
    914 F.3d 401 (6th Cir. 2019) ................................................................. 28, 29

*Bowman Transp., Inc. v. United States,*
    419 U.S. 281 (1974) .................................................................................... 38

*Caguas Cent. Fed. Sav. Bank v. United States,*
    215 F.3d 1304 (Fed. Cir. 2000) .................................................................. 18

*Cent. Pines Land Co., L.L.C. v. United States,*
    697 F.3d 1360 (Fed. Cir. 2012) .................................................................. 30

*Central Freight Lines v. United States,*
    87 Fed. Cl. 104 (2009) ........................................................................... 14, 15

*Chambers v. United States,*
    417 F.3d 1218 (Fed. Cir. 2005) ......................................................... 19, 20, 21

*Clayton v. United States,*
    225 Ct. Cl. 593 (1980) ................................................................................ 15

*Colon v. United States,*
    71 Fed. Cl. 473 (Fed. Cl. 2006) ................................................................. 20

*Consolidated Edison Co. of N.Y. v. NLRB,*
  305 U.S. 197 (1938) ................................................................................................ 15

*Cooper v. Marsh*,
  807 F.2d 988 (Fed. Cir. 1986) .............................................................................. 28

*Dayley v. United States,*
  180 Ct. Cl. 1136 (1967) ........................................................................................ 43

*DeBatto v. United States,*
  87 Fed.Cl. 172 (2009), *aff'd,* 393 Fed. App'x 722 (Fed. Cir. 2010) ...................... 25

*Dickinson v. Zurko,*
  527 U.S. 150 (1999) .............................................................................................. 15

*Dodson v. United States*,
  988 F.2d 1199 (Ct. Cl. 1993) ................................................................................ 32

*Dooley v. Dep't of Veterans Affairs*,
  306 F. App'x 594 (Fed. Cir. 2009) ........................................................................ 30

*Freeman v. United States,*
  875 F.3d 623 (Fed. Cir. 2017) ......................................................................... 15, 17

*Gay v. United States,*
  116 Fed. Cl. 22 (2014) ............................................................................................ 8

*Gossage v. United States,*
  394 Fed. App'x. 695 (Fed. Cir. 2010) ................................................................... 25

*Hale v. United States*,
  107 Fed. Cl. 339, 347 (2012), *aff'd,* 497 Fed. App'x 43 (Fed. Cir. 2012) .............. 38

*Heisig* v. *United States,*
  719 F.2d 1153 (Fed. Cir. 1983) ........................................................... 15, 16, 31, 38

*Holley v. United States,*
  124 F.3d 1462 (Fed. Cir. 1997) ............................................................................. 45

*James v. Caldera,*
  159 F.3d 573 (Fed. Cir. 1998) .............................................................................. 45

*Jan's Helicopter Serv. v. F.A.A.,*
  525 F.3d 1299 (Fed. Cir. 2008) ....................................................................... 15, 17

*Jeun v. United States*,
    128 Fed. Cl. 203 (2016) ........................................................................... 30

*Ka Young Lee v. Unemployment Comp. Bd. of Review*,
    No. 1455 C.D. 2012, 2013 WL 3973802 (Pa. Commw. Ct. Apr. 25, 2013) ........................... 29

*Lechliter v. United States,*
    70 Fed. Cl. 536 (Fed. Cl. 2006) ................................................................... 45

*Loeh v. United States*,
    73 Fed. Cl. 327 (2006) ........................................................................... 25

*Martinez v. United States*,
    333 F.3d 1295 (Fed. Cir. 2003) ................................................................... 18

*McNutt v. Gen. Motors Acceptance Corp.*,
    298 U.S. 178 (1936) ............................................................................. 19

*Melendez-Camilo*,
    642 F.3d 1040 (Fed. Cir. 2011) ................................................................... 45

*Moyer v. United States*,
    190 F.3d 1314 (Fed. Cir. 1999) ................................................................... 24

*Piotrowski v. United States,*
    722 Fed. App'x. 982 (Fed. 2018) .................................................................. 18

*Pittman v. Dep't of Justice*,
    486 F.3d 1276 (Fed. Cir. 2007) ................................................................ 30, 31

*Real v. United States,*
    906 F.2d 1557 (Fed. Cir. 1990) ............................................................. 19, 20, 21

*Riser v. United States*,
    97 Fed. Cl. 679 (2011) ........................................................................... 16

*Roberts v. United States,*
    242 F.3d 1065 (Fed. Cir. 2001) ................................................................... 19

*Sabree v. United States,*
    90 Fed. Cl. 683 (2009) ....................................................................... 17, 21

*Schnable v. United States,*
    105 Fed. Cl. 610 (2012) .......................................................................... 21

*Shaw v. United States,*
    100 Fed. Cl. 259 (2011) ........................................................................... 8

*Skinner v. United States,*
   594 F.2d 824 (Ct. Cl. 1979) ................................................................. 15

*Slesinski v. United States,*
   34 Fed. Cl. 159 (1995) ........................................................................ 8

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ............................................................................. 14

*Stone v. United States,*
   60 Ct. Cl. 129 (1963) .......................................................................... 34

*United States v. Carter,*
   42 M.J. 745 (A.F. Ct. Crim. App. 1995) ............................................. 24

*United States v. Reed,*
   54 M.J. 37 (C.A.A.F. 2000) ................................................................ 24

*Walls v. United States,*
   582 F.3d 1358 (Fed. Cir. 2009) .......................................................... 10

*Walters v. United States,*
   175 Ct. Cl. 215 (1966) ......................................................... 33, 34, 35, 42

*Wesolowski v. United States,*
   174 Ct. Cl. 682 (1966) ........................................................................ 38

*Zavislak v. United States,*
   29 Fed. Cl. 525 (1993) ........................................................................ 38

## **STATUTES**

10 U.S.C. §§ 1201-1221 ........................................................................ 16

10 U.S.C. § 1201 ............................................................................... 16, 25

10 U.S.C. § 1203 .................................................................................. 16

10 U.S.C. § 1552 ............................................................................. passim

10 U.S.C. § 1553 ................................................................................... 8

28 U.S.C. § 1491(a)(1) .......................................................................... 18

28 U.S.C. § 2501 ............................................................................. 18, 19

**REGULATION**

32 C.F.R. § 581.2 ............................................................................................................ 8

**RULES**

RCFC 12(b)(1) .......................................................................................................... 1, 31

RCFC 12(b)(6) .......................................................................................................... 1, 31

RCFC 52.1 ..................................................................................................................... 1

RCFC 52.2 ................................................................................................................... 30

**OTHER AUTHORITIES**

H.R. REP. 98-549 (1983) ............................................................................................ 25

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROBERT J. LABONTE,    )
           )
   Plaintiff,     )
           )
   v.        )   No. 18-1784C
           )   (Judge Hertling)
THE UNITED STATES,    )
           )
   Defendant.    )

## DEFENDANT'S RENEWED MOTION TO DISMISS AND, IN THE ALTERNATIVE, CROSS-MOTION FOR JUDGMENT ON THE ADMINSTRATIVE RECORD REGARDING REMAND DECISION, AND OPPOSITION TO PLAINITFF'S MOTION

Pursuant to Rule 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss this action because the Court does not possess jurisdiction to entertain the claims of plaintiff, Robert LaBonte, and because Mr. LaBonte has failed to state a claim upon which relief may be granted. Alternatively, pursuant to RCFC 52.1, the United States respectfully requests that the Court deny Mr. LaBonte's motion for judgment on the administrative record challenging the remand redetermination (Remand Results) of the Army Board for Correction of Military Records (ABCMR or board), and grant our cross-motion.[1]

## QUESTIONS PRESENTED

1. Although Mr. LaBonte was discharged from the Army pursuant to his court-martial conviction, and although the conviction is final and can no longer be challenged, he argues that the ABCMR erred by not correcting his records to reflect that he was medically retired. The board, in its original decision, concluded that it lacked authority to grant such relief.

---

[1] "AR__" refers to the administrative record. "Compl. __" refers to the complaint. Pl. Br. refers to plaintiff's motion for judgment on the administrative record. References are to page numbers and, where shown, paragraphs.

After the Court dismissed Mr. LaBonte's complaint, with the exception of his claim that the Army should have considered him for medical retirement before his court-martial conviction, the board denied the claim on the merits.  Mr. LaBonte does not and cannot challenge his conviction or discharge, his claim for medical retirement is barred by the Court's statute of limitations, the Court cannot direct the board to award him medical retirement, and Mr. LaBonte has otherwise failed to establish jurisdiction or present a legal right to relief.  Should the Court dismiss Mr. LaBonte's claim for lack of jurisdiction, or because Mr. LaBonte has failed to state a claim upon which relief may be granted?

2.      Mr. LaBonte has failed to establish that at the time of his service, he had a disability that rendered him unfit to serve.  Mr. LaBonte was separated not as the result of his disability, but because he was absent without leave from November 2005 until June 2006, for which he was court-martialed for desertion.  Mr. LaBonte pled guilty and was discharged.  His court-martial conviction is final.  Although Mr. LaBonte claims that the evidence of an *unfitting* condition is overwhelming, the relevant medical and other evidence on which he relies does not come close to substantiating his claim.  To the contrary, the ABCMR, in weighing all of the evidence, reasonably determined that the evidence did not support his claim.  Should the cross-motion of the United States for judgment on the administrative record be granted?

**NATURE OF THE CASE**

Mr. LaBonte challenges the ABCMR's April 29, 2020 Remand Results in which the board, for the second time, denied Mr. LaBonte's application to correct his records to show that he was medically retired.  Because Mr. LaBonte has failed to establish any basis for obtaining relief, the Court should deny Mr. LaBonte's motion, grant the Government's cross-motion, and enter judgment in favor of the United States dismissing this action.

Mr. LaBonte has failed to establish that the board possesses the authority to grant him the relief he seeks in light of his court-martial conviction, which is final, or that the Court possesses jurisdiction to entertain his remaining claim.  Nor has Mr. LaBonte established any legal right to obtain the medical retirement he seeks.  Further, insofar as LaBonte claims that he was entitled to relief as a matter of equity, or that the Court should direct the board to grant him medical retirement, the Court cannot grant Mr. LaBonte such relief.  Alternatively, the board's decision on remand to deny Mr. LaBonte claim must be sustained on the merits because it was soundly reasoned, supported by substantial evidence, consistent with law, and otherwise proper.  Mr. LaBonte's objections go to the weight of the evidence, and he is attempting to have the Court reweigh the evidence and overturn the board's reasonable judgment call, which is beyond the applicable standard of review.

Further, Mr. LaBonte attempts to treat this case as a routine disability retirement matter, which it is not.  Mr. LaBonte seeks disability retirement despite being discharged as a direct consequence of his court-conviction for desertion, which was the result of his having been absent without leave (AWOL) from late 2005 until mid-2006.  Mr. LaBonte did not raise the medical conditions for which he now seeks disability retirement in defense of his court-martial or in mitigation of his sentence, but pled guilty.  And Mr. LaBonte did not apply for disability retirement until years after his discharge, effectively asking the ABCMR to ignore his court-martial, determine that he had an unfitting condition before going AWOL, and grant him medical retirement.  Mr. LaBonte appears to view his court-martial and resulting discharge as mere inconveniences, and he attempts to shoehorn his claim into a system that was not designed to provide medical retirement benefits to service members discharged under different circumstances from his own.  Because Mr. LaBonte's court-martial prevents him from entering the Integrated

Disability Evaluation System (IDES) under Army regulations, and placing him in medical retirement would change his court-martial record outside of the authority of the board, his court-martial cannot be treated as inconsequential, as Mr. LaBonte wishes.

As for the merits, while Mr. LaBonte spends much of his opening brief focusing on his medical conditions, the board accepted as a given that Mr. LaBonte had service related post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI). *See* AR2408-09 ¶ 3. But the board did not find that Mr. LaBonte was unfit to serve, which is the issue in this case. Specifically, the board stated:

> While acknowledging the diagnosed PTSD and TBI that existed prior to service separation and resultant mitigation of the misconduct by these conditions . . . a preponderance of the evidence reflected that the applicant met medical retention standards prior to service separation and referral into DES or disability separation/retirement was not warranted.

AR2408-2409 ¶ 3.

Mr. LaBonte severely overstates the strength of his evidence, alleging that the ABCMR failed "to consider and give due weight to the *overwhelming evidence* that" he "should have been medically retired prior to his separation." Pl. Br. 12 (emphasis added). And Mr. LaBonte contends that his evidence of an unfitting condition is so strong that "*no reasonable decisionmaker* could [have relied] on the legally insufficient evidence the ABCMR credited to overcome the *overwhelming evidence*" that he "should have been medically retired . . . ." Pl. Br. 18-19. The evidence he cites comes nowhere close to living up to Mr. LaBonte's description.

Mr. LaBonte alleges that in 2004, he notified his chain of command that he suffered mental distress as result of traumatic experiences in Iraq. Pl. Br. 13 (citing AR657-658). He further alleges that on June 30, 2004, he advised a mental health specialist that he had experienced certain emotional symptoms, including anxiety, and that he wanted to be

administratively discharged out of the Army.  AR13 (citing AR457-458; AR490).  And he alleges that on October 23, 2006 – the date of his court-martial – he reported various physical symptoms and that he was depressed.  Pl. Br. 14 (citing AR2067).  This is not close to overwhelming evidence, as Mr. LaBonte claims.

Mr. LaBonte's post-service medical evidence likewise fails to live up to its billing.  He cites the January 7, 2014 opinion of Dr. Mark Hall who indicated that Mr. LaBonte presently had a major depressive disorder and PTSD and, according to Mr. LaBonte's own statements, found that it was "'highly likely'" that Mr. LaBonte had those conditions at Fort Hood in 2004.  Pl. Br. 14 (citing AR873).  Dr. Hall's one-page opinion, however, contains no such statement regarding Mr. LaBonte's condition in 2004.  *See* AR873.

Mr. LaBonte also relies on the December 23, 2014 decision of the Department of Veterans Affairs (VA), which indicated he had in-service trauma to his head and was exposed to mortar blasts at close range, which resulted in "mild" TBI.  AR363.  Missing from Mr. LaBonte's summary of the VA decision is a finding that Mr. LaBonte was medically unfit which, in any event, is not the VA's role.  *See* Pl. Br. 14.  Mr. LaBonte also cites an October 19, 2017 Army Review Board Agency (ARBA) report that opined that his June 30, 2004 examination supported a diagnosis of a condition more severe than an adjustment disorder, but the report did not find him unfit.  Pl. Br. 14 (citing AR106-AR107).

Mr. LaBonte likewise cites a March 14, 2018 medical evaluation board (MEB) report to support the notion that he suffered head trauma and loss of consciousness, that he was exposed to mortar blasts at close range, and that he "at least as likely as not that he suffered mild traumatic brain injury[,]" but he does not claim that the report found him to be medically unfit to serve prior to his discharge.  *See* Pl. Br. 14 (citing AR46-53).  While Mr. LaBonte relies on a March

29, 2018 MEB report that he had experienced certain symptoms in 2004 after his deployment to Iraq that allegedly interfered with the performance of his duties, this does not establish that he was medically unable to continue to serve.  Pl. Br. 14-15 (AR54-59); *see* AR59 (block 10).

Even the centerpiece of his case – the MEB's April 2, 2018 narrative summary – provides little support for Mr. LaBonte's claim.  *See* Pl. Br. 15-16.  While Mr. LaBonte contends, incorrectly, that the ABCMR "falsely states" that the document "was 'based on the state of disabilities in 2018 and not prior to service separation in 2008[,]'" *see* Pl. Br. 16 (citing AR2409), the report actually states:

> **10:  Quality Assurance Check:**
>
> * * *
>
>     b.  **Timeliness of Information Statement:**  The information contained in this Narrative Summary reflects the service-member's condition *as of the date prepared* as per available records.

AR66 (emphasis added).  Thus, the ABCMR was correct.  Mr. LaBonte simply has overlooked unequivocal language consistent with the board's finding that "the draft MEB" appears "based on the state of disabilities in 2018 and not prior to service separation in 2008."  *See* Pl. Br. 9.

Finally, while the record contains substantial evidence supporting the ABCMR's decision, what evidence is not in the record also supports the Army's conclusion that Mr. Labonte was fit for duty at the time he was court-martialed, and that is the lack of evidence from the court-martial process regarding the impact of his alleged unfitting conditions.  One would think that, if in fact Mr. Labonte had an incapacitating head injury or PTSD, the lawyer defending him at his court-martial would have mentioned these facts as a defense to his misconduct, or at least as mitigating factors on sentencing.  Mr. Labonte has failed to produce this type of evidence in this matter.

Thus, the board's well-supported decision on remand should be sustained.

## STATEMENT OF THE FACTS

### I.    Mr. LaBonte's Deployment To Iraq And Subsequent Conviction

After enlisting in the Army, Mr. LaBonte was deployed to Tikrit, Iraq.  AR797 ¶ 57.  Mr.

LaBonte alleges that while there, he was involved in armed combat and witnessed disturbing

events.  Compl. 6-7 ¶¶ 20-24.  Mr. LaBonte also alleges that on February 6, 2004, he was injured

in a fall.  Compl. 7 ¶¶ 26-27.  After returning to the United States in March 2004, Mr. LaBonte

twice went AWOL (absent without leave), leaving the base to see his girlfriend.  *See* AR2385 ¶

12(a).  Mr. LaBonte contends that in November 2005, shortly before the unit to which he was

then assigned was scheduled to deploy to Iraq, he "went home to Connecticut for his

grandfather's funeral on emergency leave."  Compl. 9-10 ¶¶ 40, 42.  Thereafter, Mr. LaBonte

alleges that "he found himself unable to return to his impending deployment" and "instead

remained at his parents' home for about six months."  Compl. 10 ¶ 42.

After returning to the base on or about June 5, 2006, Mr. LaBonte was charged with

desertion "with intent to shirk important service, namely deployment to and service in Iraq[.]"

AR265; *see also* AR643; Compl. 10 ¶ 45.  On October 23, 2006, Mr. LaBonte was found guilty

at a special court-martial pursuant to his guilty plea.  AR1176.  Pursuant to a pre-trial agreement,

Mr. LaBonte, among other things, voluntarily agreed to accept any sentence where a bad conduct

discharge was adjudged.  AR1176.  He was sentenced to four months confinement at Fort Sill,

Oklahoma, a reduction and forfeiture of pay, and a bad conduct discharge.  AR1176; AR643 ¶ 2;

*see also* Compl. 10 ¶¶ 46-47.

Although Mr. LaBonte was advised that he could seek appellate review of his court-

martial from the Court of Appeals for the Armed Forces (CAAF) and the Supreme Court of the

United States, there is no evidence on the record suggesting that Mr. LaBonte sought to obtain

further review of his conviction.  *See* AR1181 ¶ 5 (signed post-trial and appellate rights form).

Similarly, there is no evidence in the record that Mr. Labonte raised as an affirmative defense or

as mitigating factors the medical conditions he now alleges were clearly evident at the time of his

court-martial.  *See* AR1227-31; AR1282; AR1310-14; AR1338.

**II.**   **Administrative Proceedings And The Court's Remand Order**

Six years after he was discharged in 2014, Mr. LaBonte was first diagnosed with post-

traumatic stress disorder (PTSD).  *See* AR767.  Mr. LaBonte subsequently petitioned the VA, the

Army Discharge Review Board (ADRB),[2] and the Army Board for Correction of Military

Records,[3] to change his record and for various benefits.  *See, e.g.*, AR648 (application to ADRB

for review of records).  All granted Mr. LaBonte some form of relief.  *See, e.g.*, AR875 (VA

letter notifying Mr. LaBonte that his service record is "not a bar to VA Benefits . . . .").

In September, 2014, the ADRB upgraded Mr. LaBonte's "*characterization of service* to

general under honorable conditions," but did not upgrade the narrative reason for his discharge.

AR647 (emphasis added); *see also* DD Form 214 (DD-214), AR637, blocks 18, 22.b, 24, and 28.

It noted that a "change in the reason for discharge" was "not authorized under the Federal

statute."  AR641.

On October 19, 2017, the ABCMR amended Mr. LaBonte's DD-214 to reflect some of

his military accomplishments.  *See* AR114.  However, the board found that it was statutorily "not

empowered to set aside a conviction" and thus could not order him medically retired.  AR115 ¶

---

[2] "The ADRB reviews discharges of former soldiers to determine whether they are proper and equitable."  *Gay v. United States,* 116 Fed. Cl. 22, 29 (2014) (citing 10 U.S.C. § 1553; 32 C.F.R. § 581.2; *Shaw v. United States,* 100 Fed. Cl. 259, 262 (2011)).

[3] "The ABCMR was established to implement the Secretary of the Army's discretionary authority to correct a soldier's military records."  *Slesinski v. United States*, 34 Fed. Cl. 159, 163 (1995).

12 (citing 10 U.S.C. § 1552). And the board concluded that because Mr. LaBonte's "discharge resulted from his court-martial conviction, he [was] ineligible for processing through the" Physical Disability Evaluation System (PDES) "for possible medical retirement" and, as a result, there was "no basis to amend [his] DD Form 214 by changing the reason and authority for separation." AR115 ¶¶ 12-13.

In regard to Mr. LaBonte's request that his characterization of service be changed from General (Under Honorable Conditions) to Honorable, the board reasoned that while the "documentation reasonably supports the existence of PTSD at the time of the offense that led to his discharge . . . taking into consideration the length of his unauthorized absence during a period of war, it appears his service did not rise to that level meriting a fully honorable characterization of service." AR115 ¶ 11.

In a November 27, 2017 memorandum, the Deputy Assistant Secretary of the Army (Review Boards) referred the ABCMR's decision to the Office of the Surgeon General (OTSG) of the Army to determine whether Mr. LaBonte "should have been retired or discharged by reason of physical disability through the Integrated Disability Evaluation System (IDES)." AR81 ¶ 2. The referral memorandum states, in part, as follows:

> Should a determination be made that the applicant should have been separated under the IDES, these proceedings will serve as authority to void his *administrative* separation and to issue him the appropriate separation retroactive to his original separation date, with entitlement to all back pay and allowance and/or retired pay, less any entitlements already received.

AR81 ¶ 2.b (emphasis added). Mr. LaBonte, however, was separated as a result of his court-martial. *See* AR637, block 28.

As a result of the referral, Mr. LaBonte's case was examined to determine whether Mr. LaBonte should have been discharged due to physical disability. *See* AR77. In a memorandum

signed by Dr. Eric Doane, the Army's Office of the Surgeon General (OTSG) determined that Mr. LaBonte did not require disability processing prior to separation.  *See* AR77-79; *see also* AR73 (letter notifying Mr. LaBonte of the decision).

Mr. LaBonte commenced this action on November 20, 2018, challenging the ABCMR's decision to deny him medical retirement, seeking correction of his records to show that he was discharged pursuant to a disability, and asserting an ancillary constitutional claim.  Compl. 21 ¶ 106, 24 ¶ 125.  The Court dismissed all of Mr. LaBonte's claims, but one, for "want of jurisdiction due to the plaintiff's conviction by court martial."  AR2435.  As to Mr. LaBonte's claim for medical retirement, the Court stated that "[b]ecause the ABCMR relied on a medical opinion that failed to consider medical evidence as required by 10 U.S.C. § 1552(h)(2)(B), its decision to reject plaintiff's claim for medical retirement is contrary to law."  AR2435 (citing *Walls v. United States*, 582 F.3d 1358 (Fed. Cir. 2009)).  The Court remanded the case for the ABCMR to "obtain a further medical opinion that considers the medical evidence as required by law and thereafter resolve plaintiff's claim."  AR2435.  The Court noted that the Government could reassert its jurisdictional defense should the plaintiff seek further relief.  *Id.*

III.     **The ABCMR's Denial Of Mr. LaBonte's Claim On Remand**

   A.     **Dr. Richardson's Advisory Opinion Finding That The Record Did Not Require Disability Processing At The Time Of Separation**

On April, 2020, Dr. Denise Richardson issued an advisory opinion regarding Mr. LaBonte's "request for 'reconsideration of OTSG's review of his records to the Disability Evaluation System.'"  AR2432 ¶ 1 (quoting the January OTSG memorandum at AR2433).  She indicated that she had reviewed "all available documents, to include the United States Court of Federal Claims No. 18-1784 and a previous [memorandum] written by Dr. Eric Doane dated May 15, 2018."  AR2432 ¶ 2.  Her opinion was then endorsed by the OTSG.  AR2431.  Dr.

Richardson found that there was "no documentation to indicate that Mr. LaBonte required disability processing at the time of his separation from the Army." AR2432 ¶ 3.

Dr. Richardson noted that when Mr. LaBonte was evaluated after his second AWOL on June 30, 2004, he stated that "the military was 'causing problems back home for [him]'" and that he wanted "'to be chaptered out of the Army ASAP.'" AR2432 ¶ 3. Dr. Richardson further observed that Mr. LaBonte was "subsequently given a diagnosis of an Adjustment Disorder and did not return for treatment" and that there also were no additional behavioral health records concerning Mr. LaBonte after that visit. AR2432 ¶ 3. Dr. Richardson also indicated that she had not located any in-service "medical records to support a 30 foot fall to support the diagnosis of" traumatic brain injury (TBI). AR2432 ¶ 3.

**B.     The ABCMR Decision Denying Relief To Mr. LaBonte**

On April 29, 2020, the ABCMR found that – even given "liberal consideration" – Mr. LaBonte failed to demonstrate by a "preponderance of evidence an error or injustice warranting the requested relief . . . ." AR2408 ¶ 2. It found that while Mr. LaBonte's PTSD was a "mitigating factor in the misconduct that led to the UCMJ action and subsequent discharge[,]" the evidence did not "support a finding that [Mr. LaBonte] failed medical retention standards or had any unfitting conditions . . . warranting a disability separation/retirement prior to service separation." AR2408 ¶ 3. Among other things, the board relied on the information and evidence described in the paragraphs below.

Specifically, the board determined that, on November 14, 2002, a doctor performing a medical exam on Mr. LaBonte for his enlistment noted a scar on his forehead. *See* AR1443; AR2383 ¶ 4 (documenting the board's analysis of the evidence). In messages from the day after his alleged fall from a 30-foot tower, Mr. LaBonte mentioned that he "kinda got hurt last night"

11

but that he was "all good . . . ." AR1565; *see* AR 2384 ¶ 8 (documenting the board's analysis).

The board found "no documentation in the applicant's military service or medical records . . .

which makes reference to [a] 30 foot fall from a guard tower or any subsequent medical

treatment for his resultant injuries, including stitches or bed rest." AR2384 ¶ 10; *see generally*

AR1366-1470.

The board also found that Mr. LaBonte had indicated he had "very hazy memories of

what happened that night."  AR2394 ¶ d; *see also* AR800 ¶ 81.  And there is no evidence in the

record of anyone seeing this fall; rather, the soldier who found Mr. LaBonte "thought Rob had

fallen" but "did not see him fall . . . ."  AR818 ¶ 39 (affidavit); *see also* AR1362 (letter from

psychologist stating that "[Mr. LaBonte] does not remember what happened that caused the

injury.").  The board found that Mr. LaBonte's medical records from after the unit's return to

Fort Hood, Texas did not indicate medical issues related to a fall from a 30-foot tower.  *See*

AR2384 ¶ 10.

The board's opinion also notes that on June 30, 2004, Mr. LaBonte visited a clinic on

base and stated that his reason for visiting was that "the military was causing him problems back

home and he couldn't take being there or in the military any longer."  AR2384 ¶ 11

(documenting the board's analysis); *see also* AR770.  Mr. LaBonte stated that his girlfriend had

gotten pregnant, and since he signed up one year ago he "hasn't liked the army."  AR778; *see*

AR2384 ¶ 11.  He experienced "loss of friends" and had "no friends here."  AR778.  Since

coming back to the United States, he had gone "AWOL [twice] to go home and be [with his]

girlfriend."  AR778.  He told his doctor on June 30, 2004 that the "main problem started about 2

weeks ago."  AR778.  The board further explained that Mr. LaBonte listed only "knee surgery"

for past medical history, and his "mental status exam showed he was alert and oriented, [and]

was cooperative."  AR2385 ¶¶ 12(c)-(d); *see also* AR778-783.  Mr. LaBonte was diagnosed with an adjustment disorder, told that he could come back for another appointment if he needed one, and informed of Army separation procedures.  *See* AR2385 ¶ 12(e); *see also* AR778-783.

Additionally the board found that shortly before his unit was set to deploy to Iraq, Mr. LaBonte had another medical examination.  *See* AR2386 ¶ 15.  On a pre-deployment health form dated November 7, 2005, Mr. LaBonte noted that his health in general was "excellent," that he had no medical problems, that he had not sought mental health counseling or care in the past year, and that he did not have any questions about his health.  AR 1424; *see* AR2386 ¶ 15.  He was listed as "deployable."  AR1424.

The ABCMR further noted that Mr. LaBonte subsequently went AWOL and, after returning to Fort Hood in June 2006, he was charged with desertion.  AR2386-87 ¶¶ 17-20; Compl. 9-10 ¶¶ 40, 42.  He pled guilty, citing problems at home as the reason for his misconduct, but making no mention of any alleged injury or unfitting condition  AR1310; *see also* AR807 ¶ 29-30.  In an October 23, 2006 letter, Mr. LaBonte's wife wrote to the Army to "defend [Mr. LaBonte's] actions in hope of a lesser punishment."  AR1569.  She did not mention a head injury, a 30-foot fall, or any mental health issues, and represented that Mr. LaBonte "chose to come home and try to fix the problems between us."  AR1569; *see* AR2387-88 ¶ 25.

In its decision, the board also considered the evidence and information from 2012 and the years thereafter.  *See generally* AR2389-2400 ¶¶ 32-60.  This included letters and records from medical professionals who examined Mr. LaBonte after the Army discharged him; records of VA, ADRB, and prior ABCMR proceedings; affidavits from fellow soldiers and family members; the OTSG advisory opinions; and Mr. LaBonte's counsel's comments and arguments. *See generally* AR2389-2400 ¶¶ 32-60.

The board also considered "counsel's contentions regarding the findings of the draft MEB conducted at West Point during the 2018 OTSG review that indicated certain disabilities failed medical retention standards." AR2409 ¶ 3. The board found, however, that the "draft MEB appears" to have been "based on the state of disabilities in 2018 and not prior to service separation in 2008 . . . [and such evidence was] outweighed by the other evidence of record discussing the state of disabilities in 2008 that indicate [Mr. LaBonte] met medical retention standards prior to service separation." AR2409 ¶ 3.

"While acknowledging the diagnosed PTSD and TBI that existed prior to service separation," the board found the mitigation of misconduct because of these diagnoses had been "recognized in the previous upgrade from a bad conduct to a general (under honorable conditions) discharge." AR2409 ¶¶ 3-4. The board concluded that, even given Mr. LaBonte's later diagnoses and status upgrade, those factors did not "outweigh the severity of the misconduct and a full upgrade to honorable is not warranted." AR2409 ¶ 4. Mr. LaBonte challenges the ABCMR's Remand Results.

## ARGUMENT

### I.   Legal Standards

#### A.   The Court's Standard Of Review

The existence of jurisdiction is a threshold matter in every case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). The plaintiff bears the burden of establishing jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Once jurisdiction is challenged, a plaintiff cannot rely upon mere allegations; the plaintiff must bring forth competent proof to establish jurisdiction. *See id.* at 189. If the Court does not possess subject-matter jurisdiction over the plaintiff's claim, the case should proceed no further. *Central*

14

*Freight Lines v. United States*, 87 Fed. Cl. 104, 107 (2009).  "When . . . a motion to dismiss

'challenges the truth of the jurisdictional facts,' the Court of Federal Claims 'may consider

relevant evidence in order to resolve the factual dispute. . . .'  In such cases, the plaintiff has the

burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Freeman v.*

*United States,* 875 F.3d 623, 627-28 (Fed. Cir. 2017) (quoting *Banks v. United States,* 741 F.3d

1268, 1277 (Fed. Cir. 2014)).

To survive a motion to dismiss for failure to state a claim, a complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Kuntz v. United States,* 141 Fed. Cl. 713, 716 (2019) (citing *Ashcroft v. Iqbal,* 556 U.S.

662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "Under the

Tucker Act, if a plaintiff's claim does not fall within the scope of a money mandating source, the

court must dismiss the case for failing to state a claim on which relief can be granted.  *Id.* (citing

*Jan's Helicopter Serv. v. F.A.A.,* 525 F.3d 1299, 1309 (Fed. Cir. 2008).

"'[R]eview of the administrative decision is limited to determining whether the . . . action

was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to

law, regulation, or mandatory published procedure of a substantive nature by which [the

complainant] has been seriously prejudiced.'"  *Heisig* v. *United States,* 719 F.2d 1153, 1156

(Fed. Cir. 1983) (quoting *Clayton v. United States,* 225 Ct. Cl. 593, 595 (1980)).  The standard of

review is narrow, and the Court does not function as a "super correction board."  *Skinner v.*

*United States*, 594 F.2d 824, 830 (Ct. Cl. 1979).  The board's decision will comply with the

substantial evidence standard so long as a "'reasonable mind might accept' [the] particular

evidentiary record as 'adequate to support [the contested] conclusion.'"  *Dickinson v. Zurko,* 527

U.S. 150, 162 (1999) (quoting *Consolidated Edison Co. of N.Y. v. NLRB,* 305 U.S. 197, 229

(1938)). "So long as the board considered the relevant evidence and came to a reasonable conclusion, this Court will not disturb the board's decision." *Riser v. United States*, 97 Fed. Cl. 679, 683-84 (2011) (quoting *Heisig*, 719 F.2d at 1157).

###    B.    Legal Framework For Disability Retirement Claims

A service member may be entitled to retirement benefits or medical severance pay if disabled while serving on active duty. 10 U.S.C. §§ 1201-1221.  The Secretary of each service (and review boards exercising their authorities) may place members in disability retirement status upon a finding that the member was unable to perform military duties, by reason of disability, while the member was on active duty.  10 U.S.C. § 1201.  If a disability is considered permanent and rated at 30 percent disabling or higher, the member is placed in permanent retired status.  10 U.S.C. § 1201.  If the disability is less than 30 percent, the member is entitled only to medical severance pay.  10 U.S.C. § 1203.

While MEBs "reflect all of a soldier's medical problems and physical limitations[,]" only a Physical Evaluation Board (PEB) "will make the determination of fitness or unfitness."  Army Reg. 40-501 ¶ 3-4 (Jun. 2006).  Only service members found to be "unfit" are entitled to be retired or separated with disability benefits.  DOD Instruction (DoDI) 1332.38 ¶ E3.P4.1. (Nov. 1996) (incorporating Change No. 1, July 2006).  An MEB narrative summary (NARSUM), "will not reflect a conclusion of unfitness."  Army Reg. 645-40 ¶ 4.11(f). (2006).  The Federal Circuit has explained that when it comes to determining who is fit or unfit for continued service, the military's decision is subject to substantial deference.  *See Heisig,* 719 F.2d at 1156.

## II.    Mr. LaBonte's Remaining Claim Should Be Dismissed For Lack Of Jurisdiction Or Because It Fails To State A Claim On Which Relief May Be Granted

"In determining whether the Court of Federal Claims has jurisdiction," the claim must be "founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation

that [plaintiff] is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Service,* 525 F.3d at 1309.  Thus, Mr. LaBonte must not only cite a money mandating statue, he must make a non-frivolous claim that he is among the class who may recover.  And Mr. LaBonte, not the Government, has the burden to establish jurisdiction. *Freeman,* 875 F.3d at 627-28 (citation omitted).  Mr. LaBonte was discharged pursuant to a court-martial that is now final.  Thus, he must establish that under those circumstances, he falls within the class of plaintiffs who may obtain the relief that he seeks – medical retirement.  For the reasons discussed below, Mr. LaBonte has not satisfied that jurisdictional threshold and, even if he has, Mr. LaBonte does not state a claim on which relief may be granted.

### A.   <u>The United States Respectfully Reasserts Its Jurisdictional Defenses</u>

Pursuant to the Court's remand order, the only claim that survived dismissal was Mr. LaBonte's claim that he should have been retired before his court-martial.  Mr. LaBonte has failed to establish that the Court possesses jurisdiction to grant him relief.  As such, we respectfully reassert the jurisdictional arguments in our original motion to dismiss.

First, as we discuss in the subsections that follow, Mr. LaBonte has failed to establish that he is within the class of soldiers who may seek to have their records corrected to grant them medical retirement pursuant to the statutory and regulatory framework upon which he relies. *See Jan's Helicopter Service,* 525 F.3d at 1309.

Second, Mr. LaBonte's claim is untimely.  "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501. The statute of limitations is jurisdictional. *See Sabree v. United States,* 90 Fed. Cl. 683, 691 (2009) ("six-year time bar on actions against the United States is jurisdictional, because filing within the six-year period is a

condition of the waiver of sovereign immunity in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1)") (citing *Caguas Cent. Fed. Sav. Bank v. United States,* 215 F.3d 1304, 1310 (Fed. Cir. 2000)) (additional citations omitted).

A claim for back pay arising from an alleged unlawful discharge accrues when the service member is discharged. *See Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (citations omitted). "The service member . . . has the right to sue immediately upon discharge . . . ." *Id.* "If the plaintiff does not file suit within the six-year statute of limitations prescribed in section 2501, the plaintiff loses all rights to assert a claim stemming from the challenged discharge." *Id.* at 1304 (citation omitted). And the statute of limitations for a collateral attack on a court-martial conviction is six years from the date a conviction became final. *See Piotrowski v. United States,* 722 Fed. App'x 982, 985 (Fed. Cir 2018).

On March 13, 2008, the Army discharged Mr. LaBonte. AR109 ¶¶ 9-10. By that time, Mr. LaBonte's court-martial conviction had become final. *See* Appx1-2 (Jul. 11, 2007 decision of Army Court of Criminal Appeals affirming Mr. LaBonte's conviction and sentence; Jul. 16, 2007 letter advising Mr. LaBonte of 60-day period to petition the Court of Appeals for the Armed Forces for review, which to our knowledge Mr. LaBonte did not pursue). Yet, Mr. LaBonte did not commence this action until November 20, 2018, more than 10 years after his court-martial conviction became final and he was discharged. *See* ECF No. 1. Consequently, the Court would not possess jurisdiction to entertain any claim – direct or indirect – by Mr. LaBonte challenging his court-martial or subsequent discharge as unlawful or improper because the statute of limitations has long expired. *See Piotrowski v. United States,* 722 Fed. App'x 985-986 (affirming dismissal of "collateral attack on his court-martial conviction" as barred this Court's six-year statute of limitations); *Martinez,* 333 F. 3d at 1303.

Although Mr. LaBonte previously alleged in this action that he is not challenging his court-martial or related discharge, his claim that he should have been medically retired instead of being convicted by a court-martialed is the equivalent of a claim that he was wrongfully discharged, which is barred by the six-year statute of limitations. *See Roberts v. United States,* 242 F.3d 1065, 1068 (Fed. Cir. 2001) ("In determining whether a claim falls within the exclusive jurisdiction of the Court of Federal Claims, courts must look to the true nature of the action, instead of merely relying on the plaintiff's characterization of the case.").  Despite his arguments to the contrary, Mr. LaBonte cannot disengage his retirement claim from his court-martial conviction and bad conduct discharge.  Rather, Mr. LaBonte must "bring forth competent proof to establish jurisdiction." *McNutt,* 298 U.S. at 189.  He has failed to do so.

Third, even if Mr. LaBonte could assert an independent disability retirement claim, that claim also would be barred by the Court's statute of limitations. *See* 28 U.S.C. § 2501.  A service member's failure to request a disability board before being discharged "can invoke the statute of limitations when the service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge." *Chambers v. United States,* 417 F.3d 1218, 1226 (Fed. Cir. 2005) (citing *Real v. United States,* 906 F.2d 1557, 1562 (Fed. Cir. 1990)).

In his complaint, Mr. LaBonte alleges that upon returning from his tour of duty in Iraq, he "unsuccessfully sought help from superiors in his chain-of command and from military mental health resources."  Compl. 1.  And he further asserts that the "Army should have recognized [his] service-connected injuries and granted him medical retirement" but that the Army "[i]nstead . . . court-martialed [him] and separated him with a bad conduct discharge." Compl. 1.  Likewise, Mr. LaBonte claims in his complaint that between April 2004 and June

2004, he reported his medical symptoms to his chain of command, "including increased mental distress due to the traumatic events he witness in Iraq" and "that he felt both physically and mentally unable to continue serving."   Compl. 8 ¶ 31.  And Mr. LaBonte alleges that his parents also contacted his "chain of command several times to plead with the Army to provide . . . the medical attention he needed." Compl. 8 ¶ 32.

Similarly, when his unit dissolved in 2004, Mr. LaBonte claims that he "told his new chain of command that he was not physically or mentally ready to deploy for a second time, reporting severe symptoms including panic attacks." Compl. 9 ¶ 40.  And in 2006, after he returned from the absence that ultimately led to his discharge, Mr. LaBonte alleges that he continued to seek help from his chain of command but was not referred for evaluation or treatment.  Compl. 10 ¶ 43.  And in challenging the remand results, he continues to make similar claims throughout that he should have been processed for medical retirement before he was court-martialed, which was more than 10 years before he commenced this action and before he was court-martialed.  Thus, any independent claim for disability retirement is time barred.

Fourth, Mr. LaBonte cannot invoke the first competent board rule, which is an "exception to the general rule for accrual of military disability retirement claims arises when a soldier's 'knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the [Army's] finding of fitness by failing to demand a [physical evaluation] board prior to his discharge." *Colon v. United States,* 71 Fed. Cl. 473, 481 (Fed. Cl. 2006) (quoting *Real,* 906 F.2d at 1562) (additional citation omitted).  Where that exception applies, the statute of limitations accrues at the time of discharge.  *See id.* (citing *Chambers,* 417 F.3d 1226 (citing *Real,* 906 F.2d at 1562)).

The first competent board rule is not be available to Mr. LaBonte, however, because it

provides that "a claim for disability retirement pay generally does not accrue until an *appropriate military board* denies the claim in a final decision, or refuses to hear the claim[.]"  *See Sabree v. United States,* 90 Fed. Cl. 683, 694 (2009) (citing *Chambers,* 417 F.3d at 1224 (citing *Real,* 906 F.2d at 1560)) (emphasis added).  But the ABCMR, as we discuss in greater detail below, was not an appropriate board in Mr. LaBonte's case because it was not statutorily authorized or competent to "correct" his record to remove documentation pertaining to his court-martial, or to "correct" his DD 214 to show that "he was retired due to physical disability[,]" *see* AR86, the latter of which goes to the heart of the relief that he requests in this action.  See 10 U.S.C. § 1552(f); *Chambers,* 417 F.3d at 1224 ("decision by the first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations") (citing *Real,* 906 F.2d at 1560) (emphasis added).

Fifth, Mr. LaBonte has failed to establish that the Court possesses jurisdiction to enter a judgment or issue an order that ultimately could lead the Army or the board to grant him disability retirement, or the related pay and benefits that he seeks, so long as his court-martial conviction and resulting bad conduct discharge – both of which are now beyond the Court's jurisdiction to rewrite – are part of his record.  In *Schnable v. United States,* 105 Fed. Cl. 610 (2012), the Court dismissed the plaintiff's challenges to a court-martial conviction and dishonorable discharge, along with his claim for "military back pay and allowances," because the plaintiff had not yet "exhausted his remedies within the military justice system[.]"  *Id.* at 612, 616.  In this case, Mr. LaBonte's likewise failed to exhaust his military justice system remedies concerning his conviction.  That it is now too late to do so does not provide him does not provide a basis to overlooking his failure to exhaust.

Thus, Mr. LaBonte's remaining claim should be dismissed for lack of jurisdiction.  And

if it is not, Mr. LaBonte's complaint fails to state a claim upon which relief may be granted for reasons discussed in greater detail below.

**B.     Mr. Labonte Did Not Become Eligible For Military Retirement After His Characterization Of Service Was Upgraded**

Mr. LaBonte fails to set forth any legal right to the relief he is requesting.  Thus, if the Court does not dismiss his claim for lack of jurisdiction, the Court should dismiss his remaining claim for failure to state a claim upon which relief may be granted.  First, Mr. LaBonte was prevented from entering the IDES system by Army Regulation 635–40.  Second, the board originally found that it lacked the authority to order Mr. LaBonte entered into the system under 10 U.S.C. § 1552(f), and the board's denial Mr. LaBonte's claim on the merits during the recently-completed remand proceedings does not change this.  Third, Mr. LaBonte has failed to provide any other theory on he can obtain the relief – including medical retirement – he seeks.  To be clear, Mr. LaBonte has failed to establish how he can be medically retired when he was discharged as the direct result of a court-martial conviction that is final.  As a result, Mr. LaBonte has failed to set forth a claim upon which relief may be granted.

Mr. LaBonte alleges that the Army was required to medically retire him instead of court-martialing him.  *See* Compl. ¶ 1.  And Mr. LaBonte asserts that the only thing preventing him from obtaining medical retirement was the bad conduct discharge listed in his characterization of service that later was upgraded by the ADRB.  Pl. Br. 31.  That is not the case.  Army regulations expressly prevented Mr. LaBonte from entering disability processing once he was charged with a crime under the UCMJ.  Specifically, while Mr. LaBonte discusses Army Regulation 4–2, he overlooks Army Regulation 4–1, which provides that:

> **Soldiers charged with an offense**
>
> *a. Uniform Code of Military Justice action.* The case of a

> Soldier charged with an offense under the Uniform Code of
> Military Justice (UCMJ) or who is under investigation for an
> offense chargeable under the UCMJ which could result in
> dismissal or punitive discharge, may not be referred for, or
> continue, disability processing unless—
>
> (1) The investigation ends without charges.
>
> (2) The officer exercising proper court-martial
> jurisdiction dismisses the charges.
>
> (3) The officer exercising proper court-martial jurisdiction
> refers the charge for trial to a court-martial that cannot
> adjudge such a sentence.

Army Regulation 635-40 ¶ 4-1 (2006).  Based on a plain reading of the regulation, at the moment

Mr. LaBonte was *charged* with an offense under the UCMJ, he became ineligible for disability

processing.  Thus, Mr. LaBonte's own misconduct led to charges that put him beyond the reach

of the Army's medical retirement system, and precluded him from disability processing.  Further,

given that the offense was Mr. LaBonte's extended unauthorized absence, his misconduct as a

practical matter precluded the Army from processing him during his absence.

In any event, once the court-martial charges were filed, Mr. LaBonte only could have

become eligible for IDES processing – assuming for the sake of argument only that he otherwise

would have been qualified – had one or more of the three conditions specified in the regulation

to have been satisfied.  None of those conditions was met.  Instead, Mr. LaBonte, who had been

charged with desertion with intent to shirk duty, pled guilty to the charge, was convicted, and

was discharged from the Army.  That conviction is final.  And despite having received some

relief from the ADRB, none of those conditions has been met to this day.  Therefore, Mr.

LaBonte remains ineligible for disability processing.

Additional provisions of the regulation confirm the prohibition from entering IDES once

an adverse personnel action has begun, even in cases less severe than a court-martial, such as

adverse administrative discharges.  For example, "[e]xcept as provided below, an enlisted

Soldier may not be referred for, or continue, physical disability processing when an action has

been *started* under any regulatory provision which authorizes a characterization of service under

other than honorable conditions."  Army Reg. 635-40 ¶ 4-3 (2006) (emphasis added).  One

exception gives the "command[ing] [officer] exercising general court-martial jurisdiction over

the Soldier" the ability to abate a separation.  *Id.*  The other exception relates to separations for

unsatisfactory performance.  *Id.*  Neither circumstance applies.  Thus, the regulatory scheme

makes it clear that once a proceeding that could result in a less than honorable discharge begins,

a Soldier may not enter disability processing unless specific conditions are met, which are clearly

defined.  This fact has not changed, even if the ADRB later upgraded Mr. LaBonte's

characterization of service.

Moreover, the Federal Circuit has acknowledged that Army Regulation 635-40 prevents a

soldier who is being court-martialed from entering disability processing.  *See Moyer v. United

States*, 190 F.3d 1314, 1321 (Fed. Cir. 1999) (recognizing that Army Regulation 635-40

"expressly preclude[d] continued disability processing for soldiers charged under the UCMJ.").

Therefore, the ABCMR, like the ADRB, never had the ability to order Mr. LaBonte medically

retired because Army regulations prevented it from doing so.

Even if Mr. LaBonte could overcome the prohibitions of Army Regulation 635-40, ¶ 4-1,

his arguments regarding ¶ 4-2 are equally unavailing.  Mr. LaBonte cites *United States v. Carter*,

42 M.J. 745, 747-748 (A.F. Ct. Crim. App. 1995) to argue that nothing prevented him from

entering disability processing once the ADRB upgraded his characterization of service.  *See* Pl.

Br. 31.  However, the quote cited by Mr. LaBonte appears nowhere in that opinion, and in any

event, the military court makes no mention of any entitlement to disability processing or the

IDES system.  Further, the other cases to which Mr. LaBonte cites do not provide the board or

the Court authority to order Mr. LaBonte medically retired after being charged with an offense

under the UCMJ for which he was convicted and discharged.  *See Loeh v. United States*, 73 Fed.

Cl. 327, 330 (2006) (holding that a Naval officer's punitive discharge prevented him obtaining

military retirement, and making no mention of any alleged disability); *United States v. Reed*, 54

M.J. 37, 45 (C.A.A.F. 2000) (affirming sentence of a bad-conduct discharge by court-martial and

making no mention of disability retirement).

 After the ADRB upgraded the characterization of Mr. Labonte's service from a Bad

Conduct Discharge to a General (Under Honorable Conditions) discharge, Mr. LaBonte met the

threshold to receive VA benefits.  *See* AR875.  The VA benefits process, however, is separate

from the Army retirement process: "the Army provides for disability retirement based on fitness

for military duty . . . while the VA's disability rating decision is based on capacity to function in

the civilian world . . . ."  *Gossage v. United States,* 394 Fed. Appx. 695, 698 (Fed. Cir. 2010)

(citing 10 U.S.C. § 1201 (1970)).  Eligibility for VA benefits does not entitle a soldier to

retirement pay.  *DeBatto v. United States,* 87 Fed. Cl. 172, 178 (2009) (holding that disability

findings made by the VA are not binding on military services because the ratings serve distinct

purposes), *aff'd,* 393 Fed. App'x 722 (Fed. Cir. 2010).

 Indeed, when the ADRB upgraded the characterization of Mr. LaBonte's service in

September 2014, the board, in discussing its regulatory authority, expressly stated: "The ADRB

may not upset the finality of a court-martial conviction.  It may only act to change the

characterization of service.  With respect to a discharge adjudged by a special court-martial, the

action of the ADRB is restricted to upgrades based on clemency."  AR331 ¶¶ 2-3.  In Mr.

LaBonte's lengthy discussion, he fails to cite any authority on point granting medical retirement

to a former service member in his circumstances simply by obtaining a service characterization upgrade from the ADRB.

Likewise, the ABCMR analyzed in 2017 whether Mr. LaBonte was entitled to an honorable characterization of service as a separate question from whether he was entitled to enter the military retirement system. *See* AR115 ¶ 11-12. While it decided that the severity of Mr. LaBonte's misconduct did not warrant a further upgrade to honorable, it also noted that it did not have the authority to order him medically retired because doing so would upset the finality of his court-martial. *Id.* Thus, even if the board would have upgraded Mr. LaBonte's characterization of service to honorable, this would not have entitled him to enter the retirement disability system.

Ultimately, examining the sequence of relief granted to Mr. LaBonte exposes the time-based fallacy on which he relies. The ADRB upgraded Mr. LaBonte's characterization of service in 2014. Despite his claim that he is no longer under sentence of a punitive discharge, it is indisputable that he was under such sentence from the end of his in service in 2008 until 2014, when he was upgraded. The ADRB's decision did not change history in this regard. So even assuming for the sake of argument that Mr. LaBonte's *current* characterization of service would *now* allow him to enter the disability processing system, he cannot travel back in time to apply his post-2014 characterization to a time when he was still in service. Mr. Labonte cites to no authority stating otherwise.[4]

---

[4] In fact, Department of Defense guidance to military review boards affirms the opposite. *See Memorandum for Secretaries of the Military Departments, Subject:  Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice, or Clemency Determinations,* attachment ¶ 6.l. (Jul. 25, 2018), available at https://arba.army.pentagon.mil/documents/Wilke20180725JusticeEquityClemency.pdf.
 ("Changes to the narrative reason for a discharge and/or an upgraded character of discharge granted solely on . . . clemency grounds normally should not result in separation pay, retroactive promotions, the payment of past medical expenses, or similar benefits *that might have been received if the original discharge had been for the . . . upgraded character*." (emphasis added)).

And even if he could, Mr. LaBonte's argument would still fail under Army Regulation 635-40 ¶ 4-1, which prevented his entry into the disability processing system upon being *charged* with desertion, subject to conditions which have still not been met to this day. Certainly the ADRB's decision did nothing to change that regulatory prohibition, currently or retroactively. And extending Mr. LaBonte's argument even further – to a time period *preceding* the court-martial charges – would only compound the absurdity to the point of ignoring what actually happened during Mr. LaBonte's time in service.

Instead of providing competent proof that the board had authority to grant him disability retirement, Mr. LaBonte simply argues that nothing prevents it from doing so. *See* Pl. Br. 22. However, Army Regulation 635-40 prevented the board from entering Mr. LaBonte into disability retirement processing, and no authority put forth by Mr. LaBonte refutes this. Therefore, Mr. LaBonte has failed to state a claim upon which relief can be granted.

### C.     The Board Lacks The Authority To Change Mr. LaBonte's Record Outside Of Its Authority Under 10 U.S.C. § 1552(f)

The board also was precluded from changing records of Mr. LaBonte's court-martial by 10 U.S.C. § 1552(f). Retroactively granting him medical retirement would reflect that he was medically retired, as opposed to discharged pursuant to a court-martial. This would effectively change the records of his court-martial conviction and discharge, which would result in the ABCMR exceeding its narrow authority relating to a court-martial under section 1552(f).

Pursuant to Federal law, the board is empowered to change "any military record" to "correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). However, "[w]ith respect to records of courts-martial and related administrative records," the board's power is limited to (1) "correction of a record to reflect actions taken by reviewing authorities" under the Uniform Code of Military Justice or (2) "action on the sentence of a court-martial for purposes of clemency."

10 U.S.C. § 1552(f).  The statute was amended by the Military Justice Act of 1983, which added

section 1552(f) to limit the board's authority to change records relating to court-martials to

corrections for clemency purposes.  *See Cooper v. Marsh*, 807 F.2d 988, 991 (Fed. Cir. 1986)

("Before the amendment [the Army Board of Corrections for Military Records] lacked the power

to overturn a court-martial conviction . . . .  After the amendment, it still lacks that power and is

now limited in the extent to which it can correct a court-martial record."); *see also* H.R. REP. 98-

549 at 20 (1983) ("In court-martial review the functions of the board . . . and the discharge

review boards would be primarily limited to clemency actions.").  Therefore, the ABCMR may

not amend military records of soldiers discharged by court-martial unless by grant of clemency

upon the soldier's *sentence*.  10. U.S.C. § 1552(f)(2); *see Bolton v. Department of Navy Board

for Naval Corrections*, 914 F.3d 401, 409 (6th Cir. 2019) (denying Naval Officer's request to

expunge court-martial from record because board lacked statutory authority to do so).

Granting Mr. LaBonte "retroactive placement in medical retirement status," Pl. Br. 29,

would necessarily entail correcting his military records to reflect that he was medically separated

instead of discharged pursuant to a court-martial.  For example, Mr. LaBonte's DD-214 form,

*see* AR637, provides "an accurate and complete summation of active military personnel service"

and also provides "the Military Services with an authoritative source of personnel information

for administrative purposes, and for making enlistment or reenlistment eligibility

determinations."  Department of Defense Instruction 1336.01 ¶ 3(a) (Aug. 20, 2009).[5]  Form

DD-214 is the "authoritative source of information required for the administration of State and

Federal laws applicable to personnel who have been discharged . . . ." *Id.* at ¶ 3(f).

---

[5] This document can be found at https://www.esd.whs.mil/Portals/54/Documents/DD/
issuances/dodi/133601p.pdf?ver=2019-04-11-103220-173.

To place Mr. LaBonte in retirement processing, at the very least, the narrative reason for separation on his DD-214 Form would need to be changed from "court-martial" to reflect medical retirement.  *See Ka Young Lee v. Unemployment Comp. Bd. of Review*, No. 1455 C.D. 2012, 2013 WL 3973802, at *2 (Pa. Commw. Ct. Apr. 25, 2013) (plaintiff seeking state unemployment benefits was also petitioning the ABCMR to change DD-214 narrative reason from "unacceptable conduct" to "medical disqualification").

There is no basis for Mr. LaBonte's claim that the DD-214 Form would somehow not qualify as a "related administrative record" within the meaning of 10 U.S.C. § 1552(f).  *See* Pl. Br. 33.  To argue that Mr. LaBonte can obtain medical retirement benefits dating back to before his court-martial is to argue that the court-martial should never have happened, and that Mr. LaBonte's records should reflect as much, despite the fact that his court-martial conviction is final.  The ABCMR lacked the statutory authority to make this change to Mr. LaBonte's records because it is only empowered to grant clemency upon the sentence of a court-martial and not expunge the records of it.  10 U.S.C. § 1552(f); *see Bolton*, 914 F.3d at 409.  Despite Mr. LaBonte's assertions to the contrary, 10 U.S.C. §1552(f) applies to his claim because he seeks changes to his military records that bear on his court-martial conviction.  The board lacks power to unilaterally correct his records to allow him to enter disability processing because doing would not be within its limited powers to grant clemency on his sentence.

### D.    The Board Originally Concluded It Did Not Have Legal Authority To Grant Mr. LaBonte's Request, And Its Decision On The Merits On Remand Does Not Undermine Its Original Conclusion

That the board decided Mr. LaBonte's claim on the merits is not sufficient to establish that it had the authority to do so.  *See* Pl. Br. 36.  Moreover, our legal arguments do not amount to "post-hoc rationalizations" as Mr. LaBonte claims.  Pl. Br. 36.

As an initial matter, the Court dismissed the complaint for lack of jurisdiction with the exception of Mr. LaBonte's "claim that he should have been considered for medical retirement before he was convicted by a court-martial," and remanded the matter to the board to obtain an additional medical opinion and to resolve Mr. LaBonte's claim.  ECF No. 57.  Pursuant to RCFC 52.2, the Court has authority to order a remand upon a finding that it possesses jurisdiction.  *Id.* The Court "preliminarily" found that it possessed jurisdiction to entertain that claim because the ABCMR considered Mr. LaBonte's claim on its merits.  *Id.*  The Court, however, expressly noted that it would allow the Government to reassert its jurisdictional defenses to the remanded claim.  *Id.*  Thus, the ABCMR resolved Mr. LaBonte's claim because the Court ordered it to do so, pursuant to the Court's authority to order a remand.  Thus, the board did not create its own jurisdiction by deciding Mr. LaBonte's claim, nor could it exercise authority in the absence of a delegation of such authority by Congress.  Mr. LaBonte's argument, therefore, is invalid.

In addition, any party, or the court *sua sponte*, may challenge a court's subject matter jurisdiction at any time.  *Cent. Pines Land Co., L.L.C. v. United States*, 697 F.3d 1360, 1364 n. 1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006)).  "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Jeun v. United States*, 128 Fed. Cl. 203, 209 (2016) (citation omitted).  Moreover, courts may lack jurisdiction even when agencies consider claims on the merits.  *See, e.g.*, *Dooley v. Dep't of Veterans Affairs*, 306 F. App'x 594, 596 (Fed. Cir. 2009) (finding lack of jurisdiction in a Merit Systems Protection Board appeal notwithstanding the board's error in rejecting claim on

the merits); *Pittman v. Dep't of Justice*, 486 F.3d 1276, 1282 (Fed. Cir. 2007) ("Accordingly, the Board lacked jurisdiction to consider [plaintiff's] . . . claims, and the [administrative judge's] denial of those claims on the merits was in error.").  Thus, the board's rejection of Mr. LaBonte's claim on the merits did not preclude the United States from raising jurisdictional defenses.

And contrary to Mr. LaBonte's claim that we have raised a post-hoc rationalization or a convenient litigation position on the merits, *see* Pl. Br. 36, our arguments are supported by the board's original interpretation and are consistent with the arguments we raised before the Court remanded this matter.

In sum, the Court should dismiss the remaining claim in the complaint for lack of jurisdiction for the reasons discussed above, including but not limited to its untimeliness and Mr. LaBonte's failure to establish that he is within the class of plaintiff's who can obtain the relief he seeks.  Further, even if the Court concludes that it possesses jurisdiction, Mr. LaBonte has failed to set forth a claim upon which relief may be granted.  Finally, even if the Court does not dismiss this action pursuant to RCFC 12(b)(1) or 12(b)(6), the Court should enter judgment in favor of the United States on the merits for reasons set forth below.

## III.   Mr. LaBonte Has Failed To Provide Any Basis On Which To Overturn The Remand Results

### A.   Mr. LaBonte's Claims Must Be Considered In Light Of His Service History, His Court-Martial Conviction, And His Resulting Discharge

It is "settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province . . . and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."  *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed. Cir. 1983).  Further, when a correction board decides not to remove an injustice, the substance of that decision is reviewable

only for procedural error unless a plaintiff alleges that the perceived injustice stems from a factual error committed by the military that "is so shocking to the conscience that boards' failure to correct it rises to the level of legal error." *Dodson v. United States,* 988 F.2d 1199, 1204 n.6 (Ct. Cl. 1993). Mr. LaBonte has not shown where the violation of a statute or regulation. This is significant because the Court may review decisions by boards or service secretaries only "for failure to correct plain legal error committed by the military." *Dodson,* 988 F.2d at 1204 (citations omitted). "Such legal error includes the military's 'violation of statute, or regulation, or published mandatory procedure, or unauthorized act.'" *Id.* (citation omitted). In other words, without legal error, the Court may not remedy an alleged injustice.

In light of the demanding standard of review that applies to the board's decision, it is not surprising that Mr. LaBonte repeatedly overstates the strength of his case, seeks to treat his claim as a routine disability retirement matter, and simultaneously fails to grapple with matters that undermine his claim, including his court-martial conviction. Mr. LaBonte portrays himself as having engaged in "a decade-long fight" to obtain medical retirement and benefits. Pl. Br. 2. But unlike in the typical disability retirement case, Mr. LaBonte cannot claim that he was discharged on an incorrect basis – such as being passed over for a commission – when he should have been medically separated. Nor is he claiming that he was separated with only a severance payment, but should have been granted medical retirement. Rather, Mr. LaBonte claims that the board erred in not granting him the benefits and status of a medically retired member of the armed forces under a system intended for service members whose military careers were cut short, not because they were discharged pursuant to a court martial-conviction, but because they were injured, or developed a disability, during service that rendered them no longer fit to serve.

Specifically, while Mr. LaBonte alleges that the Army was required to medically retire

him instead of court-martialing him, *see* Compl. 1, he does not establish any such statutory or regulatory requirement and, as previously explained, he cannot escape that he was discharged pursuant to his own misconduct, and that his decision to abandon his responsibilities put him beyond the reach of the Army's medical retirement system.  Mr. LaBonte's misconduct led to the Army charging him with desertion, which precluded him from disability processing pursuant to Army Regulation 635-40 ¶ 4-1 (2006).  Thus, Mr. LaBonte's case represents an extreme set of circumstances for a former service member to seek disability retirement, to say the least.

Mr. LaBonte contends that before the Army discharged him, he incurred a traumatic brain injury and post-traumatic stress disorder, and that he also had a "major depressive disorder, and generalized anxiety disorder that" that he asserts "precluded him from performing his duties as a soldier[.]" *see* Pl. Br. 2.  However, he fails to establish that he actually was unable to perform his duties due to medical conditions.  And he was not discharged for failing to perform his duties or for a medical condition, but rather due to his own misconduct and his conviction.

Mr. LaBonte's reliance on cases in which former service members were administratively separated, as opposed to discharged pursuant to a court-martial conviction, is severely misplaced. For example, Mr. LaBonte cites *Walters v. United States,* 175 Ct. Cl. 215 (1966), in which a naval officer twice suffered line-of-duty back injuries requiring hospitalization, extensive testing, and treatment.  *Id.* at 217-218.  A few months after the second incident, which involved an eight foot fall that left the plaintiff temporarily unable to walk, the Navy's found he met its physical standards, but did not select him for appointment to a commission.  *Id.* 218.  Among the evidence submitted during post-service Board for Correction of Naval Records (BCNR) proceedings was an opinion from a surgeon who had treated plaintiff for a knee injury and for his back condition prior to the plaintiff's separation.  *Id.* at 219-220.

33

The surgeon provided an opinion during the BCNR proceedings that the plaintiff had a disc injury that "had been caused by the shipboard injuries" which "was a permanent condition which existed at the time of his separation from service and was of such a disabling character at the time as to have required his disqualification from active duty."  *Id.* at 220.  The Court of Claims found that the evidence left "little doubt" that the plaintiff's condition "grew out of plaintiff's service-connected injuries" to his back.  *Id.* at 224.  The court also noted that the plaintiff also was required to "establish that the condition was of such extent and severity as to actually render him unfit for active naval service at the time of his release or shortly thereafter." *Id.* (citing *Stone v. United States,* 60 Ct. Cl. 129 (1963)).  The court held that plaintiff satisfied his burden in that particular case, where the evidence – including a statement made contemporaneously with an examination of plaintiff in April 1946 (before separation) – confirmed that the plaintiff had suffered an injury involving his "lumbar intervertebral discs." *Id.* at 226-227 (internal quotation marks omitted).  Even apart from the case being more than five decades old and, as a result, not accounting the considerable statutory, regulatory, and case law developments since then, the facts are entirely dissimilar to those in this case.

While recognizing that "[r]econstructing plaintiff's medical condition in the light of subsequent development and deterioration necessarily involves a certain degree of conjecture," the Court of Claims found that "the evidence presented before the [BCNR] establishes with clarity that plaintiff's service medical records were critically inadequate and that he had a permanent and incurable condition at the time of his release . . . which would, if all the facts had been known, have disqualified him from active duty."  *Id.* at 227.  The court held that, under the specific facts of the case before it, the BCNR "acted contrary to the substantial weight of the evidence before it . . . ."  *Id.* at 228.  Mr. LaBonte, in contrast, has failed to establish "with

clarity," or even by a preponderance of evidence, that he suffered from medical conditions prior to his court-martial that made him unfit to serve.

As Dr. Richardson pointed out in her advisory opinion, "there is a dearth of medical records available during Mr. LaBonte's time in service."  AR2422 ¶ 4.  This is a far cry from what was available in *Walters*.  As previously discussed, Mr. LaBonte provides a few short snippets describing communications in 2004 and 2006 with medical and non-medical Army personnel that appear to be the main contemporaneous evidence that he believes supports his claim.  Pl. Br. 13-14.  Specifically, Mr. LaBonte alleges that in 2004, he notified his chain of command that he suffered mental distress as result of traumatic experiences he claims to have experienced in Iraq.  AR13 (citing AR657-658).  He further alleges that on June 30, 2004, he advised a mental health specialist that he had experienced certain emotional symptoms, including anxiety, and that he wanted to be chaptered out of the Army.  AR13 (citing AR457-458; AR490).  And Mr. LaBonte alleges that on October 23, 2006, he reported various physical symptoms and that he was depressed to the examining physician during his final in-service medical exam, which was after he had been charged with desertion, thus precluding him from disability processing pursuant to Army Regulation 635.40 ¶ 4-1.  *See* Pl. Br. 14 (citing AR2067).

In light of the dearth of evidence of an unfitting condition, Mr. LaBonte engages in wishful thinking in arguing that "[n]o reasonable decisionmaker could rely upon" what he alleges was "the legally insufficient evidence ABCMR credited to overcome" that he purports constitutes "overwhelming evidence that" he "should have been medically retired," which he alleges his "post-discharged medical records only confirm."  Pl. Br. 18-19 (emphasis added).

And while other service members sometimes are successful in obtaining a remand where a military branch, for example, did not adequately explain why it adopted the recommendation of

the board minority over the contrary recommendation of the majority, such as when a former service member challenged the denial to correct his records to convert a medical separation at less than a 30 percent disability rating into a full blown disability retirement, *see Adams v. United States,* 117 Fed. Cl. 628, 629, 675-680 (2014), Mr. LaBonte seeks to jump from a final court-martial conviction and discharge into a separate and distinct status as a soldier who served honorably but had his service cut short by a disabling condition.  In essence, Mr. LaBonte is not seeking the correction of his service record.  He is seeking to rewrite it entirely.

**B.    Mr. LaBonte's Attack On The 2020 Surgeon General's Advisory Opinion Concerning His Alleged 30 Foot Fall From Guard Tower Is Unwarranted**

Throughout this case, Mr. LaBonte has treated his claim that he fell 30 feet from a guard tower as if it was not subject to any reasonable dispute.  Dr. Richardson, in her 2020 advisory opinion, however, indicated that she "did not find any medical records to support a 30 foot fall, to support [the] diagnosis of TBI."  AR2401.  Mr. LaBonte vehemently objects to that simple observation, asserting that any implication that the fall never occurred is contrary to "the overwhelming evidence" and the equivalent of suggesting that has engaged in a "decade-long hoax that includes doctoring photographic evidence of his injury."  Pl. Br. 22.  Mr. LaBonte again overstates the strength of his evidence, and misunderstands the significance of the issue. The threshold issue is not whether he fell 30 feet from a tower, it is whether he has established that the board erred in finding that he was not unfit.  Nonetheless, because Mr. LaBonte makes much of the matter, we respond briefly below.

The board noted that there is "no documentation in the applicant's military service or medical records . . . which makes reference to [a] 30 foot fall from a guard tower or any subsequent treatment of his resultant injuries, including stitches or bed rest."  AR2384 ¶ 10; *see generally* AR1366-1470.  In fact, Mr. LaBonte had "very hazy memories of what

36

happened that night."  AR800 ¶ 81.  Similarly, a psychologist confirmed that "[Mr. LaBonte]

does not remember what happened that caused the injury."  *See* AR1362.  While Mr. LaBonte

cites evidence that another soldier found him at the bottom of the guard tower unconscious in a

pool of blood, and that another soldier saw him with a gash on his forehead, this does not

establish that he fell from the significant height of 30 feet from the guard tower.  Pl. Br. 22-23

(citing AR217-218; AR249).  Nor does it eliminate other possible explanations, such as tripping

and falling, or running into something.  Mr. LaBonte's contention that he fell 30 feet is a theory,

not a proven fact, and does not establish that he was unfit even if correct.

That others accepted Mr. LaBonte's claim that fell 30 feet from a guard tower does not

mean that the board was bound to do so as well, especially where Mr. LaBonte does not even

remember the incident and there was no witness to the fall.  Mr. LaBonte's suggestion that

pointing out the absence of evidence that he fell 30 feet from a guard tower is the equivalent of

calling him a liar is incorrect, especially given that Mr. LaBonte does not remember how he was

injured.  In any event, the board did not err in pointing out that Mr. LaBonte's in-service records

do not substantiate that he fell 30 feet from a guard tower.  AR2384 ¶ 10.  Whether he did or not

– the question is not whether he had TBI or PTSD, it is whether those conditions were unfitting.

C.    **Mr. Labonte Merely Disagrees With How The Board Weighed The Evidence**

Mr. LaBonte incorrectly asserts that the Remand Results are "arbitrary, capricious, and

unsupported by substantial evidence."  Pl. Br. 12.  He unpersuasively asserts that the ABCMR

failed to "consider and give due weight to" what he claims was "overwhelming evidence that

[he] should have been medically retired prior to his separation," and that the board ignored

"numerous sources of competent evidence produced both during and after his service."  *See* Pl.

Br. 12.  Those arguments get him nowhere.  The ABCMR considered and weighed the in-service

37

and post-service evidence, the various medical opinions before it, and the numerous arguments that Mr. LaBonte's presented, and reasonably determined that Mr. LaBonte failed to prove he was unfit to serve.  Mr. LaBonte's argument about "due weight" is really another way of saying that he disagrees with how the board weighed the evidence.  *Id.* at 12.

### 1. Mere Disagreement As To How The ABCMR Weighed The Evidence Provides No Basis To Overturn The Board's Decision

"[M]ilitary administrators are presumed to act lawfully and in good faith . . . and the military is entitled to substantial deference in the governance of its affairs." 988 F.2d at 1204; *see also Antonellis v. United States,* 723 F.3d 1328, 1332 (Fed. Cir. 2013) ("judges are not given the task of running the Army") (citation omitted).  "Where the agency is entitled to exercise its discretion . . . great deference is to be given to its decisions, and the plaintiff has an unusually heavy burden of proof in showing that the determination was arbitrary and capricious." *Zavislak v. United States,* 29 Fed. Cl. 525, 531 (1993) (citing *Balboa Ins. Co. v. United States,* 775 Fed. 2d 1158, 1164 (Fed. Cir. 1985)).  And the Court will "'uphold a decision of less than ideal clarity if the agency's path may reasonably discerned.'" *Adams v. United States,* 117 Fed. Cl. at 653 (quoting *Bowman Transp., Inc. v. United States,* 419 U.S. 281, 286 (1974)).  It is the responsibility of the Army or other service, not the judiciary, to decide who is fit or unfit to serve in the armed services.  *Heisig,* 719 F.2d at 1156.

"Thus, where reasonable minds might differ, the court will defer to the conclusions reached by the Army Board."  *Hale v. United States,* 107 Fed. Cl. 339, 347 (2012), *aff'd,* 497 Fed. App'x 43 (Fed. Cir. 2012) (citation omitted).  Similarly, it is the board's role and responsibility to weigh the evidence.  *See, e.g., Wesolowski v. United States,* 174 Ct. Cl. 682, 692-693 (1966) (ABCMR was not required to consider physician's medical evaluation as conclusive; the board "had the duty to weigh all of the evidence before it and the right to reject"

the physician's "opinion as not being supported by the record.").

### 2.    The Board Reasonably Weighed The Evidence And Appropriately Denied Mr. LaBonte's Claim

As the ABCMR correctly explained, "[t]he mere presence of a medical impairment does not in and of itself justify a finding of unfitness."  AR2411.  Rather, "[a] Soldier is physically unfit when a medical impairment prevents reasonable performance of the duties required of the Soldier's office, grade, rank, or rating."  AR2412.  As to the issue of Mr. LaBonte's fitness – which is the central issue in this case – the ABCMR, after considering the evidence in a liberal fashion, determined that "a preponderance of the evidence does not support a finding that" Mr. LaBonte "failed medical retention standards or had any unfitting conditions, to include PTSD and TBI, warranting a [service] separation/retirement prior to service separation."  AR2408 ¶ 3.

The board expressly considered Mr. LaBonte's arguments concerning the 2018 MEB "that indicated certain disabilities failed medical retention standards[,]" but found that this evidence, developed approximately 10 years after service separation, appeared to have been based on the state of Mr. LaBonte's disabilities in 2018, not 2008, and was outweighed by the evidence indicating that he met medical retention standards in 2008.  AR2408-2409 ¶ 3.

Pointing to the April 2, 2018 draft MEB's narrative summary, Mr. LaBonte vehemently disagrees.  Pl. Br. 17 (citing AR60, AR62-AR65).  Mr. LaBonte's criticism is without basis. First, the MEB lacks the authority to make any finding regarding whether Mr. Labonte is fit or unfit for continued service.  Second, the MEB record does not say what Mr. Labonte asserts that it does.  As previously noted, the document expressly states that "[t]he information contained in this Narrative Summary reflects the service-member's condition *as of the date prepared* as per available records."  AR66 (emphasis added).  This substantiates the board's observation that the draft MEB appears "based on the state of disabilities in 2018 and not prior to service separation

in 2008." *See* Pl. Br. 16.  As a result, Mr. LaBonte's entire argument that the board mischaracterized the narrative summary fails.  This presents a hurdle because Mr. LaBonte relies heavily on the narrative summary to support his claim.  *See* Pl. Br. 16-19.  In fact, it appears to be the central piece of evidence that he cites to support his claim.

To further confirm the board's interpretation, while the narrative summary states that the onset of the PTSD symptoms were from 2003 to 2004, it largely is drafted in the present tense, and even refers to expected future developments.  The PTSD prognosis predicts that Mr. LaBonte's "level of disability is unlikely to change significantly over the *next* five years."  AR62 ¶ e (emphasis added).  In the section that discusses the impact of PTSD on Mr. LaBonte's ability to perform his duties, the narrative statement indicates that, pursuant to Mr. LaBonte's March 24, 2018 intake form, Mr. LaBonte was unable to hold a job for three of the past 10 years – which obviously refers to his post-service work.  AR62 ¶ f.  As to Mr. LaBonte's mental competency, the narrative summary states that he "is not considered a danger to himself or others at the time of the exam as per available records."  AR66 ¶ 8.  The narrative summary also states – again in the present tense – that Mr. LaBonte "may not" "[c]arry and fire [an] individual assigned weapon (BH conditions)" or "[l]ive in an austere environment without worsening the medical condition (BH & TBI)."  And the narrative summary – as it is actually written – opines that Mr. LaBonte *is* not deployable outside of the contiguous United States (OCONUS) "where definitive medical care *is not* available."  AR61 (emphasis added).

Thus, Mr. LaBonte's assertions that the narrative summary "clearly states that it is concerned with Mr. LaBonte's medical conditions at the time of his service, not years later" must fail in light of the unequivocal language in the document itself expressly stating that it was based on Mr. LaBonte's condition at the time it was prepared, that is, in 2018.  *See* Pl. Mot. 17-18;

AR66 ¶ 10.  And Mr. LaBonte's claim that the board mischaracterized the narrative summary

and, as a result, failed to consider competent medical evidence, is based on a faulty premise.  *See*

Pl. Br. 18-19.  In any event, that the board explicitly acknowledged that the 2018 MEB's finding

that the "onset of [Mr. LaBonte's] conditions was determined to have been during his

deployment to Iraq between October 2003 and March 2004[,]" *see* AR2397, ¶ 51.b (citing the

narrative findings), does nothing to establish that he had unfitting conditions or was entitled to

medial retirement.  This is consistent with the MEB's role because, as discussed previously, the

PEBs, not the MEBs, determine fitness or unfitness.  Army Reg. 40-501 ¶ 3-4 (Jun. 2006).

Similarly, an MEB narrative summary "will not reflect a conclusion of unfitness."  Army Reg.

645-40 ¶ 4.11(f). (2006).

      Mr. LaBonte's claims that the board overlooked evidence are equally without merit.  Mr.

LaBonte alleges that, in 2004, he reported to his chain of command that he was having

"significant mental distress [due to] his traumatic experiences in Iraq."  Pl. Br. 13.  Mr. LaBonte

supports that statement by citing the introduction to his brief to the ADRB.  Pl. Br. 13 (citing

AR657-658); *see also* AR650.  Contrary to Mr. LaBonte's claim that the board ignored this

evidence, however, the board expressly discusses Mr. LaBonte's allegations concerning his chain

of command.  *See* AR2372 ¶ b; 2375-2376 ¶¶ p, q, t, u; AR2394 ¶d.

      Mr. LaBonte next cites his visit to an Army mental health specialist on June 30, 2004.  Pl.

Br. 14 (citing AR490).  Dr. Richardson expressly said the following about that visit:

> Regarding his diagnosis of PTSD, Mr. LaBonte was evaluated by
> Behavioral Health (BH) on 30 June 2004 after returning from his
> second AWOL.  He indicated that the military was "causing
> problems back home for me."  His desired result from that visit
> was to have his chain of command "to realize I need to be
> chaptered out of the Army ASAP."  He was subsequently given a
> diagnosis of an Adjustment Disorder and did not return for
> treatment.  There was no further BH documentation after this visit.

AR2432.  The board discusses this visit throughout the course of the Remand Results.  AR2376 ¶ s; AR2384 ¶ 11; AR2385 ¶ 12; AR2386 ¶ 13; AR2390 ¶ 35.a; 2394 ¶ d; AR2398 ¶ c; AR2349 ¶ 59.b.  Thus, Mr. LaBonte's claim that the board avoided or ignored that evidence is incorrect. Mr. LaBonte also cites his October 23, 2006 physical – conducted months after he returned from his extended period of AWOL – in which he reported that he was not feeling well, and reported various symptoms.  Pl. Br. 14 (citing AR2067).  The board discusses this visit as well.  AR2402-2403 ¶ g.3.  This physical examination appears to have been conducted the same day as Mr. LaBonte's court-martial and sentencing.  AR2376-2377 ¶ w.  Nothing in that report compels a finding that he was unfit for service.  Further, by this point, Army regulations precluded Mr. LaBonte from processing under the disability system due to the court-martial proceedings.  Army Reg. 635-40 (2006).  Thus, Mr. LaBonte's reliance on this particular examination is especially inappropriate.  In sum, the in-service evidence that Mr. LaBonte cites was considered by the board, is sparse, and does not establish that he had an unfitting medical condition.

The post-service evidence upon which Mr. LaBonte relies, starting with a 2014 opinion from a psychologist that is dated more than seven years after his court-martial conviction, does not fare any better.  Pl. Br. 14-15.  Such evidence "necessarily involves a certain degree of conjecture."  *Walters,* 175 Ct. Cl. at 227.  The post-service evidence does nothing to undermine the board's reasonable conclusion Mr. LaBonte was not medically unfit.  This includes the MEB narrative summary which, as previously established, Mr. LaBonte seriously misinterprets.  The other medical evidence on which Mr. LaBonte relies likewise fails to establish that he had an unfitting condition, let alone provide "overwhelming evidence" that required the board to grant him disability retirement, as Mr. LaBonte claims.  *See* Pl. Br. 13-15; *see also* Pl. Br. 5-7.

Given Mr. LaBonte's failure to establish that he had an unfitting condition, his allegation that Dr. Richardson's 2020 advisory opinion "fails to consider the overwhelming evidence of Mr. LaBonte's condition during the time of his service" misses the mark.  Pl. Br. 20 (citing AR2432).  Dr. Richardson and the board cited a lack of evidence to support Mr. LaBonte's claim because there is, in fact, a lack of evidence to support his claim.  Pointing this out is not error.

Mr. LaBonte also complains that the Office of the Surgeon General physicians reviewing his medical evidence did not examine Mr. LaBonte, and that they allegedly did not have neurological or mental health expertise, unlike the authors of his post-service medical reports.  Pl. Br. 20.  But the matter was not referred to the Surgeon General to give Mr. LaBonte a mental or physical examination, and he cites no statute or regulation that requires that the Surgeon General opinions be issued by a specialist.  *See* Pl. Br. 20.  Mr. LaBonte's related argument, that medical opinions based on personal examination are preferable to opinions of those who did not have that opportunity and who rely on an incomplete understanding of the record, fails as well.  *See* Pl. Br. 20 (citing *Dayley v. United States,* 180 Ct. Cl. 1136, 1147-48 (1967)).  Mr. LaBonte's is based on a faulty premise.  The medical opinions on which he relies do not establish that he was unfit, regardless of whether they were based on a personal examination and Mr. LaBonte has failed to establish that Dr. Richardson or the board misunderstood the evidence.

Mr. LaBonte's claim that the board failed to engage with the evidence based on how the board structured its opinion misses the mark by a wide margin.  *See, e.g.,* Pl. Br. 23.  The board exhaustively discussed the evidence and Mr. LaBonte's arguments throughout its decision.  *See* AR2372-AR2409.  Further, the board expressly provided Mr. LaBonte an opportunity to address the advisory opinion, and even incorporated a lengthy section setting forth Mr. LaBonte's rebuttal arguments in the Remand Results.  AR2401-2408.  The board likewise provided its

analysis in a separate section of its opinion, and set forth the relevant statutory and regulatory framework in another section.  AR2408-2414.  The Remand Results are 44 single-spaced pages in length and are nothing if not comprehensive.

Mr. LaBonte also criticizes the ABCMR for discussing the opinion of Dr. Eric Doane. *See* Pl. Br. 24.  Dr. Doane's opinion is part of the record so there is no error in discussing it. Further, the board denied Mr. LaBonte's claim due to a lack of supporting evidence.  The board's discussion of Dr. Doane's opinion does not change this, and it does not undermine the soundness of the Remand Results.

Mr. LaBonte also contends that when the ABCMR "evaluates a claim based on PTSD and TBI, they are required to make their decision with the 'advice and counsel' of a "psychiatrist, psychologist, or social worker" pursuant to 10 U.S.C. § 1552(g)(2).  Pl. Br. 24. Mr. LaBonte, however, fails to point out this statutory provision expressly is limited to cases in which the board "is reviewing a claim described in subsection (h)" of section 1552, which by its express terms "applies to a former member of the armed forces *whose claim under this section for review of a discharge or dismissal* is based in whole or in part on matters relating to post-traumatic stress disorder or traumatic brain injury as supporting rationale . . . ."  10 U.S.C. § 1552(h)(1) (emphasis added).  Throughout this litigation, he has claimed to not be challenging his dismissal.  Nor can he, for reasons addressed at length previously.  Thus, subsections 1552(g) and 1552(h), by their express terms, do not apply to his claim because Mr. LaBonte's claim is not for "review of a discharge or dismissal."  That Mr. LaBonte's claim relates to PTSD and TBI does not change this.  Once again, Mr. LaBonte minimizes his court-martial conviction.

Further, the board's Remand Results expressly confirm that the board "considered the lay and medical evidence submitted by the applicant, the November 2016 advisory opinion from an

ARBA Psychiatrist that specifically applied liberal consideration in consideration of the evidence (codified at . . . section 1552(h)(2)(B)). . . .")  AR2408-09 ¶ 3.  Thus, to the extent that Mr. LaBonte is suggesting that his claim was decided without a psychiatric opinion, he is incorrect. Further, his claim was granted "liberal consideration."  *See* Pl. Br. 24-25.

Mr. LaBonte's ancillary Fifth Amendment procedural due process claim also must be rejected.  The Court does not possess jurisdiction over an alleged violation of rights under the due process clause of the Fifth Amendment because it is not money-mandating.  *James v. Caldera,* 159 F.3d 573, 581 (Fed. Cir. 1998).  Thus, to the extent that the Court does not possess jurisdiction of Mr. LaBonte's other claims, he cannot bootstrap his due process arguments to such claims.  *See Lechliter v. United States,* 70 Fed. Cl. 536, 544 (Fed. Cl. 2006) (Court may consider procedural due process claim where jurisdiction otherwise had been established) (citing *Holley v. United States,* 124 F.3d 1462, 1466 (Fed. Cir. 1997)); *Anderson v. United States,* 111 Fed. Cl. 572, 580 (Fed. Cl. 2013) (to the extent complaint contained "independent" Fifth Amendment due process claim, the claim was not within the Court's jurisdiction) (citations omitted).  And Mr. LaBonte acknowledges that his constitutional claim is ancillary in his complaint.  Compl. 24 ¶ 120.

In any event, Mr. LaBonte's brief due process argument fails on the merits.  Mr. LaBonte first repeats his previously incorrect contention that the board did not consider all of the medical evidence.  Pl. Br. 26-27.  Putting aside that the board is presumed to have considered all the evidence before it, *see Melendez-Camilo*, 642 F.3d 1040, 1045 (Fed. Cir. 2011), as we previously have established, the board considered all of that evidence, weighed it, and concluded that it did not show that LaBonte had an unfitting medical condition during service.  Mr. LaBonte's due process argument, at its core, is that because he believes that the medical

evidence corroborated "the existence and severity of his PTSD and TBI during his service," and because he objects to the way in which the board structured its opinion, the board's denial of his claim violated his right to procedural due process. *See* Pl. Br. 27. But the board weighed all of the evidence, including the medical evidence, and reasonably found that Mr. LeBonte did not have an unfitting medical condition prior to his separation. AR2409 ¶ 3.

In addition, Mr. LaBonte's due process argument, like many of his other arguments, makes sweeping statements about the alleged "substantial amounts of evidence" that he claims corroborates the "severity of his PTSD and TBI during his service[,]" but Mr. LaBonte fails to establish that the board was compelled to find that he was medically unfit to serve, or that he was entitled to medical retirement, which is the entire point of his claim. *See* Pl. Br. 27.

Mr. LaBonte next claims that the board treated him differently from other similarly situated service members. Pl. Br. 28-29. The correction board proceedings he cites provide no support for his argument. For example, ABCMR No. 20150000040 declined to change the applicant's record to reflect medical retirement, instead referring him to IDES for disability processing. https://boards.law.af.mil/ARMY/BCMR/CY2015/20150000040.txt (May 26, 2016). But unlike Mr. LaBonte, the applicant was separated via an administrative discharge, there were no allegations the he engaged in wrongdoing, and he was not discharged pursuant to a court-martial. *Id.* And the applicant was diagnosed with PTSD and other conditions while in service. *Id.* at ¶ 2.a, ¶ 6. Thus, the circumstances that led the board to decide that the applicant's PTSD "may have" failed retention standards were very different from Mr. LaBonte's circumstances.

In ABCMR No. 20080000492, the issue involved a tendon injury, not PTSD, and there were contemporaneous medical records from 2004 diagnosing the same tendon tear that he alleged. *See* https://boards.law.af.mil/ARMY/BCMR/CY2008/20080000492.txt (Aug. 12,

2008).  The board determined that the applicant "clearly established" an injury that would have warranted disability retirement at the time.  In the end, the board did not change the applicant's records to reflect disability retirement, but simply allowed him to be processed by IDES "'[a]s a matter of equity," as Mr. LaBonte concedes.  *See id.*; *see also* Pl. Br. 28.  Mr. LaBonte's case presents different facts.  Here, there is no contemporaneous evidence showing unequivocally that Mr. LaBonte was unfit to serve.  And regarding whether equity justified granting Mr. LaBonte any additional relief than he already has received, the board reasonably concluded that "the evidence in mitigation does not outweigh the severity of the misconduct[.]"  AR2409 ¶ 4.

Finally, in the third board decision cited by Mr. LaBonte, ABCMR No. 20140000675, there was ample in-service, contemporaneous medical evidence demonstrating treatment for PTSD during service.  *See* https://boards.law.af.mil/ARMY/BCMR/CY2014/20140000675.txt (Oct. 7, 2014).  For example, the service member "underwent a mental status evaluation" in which the "examining psychiatrist stated that he was severely emotionally disabled at the time due to PTSD and that" the service member "had developed an adjustment disorder with depressed mood."  *Id.*  Additionally, the service member's record "show[ed] he exhibited a significant decline in his performance . . . ."  *Id.*  The in-service medical records in Mr. LaBonte's case do not show an equivalent history.  And like the other two cases discussed above, the applicant was not discharged pursuant to a court-martial conviction, and was able to enter IDES in accordance with Army Regulation 635-40.  In contrast, because Mr. LaBonte was charged with an offense under the Uniform Code of Military Justice, he was ineligible to enter IDES under Army Regulation 635-40 (2006).

Mr. LaBonte has failed to establish that the board's conclusion that he was not unfit during service was not supported by substantial evidence.  The board reasonably found that the

weight of the evidence did not warrant a finding of unfitness to serve prior to his discharge. That Mr. LaBonte is not satisfied with how the board weighed the evidence provides no basis to upset the board's decision. The fact remains that there is indeed a sparsity of evidence, medical or otherwise, that Mr. LaBonte was unfit to serve.

The board considered the evidence liberally. AR2409 ¶ 4. It even gave Mr. LaBonte the benefit of any doubt concerning TBI and PTSD, but still found that Mr. LaBonte failed to establish that he had an unfitting condition that would have warranted his being granted a disability separation or disability retirement. In particular, the ABCMR "determined that a preponderance of the evidence does not support a finding that the applicant failed medical retention standards or had any unfitting conditions, to include PTSD and TBI, warranting a disability separation/retirement prior to service separation." AR2408 ¶ 3. This is the heart of the decision that Mr. LaBonte now challenges. Because the board's conclusion in that regard is well-supported by substantial evidence, the Court should sustain the remand results.

## CONCLUSION

For these reasons, we respectfully request that the Court deny plaintiff's motion, grant our cross-motion, and enter judgment in favor of the United States.

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

*s/ Douglas K. Mickle*
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:                          s/ *Richard P. Schroeder*

MAJOR NICHOLAS D. MORJAL             RICHARD P. SCHROEDER
Litigation Attorney                 Trial Attorney
United States Army                   Commercial Litigation Branch
U.S. Army Legal Services Agency      Civil Division
                                     U.S. Department of Justice
                                     PO Box 480
                                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     Tele:  (202) 305-7788
                                     Fax: (202) 305-7643
                                     Email: Richard.Schroeder@usdoj.gov

Dated: August 19, 2020               Attorneys for Defendant