IN THE UNITED STATES COURT OF FEDERAL CLAIMS


18-1784C
(Judge Hertling)


ROBERT J. LABONTE, JR.,
Plaintiff,

v.

THE UNITED STATES,
Defendant.


PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD, RESPONSE IN OPPOSITION TO DEFENDANT'S CROSS-
MOTION, AND RESPONSE TO DEFENDANT'S MOTION TO DISMISS

|  |  |
|---|---|
|  | Lernik Begian, Law Student Intern<br>Alexander Fischer, Law Student Intern<br>Casey Smith, Law Student Intern<br>Renée A. Burbank, Supervising Attorney<br>Veterans Legal Services Clinic<br>Jerome N. Frank Legal Services Organization<br>P.O. Box 209090<br>New Haven, CT 06520-9090<br>Tel: (203) 432-4800<br>renee.burbank@ylsclinics.org |
| September 23, 2020 | *Counsel for Plaintiff* |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTS.......................................................................................................................................2

SUMMARY OF ARGUMENT...................................................................................................3

ARGUMENT .............................................................................................................................4

    I.    Standard of Review ..........................................................................................................4

    II.    This Court Has Subject-Matter Jurisdiction over Mr. LaBonte's Claim...........................4

        A.    Mr. LaBonte's claim is timely.....................................................................................5

        B.    Mr. LaBonte's claim is nonfrivolous............................................................................7

    III.    The ABCMR's Decision is Arbitrary, Capricious, and Unsupported by Substantial
Evidence, and Fails to Comply with this Court's Remand Order. ...........................................12

        A.    Mr. LaBonte should have been referred for disability evaluation, found unfit to serve,
and medically retired. The Board is mandated to correct this injustice. ...............................12

        B.    The ABCMR's decision to deny Mr. LaBonte medical retirement was arbitrary and
capricious, ignored evidence, and failed to comply with this Court's remand order. ...........15

        C.    The government comes to its own *post hoc* rationalizations of the evidence that it does
choose to engage with, which are both impermissible and incorrect. ...................................20

    IV.    The Board's Decision Violates Mr. LaBonte's Due Process Rights Under the Fifth
Amendment of the U.S. Constitution. ...................................................................................24

        A.    The ABCMR's persistent failure to consider the competent medical evidence violates
the Due Process Clause by denying him an "opportunity to be heard at a meaningful time
and in a meaningful manner." ...............................................................................................25

        B.    The Board has capriciously denied Mr. LaBonte due process that it has afforded to
other similarly situated servicemembers. ..............................................................................28

CONCLUSION ........................................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*AZ v. Shinseki*, 731 F.3d 1303 (Fed. Cir. 2013) ............................................................22

*Bassett, New Mexico L.L.C. v. United States*, 136 Fed. Cl. 81 (Fed. Cl. 2018) ............................4

*Chambers v. United States*, 417 F.3d 1218 (Fed. Cir. 2005) ...............................................4-5, 5, 7

*Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009) ..................................................25

*Dayley v. United States*, 180 Ct. Cl. 1136 (Ct. Cl. 1967) ...............................................17

*Foreman v. Dept. of the Navy*, CV 18-367 (TJK), 2019 WL 3767117 (D.D.C. Aug. 9, 2019)....17

*Heisig v. United States*, 719 F.2d 1153 (Fed. Cir. 1983) ..................................................20

*Holley v. U.S.*, 124 F.3d 1462 (Fed. Cir. 1997)...................................................24

*Ideker Farms, Inc. v. United States*, 146 Fed. Cl. 413 (Fed. Cl. 2020) ...................................17-18

*Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299 (Fed. Cir. 2008) ........................................8

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)......................................................9, 20

*LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995).................................................24

*Loeh v. United States*, 73 Fed. Cl. 327, *amended*, 74 Fed. Cl. 106 (Fed. Cl. 2006) ...................10

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..................................................25, 26, 27

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285 (Fed. Cir. 2012)..........17

*Real v. United States*, 906 F.2d 1557 (Fed. Cir. 1990)..................................................6

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed. Cir. 1988) ..................................4

*Roth v. United States*, 378 F.3d 1371 (Fed. Cir. 2004) ..................................................15

*Strickland v. United States*, 69 Fed. Cl. 684 (Fed. Cl. 2006) ...........................................15

*United States v. Carter*, 45 M.J. 168 (C.A.A.F. 1996)..................................................10

*Van Cleave v. United States*, 70 Fed. Cl. 674 (Fed. Cl. 2006) ...........................................15

*Vanalco, Inc. v. United States*, 48 Fed. Cl. 68 (Fed. Cl. 2000) ..........................................................4

*Verbeck v. United States*, 89 Fed. Cl. 47 (Fed. Cl. 2009)...............................................3, 16, 26, 27

*Walters v. United States*, 175 Ct. Cl. 215 (Ct. Cl. 1966)...............................................................18

*Ward v. United States*, 133 Fed. Cl. 418 (Fed. Cl. 2017)...............................................................16

*Woodward v. United States*, 871 F.2d 1068 (Fed. Cir. 1989) ........................................................24

*Zinermon v. Burch*, 494 U.S. 113 (1990) .......................................................................................26

## STATUTES

10 U.S.C. § 1201 ...............................................................................................................3, 4, 5, 19

10 U.S.C. § 1201(b)...................................................................................................................14, 16

10 U.S.C. § 1552(a) ...................................................................................................3, 8, 11, 15, 24

10 U.S.C. § 1552(f) ........................................................................................................................3, 11

10 U.S.C. § 1552(h)(2)(A) .................................................................................................................19

10 U.S.C. § 1552(h)(2)(B)............................................................................................15, 17, 19, 20

10 U.S.C. § 1552(g)(2) ...............................................................................................................17, 19

28 U.S.C. § 2501 ........................................................................................................................3, 5, 6

37 U.S.C. § 204(a) ...........................................................................................................................19

Fed. R. Evid. 803 ..............................................................................................................................22

## OTHER AUTHORITIES

Army Regulation 40-501(2007) .........................................................................................................13

Army Regulation 40-501(2019) .........................................................................................................13

Army Regulation 635-40, ¶ 2-12........................................................................................................7

Army Regulation 635-40, ¶ 4-1 .........................................................................................................11

Army Regulation 635-40, ¶ 4-2 ................................................................................. 8, 10

Army Regulation 635-40, ¶ 4-3 ................................................................................. 11

Army Regulation 635-40, § II .................................................................................... 13

Army Review Bds. Agency, *Disability Appeals* (Sept. 21, 2020, 9:26 PM) .................................. 8

A. M. Kurta, *Memorandum for Secretaries of the Military Dep'ts*, Office of the Undersecretary of Defense (2017) ........................................................................................... 23

## PRELIMINARY STATEMENT

Robert LaBonte, Jr., sustained a traumatic brain injury ("TBI") when he fell from a 30-foot guard tower while serving in the Army in Iraq, and he should have been medically retired from the Army because he was no longer medically fit for service. At that time, Mr. LaBonte suffered from what one of his medical examiners has called the most severe case of post-traumatic stress disorder ("PTSD") she has ever seen. Mr. LaBonte made many efforts to seek help and was entitled to evaluation in the Army's disability evaluation system and medical retirement. But the Army did not follow its own regulations and instead denied him appropriate processing. For over a decade, Mr. LaBonte has fought to obtain the benefits he has earned.

Mr. LaBonte petitioned the Army Discharge Review Board ("ADRB") and received clemency. He then petitioned the Army Board for Correction of Military Records ("ABCMR" or "Board") for relief beyond the ADRB's jurisdiction, namely medical retirement. But while reviewing the merits of his case, the Board has twice failed to consider all medical evidence on the record, including post-service evidence. Defending the Board, the government attempts to carve out nonexistent bars to Mr. LaBonte's claim and draws its own (flawed) *post hoc* conclusions from the evidence that the Board has not. The government even suggests, unlike the Board which has agreed that Mr. LaBonte has PTSD and TBI, that Mr. LaBonte's fall from a 30-foot guard tower and life-altering TBI is inconsequential. Def.'s Renewed Mot. to Dismiss ("Def. Br."), ECF No. 74, at 36 (saying Mr. LaBonte "makes much of the matter").

On remand, the Board has acted arbitrarily and capriciously, violated the substantial evidence rule, failed to comply with the remand order, and violated the Due Process Clause. Mr. LaBonte respectfully requests that this Court exercise its jurisdiction and grant him the relief he has long deserved but not received. In the alternative, if the Court finds it proper to remand the

case back to the Board, Mr. LaBonte respectfully requests that the Court issue specific instructions to ensure that the Board does not repeat its unlawful, arbitrary process again.

## FACTS

Mr. LaBonte deployed to Iraq in 2003, engaged in firefights with enemy combatants, manned guard towers, supervised prisoners of war, and served as a turret gunner on combat patrols. AR223-25. During this deployment, Mr. LaBonte fell out of a 30-foot guard tower. AR225, 817-18. Another soldier found Mr. LaBonte at the base of the tower, unconscious and bleeding from a deep laceration across his face and forehead, which another soldier confirmed Mr. LaBonte did not have prior to the fall. AR249-50, 817-18. Mr. LaBonte received basic first aid from the fellow soldier who found him and stitches at the local aid station. AR225, 818.

The Army, however, did not provide Mr. LaBonte with any further medical care for this head injury. AR106. He was never referred for Physical Disability Evaluation System ("PDES") processing as the law requires. AR168-71, 803. After his deployment, Mr. LaBonte sought help several times for the symptoms he was experiencing. AR802-08.

Mr. LaBonte has never challenged his court-martial conviction, though he did successfully challenge his court-martial *sentence*. In 2014, the ADRB relied on the Secretary of the Army's Article 74(b) clemency power to upgrade Mr. LaBonte's discharge status to "General, Under Honorable Conditions." AR326. At that point, Mr. LaBonte was freed of the punitive discharge status that would have prevented him from receiving retroactive medical retirement status from the ABCMR, and he applied to the Board for that relief. AR143-83.

Mr. LaBonte submitted to the Board extensive medical evidence, including the analyses of several doctors who had personally examined him, which confirm that his PTSD and TBI arose during the time of his service. Dr. Bandy Lee, who personally interviewed Mr. LaBonte,

AR191, wrote in her psychiatric evaluation of him that "back in 2005, when Mr. LaBonte's PTSD was at its peak, he suffered from the most severe case of PTSD I have ever seen." AR211. On remand from this Court, the Board again denied Mr. LaBonte's application, and again failed to engage with that evidence. AR2408-09. In the "Board Discussion" portion of the ABCMR decision, all of the evidence submitted by Mr. LaBonte, including the medical opinions of Drs. Mark Hall, Bandy Lee, and Sanjay Rathi—all of whom personally examined Mr. LaBonte—is reduced to a single phrase: "The Board considered the lay and medical evidence submitted by the applicant." AR2408.

## SUMMARY OF ARGUMENT

This Court has jurisdiction over this case because Mr. LaBonte filed a timely and nonfrivolous claim under 10 U.S.C. § 1201. Mr. LaBonte's claim is timely because "the first proper board to act" exception to the statute of limitations applies. 28 U.S.C. § 2501. His claim for retirement benefits is nonfrivolous because the Board has jurisdiction to grant Mr. LaBonte the relief he seeks. The Board has broad authority to correct errors and injustice under 10 U.S.C. § 1552(a); doing so in this case will not implicate the limitations specified in § 1552(f) on the Board's otherwise broad authority.

The Board provides its analysis in just four short paragraphs, despite its lengthy recitation of the procedural history of this case. Rather than engage with those facts, the Board ignores them, and has therefore once again failed to "consider[] all of the relevant evidence" and produce a decision that "establishes a rational connection between the facts found and the choice made." *Verbeck v. United States*, 89 Fed. Cl. 47, 62 (Fed. Cl. 2009) (internal quotation marks omitted). Before this Court, the government conducts *post hoc* rationalization to suggest the Court should mistrust and disbelieve Mr. LaBonte and his evidence—which the Board did not do. The Court

should disregard the government's new justification for the Board's decision, both because it is procedurally improper and because it misstates the extensive evidence from Army physicians and others about Mr. LaBonte's trauma and disabilities.

Finally, the Board violated Mr. LaBonte's due process rights by repeatedly ignoring the documentation he produced and refusing to analyze his evidence, denying him the meaningful process the Fifth Amendment requires.[1] Moreover, the Board violated Mr. LaBonte's due process rights by raising a much higher bar for him to clear than it has used to adjudicate claims by other, similarly situated veterans.

**ARGUMENT**

**I.    Standard of Review**

A motion to dismiss for a lack of jurisdiction must be denied if the plaintiff asserts facts that establish subject-matter jurisdiction "by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Bassett, New Mexico L.L.C. v. United States*, 136 Fed. Cl. 81, 84 (Fed. Cl. 2018). When, as here, the claim is attacked on facial grounds, this Court "must construe the allegations of the complaint favorably to the pleader." *Vanalco, Inc. v. United States*, 48 Fed. Cl. 68, 73 (Fed. Cl. 2000). Mr. LaBonte respectfully reincorporates the standard of review for the challenge to the administrative decision from his opening brief. Pl.'s Mot. for Judgment on Admin. Rec. ("Opening Br."), ECF No. 68, at 11-12.

**II.    This Court Has Subject-Matter Jurisdiction over Mr. LaBonte's Claim.**

Mr. LaBonte brought before this Court a timely, nonfrivolous claim under 10 U.S.C. § 1201. This Court therefore possesses jurisdiction. *Chambers v. United States*, 417 F.3d 1218,

---

[1] To the extent this Court determines that it previously dismissed the due process claim in Mr. LaBonte's original complaint, he reasserts it here based on the ABCMR's new decision on remand and to preserve his rights for appeal.

1223 (Fed. Cir. 2005) ("Here, [plaintiff] claims entitlement to military disability pay under 10 U.S.C. § 1201, a money-mandating statute.").

The government incorrectly argues that this Court lacks jurisdiction on two grounds. First, it wrongly contends that Mr. LaBonte's claim is untimely. Def. Br. at 16-17. Second, it mistakenly insists that Mr. LaBonte's claim is frivolous because he is categorically ineligible for retirement benefits and therefore neither the Board nor this Court can grant him the relief he seeks. *Id.*

Neither contention is meritorious. Mr. LaBonte petitioned the Board upon learning of the true extent of his condition and the corresponding legal remedies—which happened years after his discharge. Thus, under the "first proper board" rule, the statute of limitations accrued in 2017, when the Board issued its first decision. Moreover, Mr. LaBonte has established that he belongs to the class of servicemembers who can receive the relief he seeks, by virtue of his clemency. None of the procedural considerations the government raises bars Mr. LaBonte from retirement processing—a point Army leadership and the Board recognize. His claim is nonfrivolous.

### A. Mr. LaBonte's claim is timely.

Mr. LaBonte's claim accrued on October 19, 2017, when the ABCMR denied his disability retirement claim—the first time a competent board decided the claim. AR14. Mr. LaBonte filed in this Court on November 20, 2018, well within the six-year statute of limitations. 28 U.S.C. § 2501; Complaint ("Compl."), ECF No. 1. It is well-established that the ABCMR's decision, not a discharge, is the relevant date for statute of limitations purpose because the Board is "the first proper board to act" on the disability claim. *Chambers*, 417 F.3d at 1225. For a disability retirement claim under § 1201, the ABMCR proceeding "becomes

a *mandatory* remedy; without it, the case in this court would be dismissed as premature on the ground that the plaintiff did not seek or obtain a final decision within the administrative hierarchy." *Id.* As the *Chambers* Court further explained, "Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore ... no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act." *Id.* Thus, this suit is timely.

Contrary to the government's suggestion, there simply is no rule that Mr. LaBonte was required to seek a disability board review before being discharged. Def. Br. at 19-20. "[I]f the service member had neither requested nor been offered consideration by a retiring board prior to discharge, the later denial of his petition by the corrections board was the triggering event, not his discharge." *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990). There are narrow exceptions for when the military considers medical discharge but decides a medical board is not necessary: If so, it notifies the servicemember of that decision so that they have adequate notice of their potential right to disability pay. *Id.* at 1560-61 (describing cases). None of that happened here.

Although Mr. LaBonte certainly sought medical help prior to discharge, the government offers no evidence that Mr. LaBonte knew about the true extent of his disabilities upon discharge, let alone his entitlement to disability retirement. There is an important distinction between knowing one's symptoms and knowing one's "condition." Mr. LaBonte knew he was not well and sought help multiple times, but he never received an appropriate military medical evaluation or a proper diagnosis. AR800-05. His concerns were dismissed. *Id.* Even if Mr. LaBonte suspected that he was permanently disabled—again, he was not a medical expert and the military did not provide him with one—that does not mean he knew about his entitlement to

disability retirement pay. The Army's failure to provide Mr. LaBonte with the medical assistance and diagnosis he required cannot bar him from this Court.

Simply saying that Mr. LaBonte reported his medical symptoms to his superiors does not establish "sufficient actual or constructive notice of his disability," *Chambers*, 417 F.3d at 1226, let alone his knowledge of entitlement to disability retirement pay. In fact, the government's argument has been explicitly rejected by the Federal Circuit: "*Real* did not fashion a rule, as the government suggests, that a service member's claim accrues when he learns of his disabling condition, whether before or after discharge. Indeed, such a rule would be untenable." *Id.* at 1226 (citing *Real*, 906 F.2d at 1557). Thus, the "first competent board" rule applies, and this case is well within the six-year limitation.

Moreover, although Mr. LaBonte could not apply for retirement processing upon discharge—due to his punitive sentence at the time—he did not lose his eligibility to apply later, as explained in Section B below. *See* Army Regulation 635-40 (2006), ¶ 2-12. Once the medical examinations revealed the true nature and extent of his disability, he applied for an upgrade in a timely manner, obtained clemency, and petitioned the Board. Mr. LaBonte followed all procedural requirements, and thus, his claim is timely.

**B. Mr. LaBonte's claim is nonfrivolous.**

Mr. LaBonte is eligible to receive the disability retirement he seeks because his court-martial *conviction* is not dispositive. His court-martial *sentence* has been altered, making him eligible.

*a.   Mr. LaBonte's court-martial conviction is not dispositive.*

Mr. LaBonte's sentence at the time he applied for retirement benefits determined his eligibility: He was not "under sentence of . . . punitive discharge," and thus he was eligible for

7

retirement processing. Army Regulation 635-40, ¶ 4-2. This eligibility makes his retirement claim nonfrivolous and within both the Board and this Court's jurisdiction. *See Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits. A contrary rule would seriously undermine Congress's decision to vest the Court of Federal Claims with exclusive jurisdiction . . . .").

The Army has always agreed—and in public statements continues to agree—that the ABCMR has the power to grant retroactive medical discharge and retirement to a former soldier for whom the ADRB has already granted an upgrade from a bad conduct discharge made pursuant to a special court martial. In fact, it *recommends* that path to former soldiers in situations like Mr. LaBonte's: "[I]f you . . . received a Bad Conduct Discharge at a Special Court-Martial, it may be to your benefit to request ADRB review of your discharge before requesting [retirement claim] review from the ABCMR." Army Review Bds. Agency, *Disability Appeals* (Sept. 21, 2020, 9:26 PM), https://arba.army.pentagon.mil/disability-appeals.html. Only in this Court does the government suddenly take the opposite position.

Even in this very case, until coming to this Court, the Army had agreed that Mr. LaBonte was eligible to seek retroactive medical retirement and acted accordingly on multiple occasions. Deputy Assistant Secretary of the Army (Review Boards) Francine Blackmon exercised due discretion and directed the Office of the Surgeon General to proceed on the merits of Mr. LaBonte's retirement claim.[2] AR1; *see also* Transcript of Oral Arg. ("Oral Arg."), ECF No. 60,

---

[2] The government points out the Deputy Assistant Secretary's ("DAS") reference to an "administrative separation" in her directive to the Office of the Surgeon General. *See* Def. Br. at 9. Regardless of the characterization, the DAS had authority under 10 U.S.C. § 1552(a) to refer Mr. LaBonte's case back for further consideration and she did so. Moreover, at the time the DAS

at 40. Other Army executive officials and the Board itself acted on the merits as well, both in the original decision and after remand from this Court last year. AR1871, 2408-09. The Army did not doubt its jurisdiction over Mr. LaBonte's case or its ability to grant the relief Mr. LaBonte seeks, and its judgment about its own jurisdiction deserves deference; the government's jurisdictional stance, however, is merely a convenient litigation position that this Court should decline to adopt. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417, 2418 (2019) (noting that "*Auer* deference gives an agency significant leeway to say what its own rules mean" and that courts "should decline to defer to a merely convenient litigating position or *post hoc* rationalizatio[n] advanced to defend past agency action against attack") (internal quotation marks omitted). Notably, as this Court observed during oral argument, "no one within the [Army] chain of command has yet seen fit to correct" this official stance that the ABCMR has the power to grant Mr. LaBonte's application. Oral Arg. at 40.

There is a reason the Army never adopted the position the government now takes in this Court: It is wrong. The government's argument that Mr. LaBonte's court martial bars relief fails to understand the difference between a conviction and a sentence. The sentence is the only part that determines eligibility for disability evaluation. *See* Pl.'s Reply Brief in Support of Cross-Mot. For Judgment on the Admin. Record ("Pl.'s Reply Br."), ECF No. 56, at 5-6 (discussing distinction between a court-martial conviction and sentence). Consequently, Mr. LaBonte does not need his conviction set aside to receive the relief he seeks.

Mr. LaBonte's sentence has changed because of the ADRB's exercise of clemency. Clemency is more than an empty word on a piece of paper. It has power and consequences, as

---

reviewed Mr. LaBonte's request, his character of discharge was General, Under Honorable Conditions, which is an administrative sentence.

this Court has noted. *See, e.g.*, *Loeh v. United States*, 73 Fed. Cl. 327, 330, *amended*, 74 Fed. Cl. 106 (Fed. Cl. 2006) ("Other than requesting clemency, soldiers have no venue to appeal the loss of retirement benefits that result from the court-martial's sentence of a punitive discharge or dismissal.") (quoting Jeff Walker, The Practical Consequences of a Court-Martial Conviction, ARMY LAW 1, 12 (2001)). The government sidesteps and ignores Mr. LaBonte's clemency and its effect on his eligibility for retirement benefits.

The ADRB's clemency is the same—and has the same effect—as clemency through the military justice appeals system. *See* Opening Br. at 30-31 (discussing that ADRB's clemency authority is identical to the Secretary's Article 74(b) clemency power (and thus convening authority's power) under the Uniform Code of Military Justice). Thus, it matters not that Mr. LaBonte initially did not challenge his sentence before the convening authority. He later appealed to the ADRB for clemency and received it. Once granted, the clemency restored Mr. LaBonte to the class of servicemembers who can apply for retirement benefits under Army Regulation 635-40, ¶ 4-2. Thus, in effect, Mr. LaBonte is similarly situated with servicemembers who received a change of sentence through the convening authority and then applied for retirement benefits, which is permitted. *See, e.g.*, *United States v. Carter*, 45 M.J. 168, 168-69 (C.A.A.F. 1996) (noting that servicemember previously under punitive discharge applied for retirement benefits after change in sentence through convening authority).[3]

---

[3] Plaintiff's opening brief cited to the wrong opinion in the *Carter* case, but the quote presented there is accurate. *See Carter*, 45 M.J. at 168-69 ("On November 19, 1993, the convening authority changed the bad-conduct discharge to an additional 24 months' confinement. . . . On September 9, 1996, the Secretary of the Air Force approved appellant's application for immediate retirement in the grade of technical sergeant."). Opening Br. at 31. Counsel regrets any confusion or inconvenience this error has caused.

In short, Mr. LaBonte's conviction is not a bar to his claim because clemency restored his eligibility, giving both the ABCMR and this Court jurisdiction over this case.

> b. *The ABCMR has jurisdiction to correct errors and injustice, which in this case, does not implicate § 1552(f) or amount to "correcting" a court-martial record.*

Through 10 U.S.C. § 1552(a), Congress granted a broad power to the Board to correct "an error or remove an injustice," including through correcting military records when necessary. Then, in § 1552(f), Congress carved out a small sliver of that broad power as it relates to correcting "records of courts-martial and related administrative records." Section 1552(f) does not obviate the Board's broader obligation to correct errors and injustices, nor does it conflict with the relief Mr. LaBonte seeks. A DD-214 is not a court-martial record, nor is it a related administrative record. *See* Opening Br. at 32-33 (discussing statutory definitions for "record of court-martial" and "related administrative records"). Thus, to the extent retirement processing requires a change to Mr. LaBonte's DD-214, the Board is empowered to act under § 1552(a), without running afoul of § 1552(f)'s limitations.[4]

The government contends the Army could not have possibly medically retired Mr. LaBonte because Army Regulation 635-40, ¶¶ 4-1 and 4-3 explicitly prohibit servicemembers charged with an offense to undergo disability evaluation. Def. Br. at 22-23. But the government misconstrues Mr. LaBonte's claim and what that regulation prohibits. Paragraphs 4-1 and 4-3

---

[4] Plaintiff relies on § 1552(a), Army Regulation 635-40, and his clemency as the authorities that establish his eligibility to the relief he seeks. The government cites to a Department of Defense memorandum to discredit Plaintiff's view of the law. *See* Def. Br. at 26 n.4. However, this memorandum applies to clemency claims. Mr. LaBonte is not currently asking for clemency; he received it. Rather, he is asking for medical retirement processing. Even if the Court deems the memorandum applicable, it hardly precludes Mr. LaBonte's claim. Plaintiff highlights that the memorandum only explains what normally happens but does not create new limits on the Board's authority. The DAS, acting under the authority of the Secretary, has the power to make any exceptions necessary to correct an injustice.

apply to servicemembers who are *undergoing* a court martial. Mr. LaBonte has claimed that the Army should have medically retired him due to his service-related disabilities, but he does not claim the Army should have referred him to disability evaluation *while* he was being court-martialed. When Mr. LaBonte petitioned the Board, the court-martial process was long completed. So, this procedural bar does not apply to this case. Simply put, Mr. LaBonte petitioned the Board when he was not "charged" or "under a punitive sentence." Thus, Army Regulation 635-40 does not bar the Board from affording Mr. LaBonte a fair review of his case.

In short, this Court has jurisdiction over this case because Mr. LaBonte's claim is timely and nonfrivolous. This Court should deny the government's motion to dismiss.

### III.     The ABCMR's Decision is Arbitrary, Capricious, and Unsupported by Substantial Evidence, and Fails to Comply with this Court's Remand Order.

Mr. LaBonte should have been medically retired prior to his court martial and separation from the military. The ABCMR's decision not to grant him the medical retirement which he is owed was arbitrary and capricious: It ignored and mischaracterized evidence, including the Medical Evaluation Board's ("MEB") Narrative Summary, and instead impermissibly relied on a legally deficient medical advisory opinion and the discredited 2018 memorandum by Dr. Eric Doane. In its brief, the government now attempts to conduct its own impermissible *post hoc* rationalization of the ABCMR decision. Even if the Board had provided that analysis in its decision, the government's new rationale would also be arbitrary and capricious and lack in substantial evidence; it does not reflect the conclusions of a reasonable decisionmaker.

### A.   Mr. LaBonte should have been referred for disability evaluation, found unfit to serve, and medically retired. The Board is mandated to correct this injustice.

Had the Army followed its statutory and regulatory obligations during Mr. LaBonte's time in service, he would have been found unfit for service and medically retired by reason of

permanent disability. First, Mr. LaBonte should have been medically evaluated to determine his fitness for service. Army Regulation provides: "When a commander believes that a Soldier of their command is unable to perform the duties of their office, grade, rank, or rating because of physical disability, the commander will refer the Soldier to the responsible [Medical Treatment Facility] for evaluation." Army Regulation 635-40 (2006), § II. Mr. LaBonte asked for help and communicated his symptoms multiple times after his fall, so Army Regulation 635-40 required his chain of command to refer him to the Army PDES, but they did not. AR168-69 (Mr. LaBonte's 2015 brief to the ABCMR detailing his unfitness to serve).

If Mr. LaBonte had received the medical evaluation that Army regulations require, Army physicians would have deemed him unfit to continue serving under Army Regulation 40-501. Under this regulation, a finding of unfitness is warranted when conditions including mood disorders, cognitive disorders, and traumatic brain injuries "preclude[] or prevent[] successful performance of duty." Army Regulation 40-501, ch. 3-3 (December 14, 2007); *id.* ch. 3-30 (noting that "Traumatic Brain Injury" is a cause for referral to a MEB when symptoms such as "severe headaches" and "alteration of consciousness, speech, personality, or mental function" persist); *id.* ch. 3-32 (discussing mood disorders). Mr. LaBonte clearly met those standards and should have been referred to an MEB for evaluation and then to a Physician Evaluation Board ("PEB") for a finding of unfitness.[5] Mr. LaBonte has submitted competent medical evidence to establish his unfitness dating back to 2004. *See, e.g.*, AR184-213. Mr. LaBonte's symptoms of PTSD triggered by his combat experience, incapacitating anxiety attacks, and headaches made

---

[5] Under the current version of Army Regulation 40-501, Mr. LaBonte would similarly be eligible for retirement. A soldier may be found unfit for service if their medical conditions "[s]ignificantly limit or interfere with the Soldier's performance of their duties" and "[m]ay compromise or aggravate the Soldier's health or well-being if they were to remain in the military Service." Army Regulation 40-501 (2019), ¶ 3-1.

him unable to perform his duties of working convoy security, serving as a guard, and fighting in combat. AR169-71 (analyzing medical evidence).

Mr. LaBonte's Narrative Summary—which evaluates his condition at the time of his service against medical retention standards for fitness—is the most explicit evaluation of his fitness in 2004 and clearly says that he was "not deployable" and could not "[c]arry and fire [an] individual assigned weapon" or "[l]ive in an austere environment without worsening" his medical condition. Opening Br. at 15-16 (further detailing his PULHES code and other disabling medical conditions). When evaluating whether Mr. LaBonte met the retention standards of Army Regulation 40-501, the MEB physicians found that his PTSD, generalized anxiety disorder, major depressive disorder, and TBI *each* did "not meet retention standards." AR60-65.

Second, Mr. LaBonte should have been medically retired because, prior to separation, he had severe symptoms of PTSD, TBI, and major depressive disorder. AR172-77, 188-90, 200-01, 210-11, 772. Under 10 U.S.C. § 1201(b), medical retirement is warranted for a servicemember with a service-connected disability that is: 1) of "a permanent nature and stable"; 2) "not the result of the member's intentional misconduct or willful neglect" and "not incurred during a period of unauthorized absence"; and 3) severe enough to be considered at least 30 percent disabling under the Department of Veterans Affairs ("VA") Schedule of Rating Disabilities. Mr. LaBonte has submitted competent evidence that the Army would have rated him at least 70 percent for PTSD, associated anxiety, major depressive disorder, and overlapping or compounding TBI symptoms, and that he should be rated 90 percent under the VA Schedule of Rating Disabilities applied by the Board. AR173-78 (interpreting evidence from Drs. Mark Hall, Bandy Lee, and Sanjay Rathi), 188-90, 198-99, 210-11. It was clear at the time of separation that Mr. LaBonte's conditions were permanent and stable, not present upon his entry to service,

14

incurred through his combat in Iraq, and well over 30 percent disabling. *Id*. Had Mr. LaBonte been appropriately evaluated, he would have been medically retired under § 1201(b).

Mr. LaBonte thus met the standards for medical retirement during his service. The Army's failure to medically retire him is an error and injustice that the Board is statutorily mandated to correct. 10 U.S.C. § 1552(a). "[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate" and judicial intervention is warranted. *Strickland v. United States*, 69 Fed. Cl. 684, 699 (Fed. Cl. 2006); *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) ("[T]he Secretary and his boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief.").

**B. The ABCMR's decision to deny Mr. LaBonte medical retirement was arbitrary and capricious, ignored evidence, and failed to comply with this Court's remand order.**

This Court ordered the ABCMR to reconsider Mr. LaBonte's claim in light of all the available evidence, as required under 10 U.S.C. § 1552(h)(2)(B). Order, ECF No. 57, at 1. The Board has failed to do so. This Court should find the Board's decision arbitrary and capricious because it still "fails to consider an important aspect of [the] problem" and "offers an explanation for its decision that runs counter to the evidence" before it. *Van Cleave v. United States*, 70 Fed. Cl. 674, 679 (Fed. Cl. 2006). Judicial intervention is warranted where, as here, the Board has failed to "examine relevant data and articulate satisfactory explanations for their decisions." *Id.*

To summarize: The Board has ignored all evidence in favor of Mr. LaBonte's medical retirement except for one piece of evidence, the Narrative Summary, which it flatly mischaracterizes. Opening Br. at 16-19. The Board ignored evidence that Mr. LaBonte contemporaneously reported his PTSD symptoms to Army medical examiners and his superiors and post-discharge medical evidence confirming his conditions from Army, VA, and civilian

physicians. *Id.* at 13-15. The Board then inexplicably misconstrues and misinterprets the MEB's April 2, 2018 Narrative Summary, claiming it "appears based on the state of disabilities in 2018 and not prior to service separation in 2008," AR2409, even though the document expressly states that it seeks to "determine whether [disability evaluation system processing] was warranted at the time of separation." AR60. The Narrative Summary found that Mr. LaBonte failed to meet retention standards in "2003" because of his PTSD, generalized anxiety disorder, and major depressive disorder, AR62-64, and that he failed to meet retention standards in "2004" because of his TBI. AR65. The Board has not explained why it concluded that the MEB did not make the decision that it expressly made. AR2408-09. The Narrative Summary is the "heart of the disability evaluation system" and it is unreasonable to misconstrue it as the Board has. *See Ward v. United States*, 133 Fed. Cl. 418, 421 (Fed. Cl. 2017) (internal quotation marks omitted).

The government makes much of the fact that the Remand Results are 44 pages long and contain different sections. Def. Br. at 43-44. But the length of the Remand Results does nothing to overcome the Board's failure to "consider[] all of the relevant evidence." *Verbeck*, 89 Fed. Cl. at 62. The vast majority of the Remand Results merely reproduces records of past proceedings. AR 2371-2414. Only four paragraphs are devoted to analysis of the Board's reasoning. AR 2408-09. Contrary to the government's suggestion, simply reproducing a statement from Mr. LaBonte's counsel or summarizing evidence, AR 2372-2409, is not "discussion" sufficient to satisfy the Board's duty to actually consider and evaluate evidence. *See* Def. Br. at 41-43. Nowhere does the Board analyze its findings related to that evidence. The Board's four-paragraph analysis therefore fails to establish a "rational connection between the facts found and the choice made" and is arbitrary and capricious. *Verbeck*, 89 Fed. Cl. at 62.

The Board ignores, for instance, post-service evidence produced by "medical examiners who are personally familiar with the individual whose condition is under inquiry" which is "obviously . . . far preferable to those who did not have that opportunity and who rely on an incomplete knowledge of the written record." *Dayley v. United States*, 180 Ct. Cl. 1136, 1147-48 (Cl. Ct. 1967). The Board offers no explanation as to why it prioritized evidence of those unfamiliar with Mr. LaBonte over the evidence produced by those who personally examined him. It does not determine that Mr. LaBonte's evidence is unreliable. It simply sets aside, without explanation, the long list of evidence it has summarized and concludes without basis that there is no evidence supporting Mr. LaBonte's claim. AR2408-09.

Further, the government seriously misunderstands 10 U.S.C. § 1552(h) and (g) when it claims that those sections "do not apply to his claim." Def. Br. at 44. The government raised its argument that § 1552(h) does not apply to Mr. LaBonte's claim in earlier proceedings, Oral Arg. at 7, 15, and this Court has already held that Mr. LaBonte's claim falls under § 1552(h), Order at 1, because Mr. LaBonte is a former member of the armed forces challenging the Army's unlawful failure to discharge him when he became unfit to serve.[6] Pl.'s Reply Br. at 4. That holding is the law of the case, and "as a general rule, the law of the case doctrine prohibits a court from revisiting an issue once it has been decided in pending litigation." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1301 (Fed. Cir. 2012) (internal quotation marks omitted); *Ideker Farms, Inc. v. United States*, 146 Fed. Cl. 413, 419 (Fed. Cl. 2020) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same

---

[6] 10 U.S.C. § 1552(h) should be construed generously because when Congress codified that provision, it "incorporated" a broad 2014 memorandum from the Secretary of Defense "which directs that correction boards must fully and carefully consider every petition based on PTSD brought by each veteran and give liberal consideration to such claims." *Foreman v. Dept. of the Navy*, CV 18-367 (TJK), 2019 WL 3767117, at *9 & 9 n.8 (D.D.C. Aug. 9, 2019).

issues in subsequent stages in the same case."). The ABCMR also agreed in its most recent decision (issued in April 2020) that Mr. LaBonte's claim falls under § 1552(h). AR2409, 2411.

Even if this Court were to reconsider its earlier holding and find that § 1552(h) does not apply, § 1552(h) and (g) demonstrate the type of evidence that Congress had in mind for claims like Mr. LaBonte's: evidence from trained medical professionals. Section 1552(g)(2) demonstrates that, in cases involving PSTD and TBI, the most reliable evidence comes from medical professionals "with training on mental health issues associated with" those conditions. Without rationale or explanation, Dr. Denise Richardson (in her advisory opinion) and the Board have disregarded such evidence from Mr. LaBonte, including from private doctors and the Narrative Summary—all of which weigh in favor of Mr. LaBonte's claim—and instead relied on cursory conclusions from Dr. Doane, who lacks relevant training. AR7, 2432; Compl. at 23.

Contrary to the government's insistence, *Walters v. United States* is an apt comparison to this case. 175 Ct. Cl. 215, 225 (Ct. Cl. 1966). The government tries to distinguish *Walters* by highlighting that there, the plaintiff provided a medical opinion from a doctor who examined him prior to his separation, Def. Br. at 33 (quoting *Walters*, 175 Ct. Cl. at 219-20), but the *Walters* Court did not find that dispositive. *Walters*, 175 Ct. Cl. at 219-20. Rather, the *Walters* Court recognized that the "plaintiff's service medical records were critically inadequate" and found that the Board should have found him unfit prior to his separation despite "the fact that no definitive diagnosis was . . . rendered" until eight years after separation. *Id.* at 227. Similarly, Mr. LaBonte was not provided with appropriate medical care and evaluation of his TBI and PTSD (among other conditions) during his service. AR800-04. Moreover, Mr. LaBonte has provided the Board with his in-service records, which support his claim, including an October 2006 examination in which an Army physician recorded several of Mr. LaBonte's PTSD and TBI symptoms. Opening

Br. at 14; AR2067; *see also* AR772. In addition to the *Walters* Court's reasoning, the statutory and regulatory frameworks for liberal consideration support Mr. LaBonte's claim and make clear that the Board should have considered post-service evidence. Opening. Br. at 18. It is also arbitrary and capricious that the Board has applied a different standard to Mr. LaBonte's case than it has in other similarly situated cases, *see* Opening Br. at 28-29, and below discussion in Section IV.B.

The Board's decision is also improper because it again relies on the Doane memorandum, which this Court has previously discredited and the Board should have set aside. Order at 1. The government seeks to wave off Mr. LaBonte's concerns about the discredited Doane opinion by discounting the weight that the Board placed on it. Dr. Richardson's opinion, however, explicitly relied on the Doane memorandum. AR2432; Opening Br. at 8 n.1. In fact, *only* the Doane opinion is highlighted in the summary of what Dr. Richardson reviewed in her advisory opinion. AR2432. More substantively, the Board then replicated the improper analysis of the Doane opinion by considering only in-service medical records, when the law requires the Board to consider post-service records as well. 10 U.S.C. § 1552(h)(2)(A) (requiring the Board to review evidence from private providers and the Department of Veterans Affairs).

The Board's failure to correct its arbitrary and capricious analysis, and failure to consider substantial evidence, is a legal error this Court should remedy. The government claims that "Mr. LaBonte has not shown . . . the violation of a statute or regulation." Def. Br. at 32. To be clear, Mr. LaBonte has alleged plain legal errors: The Board has violated 10 U.S.C. § 1201 and 37 U.S.C. § 204(a) by rendering an arbitrary and capricious decision that failed to grant Mr. LaBonte medical retirement, and violated 10 U.S.C. § 1552(h) and this Court's remand order by failing to properly consider medical evidence. Order at 1; Compl. at 21.

**C.  The government comes to its own *post hoc* rationalizations of the evidence that it does choose to engage with, which are both impermissible and incorrect.**

Just as it makes new litigating positions to incorrectly argue the Board lacks authority to grant relief, *see supra* Section II.B, the government also creates new factual analysis throughout its brief, trying to explain away the Board's lack of reasoning. This amounts to a "'*post hoc* rationalizatio[n]'" that this Court should "decline to defer to." *Kisor*, 139 S. Ct. at 2417; Opening Br. at 36 (collecting cases). Even if this Court takes into account this *post ho*c analysis of the evidence, which it should not, the government's new analysis fails for two reasons. First, the government argues that each individual piece of evidence in Mr. LaBonte's favor is insufficient to show that Mr. LaBonte should have been medically retired. Def. Br. 4-6. That, of course, is not the standard. The relevant question is whether "*the conclusion being reviewed* is supported by substantial evidence" when considering "*all* of the competent evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Second, the government's proffered analysis is misleading and insufficient. Def. Br. at 4-6, 10-14, 31-37, 39-46.[7] The *totality* of the evidence in the record, properly considered, leads to just one conclusion: Mr. LaBonte was unfit to serve and should have been medically retired.

For example, the government tries to justify the Board's mischaracterization of the MEB Narrative Summary by saying it "*largely* [is] drafted in the present tense, and even refers to expected future developments." Def. Br. at 40 (emphasis added). That the document includes an

---

[7] The government pounces on a citation error in Mr. LaBonte's prior brief to suggest that Mr. LaBonte's post-service medical evidence "fails to live up to its billing," Def. Br. at 5 (citing Opening Br. at 14) but the record does contain the evidence as Mr. LaBonte characterized it. Mr. LaBonte intended to cite to the eight-page March 17, 2014 medical opinion from Dr. Lee. AR760-68. Dr. Lee's letter explains that it is "highly likely that [Mr. LaBonte] had both [major depressive disorder and PTSD] when he presented to the chaplain and then the Fort Hood Mental Health Clinic in 2004, and that these illnesses were not addressed." AR767. Counsel regrets any inconvenience or confusion the error may have caused.

evaluation of Mr. LaBonte's present and future symptoms does nothing to undermine the fact

that it *also* explicitly addresses the state of his disabilities at the time of his separation, and

concludes that Mr. LaBonte did not meet medical retention standards "at the time of separation"

due to his PTSD, generalized anxiety disorder, major depressive disorder, and TBI, conditions

which date back to "2003" and "2004," and that "it is unlikely that any further interventions for

these conditions would have returned the service member to duties consistent with [his] rank and

[Military Occupation Specialty]." AR60-65.

The government also attempts to make something of the fact that Army and VA reports

opining on the severity of Mr. LaBonte's conditions "did not find him unfit." Def. Br. at 5. But

this is a baffling argument because, as the government acknowledges, out of those entities "only

a Physical Evaluation Board (PEB) 'will make the determination of fitness or unfitness.'" *Id.* at

16 (citing Army Reg. 40-501, ¶ 3-4). Mr. LaBonte was *denied access to* a PEB when Dr. Doane

abruptly ended the DES process with a memorandum that this Court has already found legally

deficient. Compl. at 18-21; Order at 1. The government cannot use the Army's failure to comply

with its own regulations and evaluate Mr. LaBonte's unfitness to avoid engaging with the

overwhelming competent evidence that Mr. LaBonte has provided.

The government also insinuates that other evidence would have been better, and that the

absence of the specific type of evidence the government prefers means that Mr. LaBonte is lying.

Def. Br. at 6, 13. This is not only insulting, it is nonsensical. For example, the government

bizarrely notes that Mr. LaBonte's wife "did not mention a head injury, a 30-foot fall, or any

mental health issues" in an October 2006 letter. *Id.* at 13. The fact that Mr. LaBonte's wife did

not communicate his injuries to the Army in this one instance—when there is plenty of other

evidence of his injuries—has no legal significance, and the Board did not analyze this itself or draw any conclusions from it in its own decision. AR2408-09.

Similarly, the government argues that there is a "lack of evidence from the court-martial process regarding the impact of his alleged unfitting conditions" (though, of course, the full record of the court martial is not in the record of this case) and suggests that the absence of his mental health being part of his defense strategy is evidence that he was not unfit. Def. Br. at 6. But the Board did not take this into account or mention it in its decision. AR2408-09. Nor should it, as the absence of evidence is not substantive evidence weighing against Mr. LaBonte's claim. Courts "refuse[] to admit evidence of the absence of a record to show that an event did not occur, where it was not reasonable to expect the event to have been recorded." *AZ v. Shinseki*, 731 F.3d 1303, 1316 (Fed. Cir. 2013) (discussing general common law and Federal Rules of Evidence); *see also* Fed. R. Evid. 803(7) (absence of evidence is only a hearsay exception if it is something that would be regularly recorded). The absence of a *litigating strategy*, which may have been chosen or avoided for any number of reasons, is even less probative. The Board did not, and cannot, reasonably draw any conclusions from that fact, and the government's new analysis would fail, even if the Board incorporated it.

Finally, the government questions Mr. LaBonte's fall from a 30-foot guard tower. The government suggests that by continuing to seek care and the benefits to which he is entitled and owed, Mr. LaBonte is "mak[ing] much of the matter" of his TBI and PTSD. Def. Br. at 36. But Mr. LaBonte's fall from a 30-foot guard tower in February 2004 has been corroborated by photographic evidence, AR2465, as well as sworn testimony from Mr. LaBonte's fellow servicemember, Mr. Brandon Delaune, who found Mr. LaBonte in a pool of his own blood after his fall, AR817. Similarly, fellow servicemember Mr. James Mastroianni testified that he saw

Mr. LaBonte's forehead before and after his injuries; Mr. Mastroianni is "positive" that Mr. LaBonte's injury caused his scar. AR249-50. Examinations by Army and civilian physicians alike confirm the relationship between Mr. LaBonte's fall and his symptoms. AR65, 184-90, 200-01, 213. The Board does not discuss any of that evidence or make an assessment as to its credibility. AR2408-09, 2432. The government's argument that "Mr. LaBonte does not even remember the incident," Def. Br. at 37, is particularly offensive given that, as the MEB recognized, "memory trouble" is one of Mr. LaBonte's long-standing TBI symptoms dating back to when he fell. AR65; *see also* AR203.

Beyond merely being legally irrelevant, the government's mischaracterization of Mr. LaBonte's fall and resulting TBI is a troubling effort to downplay the trauma and disability that he experienced—all while claiming the Board "gave Mr. LaBonte the benefit of any doubt concerning TBI and PTSD," Def. Br. at 48, and applied "liberal consideration." *Id.* at 45. In fact, the liberal consideration standard exists *precisely* to account for the difficulties that servicemembers with TBI and PTSD experience when documenting their symptoms. *See, e.g.*, A. M. Kurta, *Memorandum for Secretaries of the Military Dep'ts*, Office of the Undersecretary of Defense (2017) (noting mental health conditions "are some of the most difficult cases" to review because there are "frequently limited records . . . often through no fault of the veteran"). Mr. LaBonte is a former servicemember whose military career was cut short because he "developed a disability[] during service that rendered him no longer fit to serve." Def. Br. at 32. He should be granted the benefits and status as such.

The government's mischaracterizations of the evidence and misplaced arguments simply highlight that the Board's decision is not supported by substantial evidence and does not itself conduct the necessary analysis and articulation of its rationale. This Court's remand order

entitled Mr. LaBonte to review of his claims and medical evidence by the ABCMR—not to the *post hoc* review of the government during litigation. That the government has made its own flawed judgments of the evidence does nothing to change the fact that the Board's decision was arbitrary and capricious and failed to appropriately consider the evidence. The record does not contain substantial evidence to support the Board's decision, and this Court should grant judgment in Mr. LaBonte's favor on the record or, in the alternative, remand for a new decision that takes into account all available evidence as the law requires.

### IV. The Board's Decision Violates Mr. LaBonte's Due Process Rights Under the Fifth Amendment of the U.S. Constitution.

The Board's denial of Mr. LaBonte's claim is not just arbitrary and capricious (though it is), and it does not just violate this Court's previous order and 10 U.S.C. §1552 (though it does). It also violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

The government incorrectly argues that this Court lacks jurisdiction over Mr. LaBonte's constitutional claims, and indeed over any constitutional claims at all. Def. Br. at 45. This misstates the law. It is true that constitutional claims alone are not sufficient bases for jurisdiction in this Court because they are not money-mandating. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). But, as the government acknowledges, this Court does have jurisdiction over constitutional claims "where jurisdiction otherwise ha[s] been established." Def. Br. at 45; *see, e.g.*, *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) (finding that the Court of Federal Claims has ancillary jurisdiction over a constitutional claim when jurisdiction has been previously established over a Tucker Act claim); *Woodward v. United States*, 871 F.2d 1068, 1073 (Fed. Cir. 1989) (explaining that the Claims Court "was correct in holding that it had jurisdiction in a claim for money damages to consider [plaintiff's] allegation of violations of constitutional rights"). As discussed earlier, this Court does have jurisdiction

over Mr. LaBonte's Tucker Act claim that he should have been medically retired. Order at 1. It therefore has jurisdiction over Mr. LaBonte's constitutional claims as well.

Mr. LaBonte's claim falls squarely within the Fifth Amendment's Due Process Clause. Military disability retirement status and its corresponding benefits constitute a statutorily granted property interest that the government may not deny without due process. *See Mathews v. Eldridge*, 424 U.S. 319 (1976); *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009) (holding that veterans' "entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment").

The ABCMR's decision violates due process for two reasons. First, the ABCMR's repeated refusals to adequately consider the medical evidence Mr. LaBonte has proffered denies him the "meaningful" opportunity to be heard in an agency adjudication that the Due Process Clause demands. Second, the ABCMR's application of an entirely different presumption to Mr. LaBonte's case than it has applied to other similarly situated servicemembers demonstrates that Mr. LaBonte has not received the same process afforded to others.

## A. The ABCMR's persistent failure to consider the competent medical evidence violates the Due Process Clause by denying him an "opportunity to be heard at a meaningful time and in a meaningful manner."

The government's characterization of Mr. LaBonte's due process claim as merely a dispute over the Board opinion's "structure[]," Def. Br. at 46, obscures what his claim at its heart is really about: evidence. The Supreme Court has noted that one of the factors that contributes to the "fairness" and "reliability" of an administrative process used to determine whether a disabled claimant meets the requirements for a grant of benefits is whether the adjudicators consider evidence in the form of "unbiased medical reports by physician specialists . . . concerning a

subject whom they have personally examined." *Mathews*, 424 U.S. at 343-44. Mr. LaBonte has submitted copious evidence, but the Board considers none of it, as discussed earlier. AR2408-09.

The Fifth Amendment requires a hearing that is more than just technical adherence to a set of procedures. Rather, "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and *in a meaningful manner.*'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) (emphasis added). No presumption of deference "excuse[s]" the Board from "considering all of the relevant evidence and proffering an explanation that establishes a 'rational connection between the facts found and the choice made.'" *Verbeck*, 89 Fed. Cl. at 47 (quoting *Bowen v. American Hosp. Ass'n*, 476 U.S. 610, 626 (1986)). The twelve words offered in the Board's decision—"[t]he Board considered the lay and medical evidence submitted by the applicant"—do not even pretend an explanation that rationally connects the facts to the conclusion. AR2408.

What exactly does constitute proper due process is "flexible" and "varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Unlike some legal rules, [due process] is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews*, 424 U.S. at 334 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). The Supreme Court has identified three factors to consider when conducting a due process inquiry: "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The *Mathews* factors, applied to Mr. LaBonte's case, demonstrate that the ABCMR's failure to consider Mr. LaBonte's medical evidence violated his right to due process. First, the "private interest" at stake. "[T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process." *Id.* at 341. As Mr. LaBonte has demonstrated, he has suffered grave consequences from the decision that resulted from the Board's cursory treatment of the medical evidence: Even setting aside the direct consequences of his injuries, Mr. LaBonte has lost out on tens of thousands of dollars in back pay and retirement benefits, AR101—exactly the sort of "deprivation" the Court considered in *Mathews*.

Second, Mr. LaBonte is at severe "risk of an erroneous deprivation." *Mathews*, 424 U.S. at 335. It should be evident that the Board's procedure—including ignoring the evidence in Mr. LaBonte's Narrative Summary both before and after remand, failing to consider copious additional medical evidence, and refusing to provide any "rational connection between the facts found and the choice made"—carried significant risk of erroneously depriving Mr. LaBonte of his retirement benefits. *Verbeck*, 89 Fed. Cl. at 62. At each turn, the Board has neglected to consider the evidence that would have demonstrated that Mr. LaBonte was indeed eligible for medical retirement, which resulted in a decision untethered from the facts that erroneously deprived Mr. LaBonte of substantial benefits and back-pay.

Third, the government has no interest in failing to examine Mr. LaBonte's evidence thoroughly. *Mathews*, 424 U.S. at 335. The Supreme Court has noted that the government's interest "in conserving scarce fiscal and administrative resources" must be considered. *Id.* at 348. But the Board would have incurred no immense cost in assessing the evidence Mr. LaBonte presented to it, and any burden to the Board does not outweigh the injustice of an erroneous

denial. This was not an instance of the government escaping a significant burden by cutting short an otherwise expensive and onerous process—the government simply neglected to consider the facts of the evidence before it or draw any rational conclusions from those facts.

The Board's decision fails the *Mathews* analysis: Mr. LaBonte had a great interest at stake, the Board's process increased the risk of an erroneous deprivation, and affording Mr. LaBonte due process would not have significantly burdened the government.

**B. The Board has capriciously denied Mr. LaBonte due process that it has afforded to other similarly situated servicemembers.**

The Board often offers proper due process to claimants—it just did not offer it to Mr. LaBonte. Indeed, the Deputy Assistant Secretary of the Army (Review Boards) Francine Blackmon, reviewing Mr. LaBonte's 2017 Board decision, at first did give him his procedural rights by referring him into the Integrated Disability Evaluation System ("IDES") because there was evidence that Mr. LaBonte was more than 30 percent disabled at the time of discharge. AR11. Then, however, Dr. Doane suddenly halted the proceedings and denied Mr. LaBonte the process he was due. AR3-8; Compl. at 18-20. This inappropriate action—different from the process provided similarly situated veterans—highlights the Due Process violation in Mr. LaBonte's case.

First, in ABCMR Proceedings, Docket No. 20150000040 (May 26, 2016),[8] a servicemember with a VA disability rating of 70 percent for PTSD and an ARBA Clinical Psychologist's opinion that the PTSD existed at the time of service received an IDES referral. Multiple medical professionals have concluded that Mr. LaBonte's PTSD existed during his service, yet the Board treated these cases entirely differently. The government obscures the point

---

[8] ABCMR decisions are available at https://boards.law.af.mil/ARMY_BCMR.htm.

by conflating discharge reason and eligibility for IDES, Def. Br. at 46, but Mr. LaBonte does not aim to overturn or expunge his conviction; he merely seeks to be granted the same process and measured by the same standards as other servicemembers.

Second, in ABCMR Proceedings, Docket No. 20080000492 (Aug. 12, 2008), the Board decided that, "as a matter of equity," a servicemember who had not presented sufficient evidence should, nevertheless, undergo MEB and PEB processing. Regarding this case the government again raises irrelevant dissimilar factors. Def. Br. at 46-47. The government is correct that the servicemember in question sustained a limb injury rather than a brain injury, but there is more to the story that the government has excluded: The servicemember became addicted to pain medication used to treat the injury, failed to report for duty, and was discharged for non-participation. And despite the insufficient evidentiary record, in this case, the Board ruled that "the applicant should be provided a complete medical examination to determine if he was qualified for severance pay or disability retirement." *Id*.

In a third case, ABCMR Proceedings, Docket No. 20150011462 (May 12, 2016), the Board granted an MEB simply because there was "*some indication* that [the servicemember's] condition interfered with the performance of her duties," though there was "no record to show a medical board determined any medical condition failed retention standards and was unfitting." (Emphasis added). Had the Board applied this same bar to Mr. LaBonte—who submitted significant evidence from medical personnel who had personally examined him, and whose Narrative Summary concluded that he was medically unfit for service—he would certainly have cleared it. But the Board did not apply the same standard.

Fourth, in ABCMR Proceedings, Docket No. 20140000675 (Oct. 7, 2014), the servicemember lacked service-connected awards for adjustment disorder and PTSD that would

have supported MEB/PEB submission, and yet was submitted just the same, while Mr. LaBonte was not. "There is insufficient evidence," the Board concluded in this case, "to definitively show that the decline in [the servicemember's] performance was a direct result of PTSD; however, *this possibility cannot be ruled out*." (Emphasis added). Yet again, the Board granted MEB/PEB submission on the basis of nonconclusive evidence because it was "available." *Id*. It did not do so for Mr. LaBonte.

Because the Board persistently failed to consider Mr. LaBonte's relevant medical evidence and because it declined to assess Mr. LaBonte's case by the same standard it uses in other cases, the ABCMR violated Mr. LaBonte's due process rights under the Fifth Amendment.

## CONCLUSION

For these reasons, Mr. LaBonte respectfully requests that this Court deny the government's motion to dismiss and grant Mr. LaBonte medical retirement status, or in the alternative, remand this case for appropriate disability evaluation proceedings. This Court has jurisdiction to grant Mr. LaBonte the relief he is entitled to but has long been denied. The Board has failed to consider all competent evidence before it once again and has subjected Mr. LaBonte to a process that looks nothing like what similarly situated servicemembers are granted. This Court should draw on its power to remedy this injustice once and for all.

Dated: September 23, 2020.        Respectfully submitted,

<u>/s/ Renée Burbank</u>
Lernik Begian, Law Student Intern
Alexander Fischer, Law Student Intern
Casey Smith, Law Student Intern
Renée A. Burbank, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
Yale Law School[*]
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
Fax: (203) 432-1426
renee.burbank@ylsclinics.org
*Counsel for Plaintiff*

[*]This brief does not purport to represent the views of Yale Law School, if any.