No. 18-1784C
(Judge Hertling)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROBERT J. LABONTE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT KIRSCHMAN, JR
Director

DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:

MAJOR NICHOLAS D. MORJAL
Litigation Attorney
United States Army
U.S. Army Legal Services Agency

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7788
Fax: (202) 305-7644

October 8, 2020

Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

      I.      Mr. LaBonte's Response On The Jurisdictional Issues Undermines
              His Assertions Regarding His Fitness For Duty, And Misinterprets
              The Relevant Legal Framework That Disqualified Him From
              Disability Processing And From Receiving The Disability
              Retirement He Seeks ...................................................................................2

      II.     Mr. LaBonte Has Failed To Prove That He Had An Unfitting Condition..............8

CONCLUSION.....................................................................................................................19

## TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE(s)**

*Arens v. United States*, 969 F.2d 1034
(Fed. Cir. 1992). .................................................................................................. 8

*Balboa Ins. Co. v. United States,*
778 Fed. 2d 1158 (Fed. Cir. 1985)...................................................................... 16

*Blum v. United States,*
231 Ct. Cl. 739 (1982) ........................................................................................ 13

*Chambers v. United States,*
417 F.3d 1218 (Fed. Cir. 2005)................................................................ 2, 3, 10, 13

*Clayton v. United States,*
225 Ct. Cl. 593 (1980) ........................................................................................ 8

*Consolidated Edison Co. of N.Y. v. NLRB,*
305 U.S. 197 (1938) ............................................................................................ 11

*Dickinson v. Zurko,*
527 U.S. 150 (1999) ............................................................................................ 11

*Dodson v. U.S. Gov't, Dep't of Army,*
988 F.2d 1199 (Fed. Cir. 1993). ......................................................................... 8

*Fulbright v. McHugh,*
67 F. Supp. 3d 81 (D.D.C. 2014) ........................................................................ 9

*Grieg v. United States,*
640 F.2d 1261 (Ct. Cl.1981). .............................................................................. 8

*Heisig v. United States,*
719 F.2d 1153 (Fed. Cir. 1983)........................................................................ 8, 11

*Krauss v. United States,*
40 Fed. Cl. 834 (1998) ........................................................................................ 13

*Real v. United States,*
906 F.2d 1557 (Fed. Cir. 1990)......................................................................... 2, 3

*Riser v. United States,*
97 Fed. Cl. 679 (2011) ........................................................................................ 11

*Sabree v. United States,*
90 Fed. Cl. 683 (2009) ........................................................................................ 2

*Skinner v. United States,*
   594 F.2d 824 (Ct. Cl. 1979) ........................................................................ 8

*United States v. Carter,*
   45 M.J. 168 (C.A.A.F 1996) ....................................................................... 6

*Zavislak v. United States,*
   29 Fed. Cl. 525 (1993) ................................................................................ 16

**STATUTES**

10 U.S.C. § 1201(b) .......................................................................................... 15

10 U.S.C. § 1552 ....................................................................................... *passim*

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROBERT J. LABONTE,                    )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )          No. 18-1784C
                                      )          (Judge Hertling)
THE UNITED STATES,                    )
                                      )
          Defendant.                  )

## DEFENDANT'S REPLY

Defendant, the United States, respectfully submits this reply to the response and reply of plaintiff, Robert J. LaBonte, to our renewed motion to dismiss and our cross-motion for judgment on the administrative record (cross-motion), challenging the remand redetermination (Remand Results) of the Army Board for Correction of Military Records (ABCMR or board).

## INTRODUCTION

In his response, Mr. LaBonte provides no basis to overturn the board's decision to deny his request for medical retirement. As the ABCMR succinctly explained, "[t]he mere presence of a medical impairment does not in and of itself justify a finding of unfitness." AR2411. Rather, "[a] Soldier is physically unfit when a medical impairment prevents reasonable performance of the duties required of the Soldier's office, grade, rank, or rating." AR2412. Mr. LaBonte fails to establish that he had a medical impairment that was *unfitting*. This is a fatal flaw in his case.

Mr. LaBonte was required to prove his claims with actual evidence and he has failed to do so. Mr. LaBonte's sweeping allegations and speculation do not satisfy that obligation. Because Mr. LaBonte has not established that he was medically unfit – as he must – the ABCMR's decision on remand must be sustained, his motion must be denied, and our cross-

motion must be granted.  Because we previously have addressed Mr. LaBonte's claims at length, we do not repeat all of our prior points below, but focus on the points that Mr. LaBonte addresses in his reply that require additional discussion.

## ARGUMENT

I.  **Mr. LaBonte's Response On The Jurisdictional Issues Undermines His Assertions Regarding His Fitness for Duty, And Misinterprets The Relevant Legal Framework That Disqualified Him From Disability Processing And From Receiving The Disability Retirement He Seeks**

Before addressing the merits, we briefly address Mr. LaBonte's jurisdictional arguments.

We previously challenged the timeliness of Mr. LaBonte's claim.  Mr. LaBonte seeks to avoid the Court's six-year statute of limitations by arguing that the ABCMR's decision, not his discharge, is the relevant date for statute of limitation purposes, because he allegedly did not have "sufficient actual or constructive notice of his disability" or know "the true extent of this disabilities upon discharge," or of his alleged entitlement to medical retirement.  *See* Pl. Resp. Br. 6-7. That Mr. LaBonte now downplays the seriousness his conditions actually undermines his argument that the Army should have uncovered his condition and found it to be unfitting *prior to* his discharge.  We rebut Mr. LaBonte's merits argument in Point II below.

With respect to the timeliness issue, we argued that Mr. LaBonte had sufficient actual or constrictive notice of his claim during service and that unlike the typical case, Mr. LaBonte cannot invoke the first competent board rule because, while a "a claim for disability retirement pay generally does not accrue until an appropriate military board denies the claim in a final decision, or refuses to hear the claim[,]" *see Sabree v. United States,* 90 Fed. Cl. 683, 694 (2009) (citing *Chambers v. United States,* 417 F.3d 1218, 1224 (Fed. Cir. 2005) (citing *Real v. United States,* 906 F.2d 1557, 1562 (Fed. Cir. 1990)), the ABCMR was not an appropriate board in light of Mr. LaBonte's court-martial conviction and discharge.  *See* Def. XMOT 20-21. This is

because the ABCMR was not statutorily authorized or competent to "correct" his record to remove documentation pertaining to his court-martial, or to "correct" his DD 214 to show that "he was retired due to physical disability[,]" *see* AR86, the latter of which goes to the heart of the relief that he requests in this action.  See 10 U.S.C. § 1552(f); *Chambers,* 417 F.3d at 1224 ("decision by the first *statutorily authorized board* that hears or refuses to hear the claim invokes the statute of limitations") (citing *Real,* 906 F.2d at 1560) (emphasis added).

Mr. LaBonte asserts that there is no requirement that he seek a disability review board before his discharge, which is an argument that we are not making.  *See* Pl. Br. 6 (citations omitted).  Rather, our point is that if Mr. LaBonte's claim accrued when he was discharged for the reasons discussed at length in our prior motion to dismiss and subsequent briefings, he cannot invoke the first competent board exception.  Mr. LaBonte's argument is a red herring.

Mr. LaBonte also asserts that "[t]he Army has always agreed . . . that the ABCMR has the power to grant retroactive medical discharge and retirement to a former soldier" who was discharged as a result of a special court-martial.  Pl. Br. 8.  Mr. LaBonte once again misunderstands our argument.  In our opening brief, we observed that the board, in its October 19, 2017 decision – which was the subject of the pre-remand proceedings in this action – concluded that it was statutorily "not empowered to set aside a conviction" and thus could not order him medically retired.  Def. XMOT 9-10 (quoting AR115 ¶ 12 (citing 10 U.S.C. § 1552)).  And the board also concluded that because Mr. LaBonte's "discharge resulted from his court-martial conviction, he [was] ineligible for processing through the" Physical Disability Evaluation System (PDES) "for possible medical retirement" and, as a result, there was "no basis to amend [his] DD Form 214 by changing the reason and authority for separation."  Def. XMOT 9-10 (quoting AR115 ¶¶ 12-13).

3

In the Remand Results, the board likewise noted that Mr. LaBonte "was ineligible for referral into the Disability Retirement System ("DES") because he was charged with a defense under the Uniform Code of Military Justice (UCMJ) that could, and did, result in a punitive discharge[.]" AR2408 ¶ 3. In addition, the board recognized the limitations on its authority imposed by 10 U.S.C. § 1552(f) and Army Regulation 23540 ¶¶ 4-1 & 4-2. AR2410 ¶ 1; AR2411-AR2412 ¶ 3(d)-(e). These decisions, especially read together, do not support Mr. LaBonte's argument that the board's authority is undisputed.

Mr. LaBonte's reliance on an Army Review Board Agency website get him nowhere. *See* Pl. Br. 8. The board's authority is established by the relevant statutory and regulatory framework, and Mr. LaBonte has failed to show that this can be supplanted by a statement on a website. Further, the statement relied on by Mr. LaBonte merely explains that the Army Discharge Review Board (ADRB) lacked authority to change a non-disability separation into a disability retirement or separation, or to grant a higher disability rating, and simply suggests that if a former service member had been administratively discharged or received a bad conduct discharge pursuant to a special court-martial, "it may be to your benefit to request ADRB review of your discharge before requesting review from the ABCMR." Army Review Bds. Agency, *Disability Appeals* (last visited October 5, 2020), https://arba.army.pentagon.mil/disability-appeals.html). Mr. LaBonte severely overreaches in suggesting that this statement means that the ABCMR has authority to grant him disability retirement. Further, the words "retirement claim" are not contained in the sentence that Mr. LaBonte cites, which is why he encloses those words in brackets  *See* Pl. Mot. 8. This further undermines his argument.

Mr. LaBonte's related argument that the Deputy Assistant Secretary allegedly "exercised due discretion" by referring his claim to the Office of the Surgeon General is likewise

4

unfounded.   Pl. Mot. 8-9. We previously  established  that the referral, on its face, was based on

the mistaken  understanding  that Mr. LaBonte's discharge  was an "administrative  separation,"

and Mr. LaBonte's related  argument  that this Army's subsequent  processing  of his claims  based

on the mistaken  referral rises to the level of an agency's  interpretation  of its own rules that must

be afforded deference,  is unsupportable  and defies logic.   *See* Pl. Br. 8-9; AR81 ¶ 2.b.

In his response, Mr. LaBonte  also contends  that his court-martial  conviction  does not

preclude  him from being referred  for disability  processing.   *See* Pl. Resp. 11-12. The relevant

regulation,  which the board cites in its Remand Results,  states:

> **Soldiers charged  with an offense**
>
> *a. Uniform Code of Military Justice action.* The case of a
> Soldier charged  with an offense  under the Uniform  Code of
> Military  Justice  (UCMJ) or who is under investigation  for an
> offense  chargeable  under the UCMJ which could result in
> dismissal  or punitive  discharge,  may not be referred  for, or
> continue,  disability  processing  unless—
>
> (1) The investigation  ends without  charges.
>
> (2) The officer  exercising  proper court-martial
> jurisdiction  dismisses  the charges.
>
> (3) The officer  exercising  proper court-martial  jurisdiction
> refers the charge for trial to a court-martial  that cannot
> adjudge  such a sentence.

Army Regulation  635-40 ¶ 4-1 (2006); *see also* AR2412-AR2413 ¶ d; USA XMOT 22-23.

Instead of showing  that he meets one of those conditions,  Mr. LaBonte  proposes a fourth

exception:  Because his "court-martial  process was long completed"  he no longer is "'charged'"

with an offense  "or 'under a punitive  sentence.'"  Pl. Resp. 12. Not only is Mr. LaBonte's fourth

condition  entirely  absent from the regulation,  it is the antithesis  of the exceptions  that actually

are stated.  In particular,  while the three stated exceptions  apply when a soldier obtains  a

favorable  outcome  (including  when a sentence  was adjudged  without  authority),  Mr. LaBonte  no

longer is "charged with the offense" or "under investigation" because he pled guilty and was convicted. Thus, Mr. LaBonte's proposed exception is inconsistent with the regulatory framework.

Mr. LaBonte's reliance on *United States v. Carter,* 45 M.J. 168, 168-169 (C.A.A.F 1996), is misplaced. First, *Carter* was not a disability retirement case. It involved a service member whose punitive discharge was commuted by the convening authority so that he could obtain *ordinary* military retirement benefits based on his total years in service (over twenty). *See id.* at 168-170. Thus, the regulatory prohibition above that prevented Mr. LaBonte from entering into IDES and continuing with *disability retirement* processing once he was charged with a UCMJ offense was not present in *Carter.* Second, Carter had already earned the ordinary retirement benefits at issue at the time of his court-martial, something Mr. LaBonte had not done – and could not do – once UCMJ charges were brought against him. *See id.* at 169 ("MSgt Carter was already retirement eligible before the commission of these offenses."). Therefore, Mr. LaBonte's reliance on *Carter* must fail.

In addition, in our opening brief, we argued that the board was precluded from changing records of Mr. LaBonte's court-martial by 10 U.S.C. § 1552(f), and that retroactively granting him the relief that he seeks would reflect that he was medically retired, as opposed to discharged pursuant to a court-martial, which effectively would change the records of his court-martial conviction and discharge, which is beyond the ABCMR's narrow authority relating to a court-martial under section 1552(f). *See* USA XMOT 17. Mr. LaBonte relies on the limited relief that the ADRB provided as the basis for medical retirement, but his argument depends on his being eligible for evaluation under Army Regulation 635-40 ¶ 4-1. *See* Pl. Resp. 9-13. As previously discussed, the regulation precludes such evaluation.

And Mr. LaBonte fails to otherwise establish that the ADBR's upgrade of his
"*characterization of service* to general under honorable conditions" permits him to be evaluated
for disability retirement and granted medical retirement he seeks. *See* AR647 (emphasis added);
*see also* Pl. Resp. 10. Mr. LaBonte fails to establish that the ADRB's decision is
indistinguishable to being granted clemency through the military justice appeals system, as he
claims. Indeed, the ADRB expressly confirmed that it "may not upset the finality of a court-
martial conviction[,]" that it "may only act to change the characterization of service[,]" and that
"[w]ith respect to a discharge adjudged by a special court-martial, the action of the ADRB is
restricted to upgrades based on clemency." AR331 ¶¶ 2-3. Mr. LaBonte seizes on the word
"clemency" but he fails to sufficiently explain how obtaining a service characterization upgrade
means that he was not discharged pursuant to a court-martial. Indeed, when the ADRB upgraded
Mr. LaBonte's characterization of service, it did not upgrade the narrative reason for his
discharge, which remained his court-martial. AR647 *see also* DD Form 214 (DD-214), AR637,
blocks 18, 22.b, 24, and 28. And the ADRB expressly noted that a "change in the reason for
discharge" was "not authorized under the Federal statute." AR641.

Further, while the ABCMR is empowered to change "any military record" to "correct an
error or remove an injustice" pursuant to 10 U.S.C. § 1552(a)(1), subsection 1552(f) provides
that "[w]ith respect to records of courts-martial and related administrative records," the board's
power is limited to (1) "correction of a record to reflect actions taken by reviewing authorities"
under the Uniform Code of Military Justice (UCMJ) or (2) "action on the sentence of a court-
martial for purposes of clemency." 10 U.S.C. § 1552(f).[1] The ADRB is not a reviewing

---

[1] Although the board is empowered to correct an "injustice" under certain factual
scenarios, even if Mr. LaBonte's case could fit under one of these narrow exceptions, which it
does not, the Court may review decisions by boards or service secretaries "for failure to correct

authority under the UCMJ and, as previously discussed, did not change the fact that Mr. LaBonte was discharged pursuant to a court-martial.

In sum, Mr. LaBonte's arguments should be rejected.

## II.   Mr. LaBonte Has Failed To Prove That He Had An Unfitting Condition

The standard of judicial review is narrow, and the Court does not function as a "super correction board." *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979). To the contrary, "'review of the administrative decision is limited to determining whether the . . . action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced.'" *Heisig* v. *United States,* 719 F.2d 1153, 1156 (Fed. Cir. 1983) (quoting *Clayton v. United States,* 225 Ct. Cl. 593, 595 (1980)). Mr. LaBonte does not come close to meeting that standard. As the ABCMR observed, "[t]he mere presence of a medical impairment does not in and of itself justify a finding of unfitness." AR2411. Only service members found to be "unfit" under are entitled to be retired or separated with disability benefits. DOD Instruction (DoDI) 1332.38 ¶ E3.P4.1. (November 1996) (Change 1, Jul. 2006). While Mr. LaBonte focuses mainly on his diagnosed medical conditions, he provides no convincing proof that he was unfit for duty. Thus, his claim necessarily fails.

Rather than establish that he had an unfitting condition, Mr. LaBonte treats that issue as a foregone conclusion. In lieu of evidence, Mr. LaBonte speculates about what allegedly "would

---

plain legal error committed by the military." *Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992); *Grieg v. United States*, 640 F.2d 1261, 1266 (Ct.Cl.1981)) (additional citation omitted). "Such legal error includes the military's 'violation of statute, or regulation, or published mandatory procedure, or unauthorized act.'" *Dodson,* 988 F.2d at 1204 (quoting *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979)). As we have demonstrated in our papers, Mr. LaBonte has failed to establish such error.

have" been found if he been medically evaluated for fitness during his service. *See* Pl. Reply Br. 12-13. Mr. LaBonte relies on a regulation that a commander who believes a soldier "is unable to perform the duties of their office, grade, rank or rating because of a physical disability" must be referred for evaluation. Pl. Resp. 13 (quoting Army Reg. 635-40 § II (2006)). But he offers nothing that establishes that he could not perform his duties.

The regulatory framework does not appear to be in dispute. *See* Pl. Resp. 13. The process begins when a soldier is referred for evaluation by a medical evaluation board (MEB) due to one or more medical conditions "which *may* render a soldier unfit for further military service and which fall below" required medical fitness standards. Army Reg. 40-501, ¶ 3-1, 3-4 (Jun. 2006) (emphasis added). "Possession of one or more of [the medical conditions]," however, "does not mean automatic retirement or separation from the Service." *Id.* ¶ 3-4. Rather, the next step in the process "consider[s] the results of the MEB, as well as the requirements of the soldier's [military occupational specialty], in determining fitness" or unfitness. AR 40-501, ¶ 3-4. This involves a "more thorough investigation into the nature and permanency of the servicemember's condition and makes independent findings as to whether the servicemember is fit for duty and qualifies for disability retirement." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 85-86 (D.D.C. 2014).

Mr. LaBonte does not engage the applicable standards, or provide evidence to back up his claim that he had a disability that left him unable to perform his duties and required him to be referred for evaluation. Mr. LaBonte instead relies primarily on the findings of the MEB narrative summary – prepared nearly a decade after he was discharged – which, in any event, "will not reflect a conclusion of unfitness." Army Reg. 645-40 ¶ 4.11(f). (2006) (noting that diagnoses in the MEB narrative summary "must not be qualified by such terms as 'unfitting,'

'disqualifying,' 'ratable,' [or] 'not ratable.'").  As we previously established, the narrative summary did not conclude that Mr. LaBonte was unfit when he was discharged.  *See* USA XMOT 39-41.  Rather, it expressly cautions that it "reflects the service-member's condition as of the date prepared as per available records."  AR66.[2]

This substantiates the board's finding that the draft MEB appears "based on the state of disabilities in 2018 and not prior to service separation in 2008."  *See* Pl. Br. 16.  Thus, Mr. LaBonte's entire argument that the board mischaracterized the narrative summary fails.  This presents a hurdle that Mr. LaBonte cannot overcome.  The narrative summary is the centerpiece of evidence that Mr. LaBonte cites to support his claim.  *See* Pl. Br. 16-19.  Indeed, Mr. LaBonte expressly asserts that the narrative summary "is *the most explicit evaluation of his fitness* in 2004[.]"  Pl. Resp. 14 (emphasis added).  Thus, Mr. LaBonte believes that the best evidence of his condition in 2004 is a document that assessed his condition as of 2018 and that by regulation does not determine fitness.  Regardless of his belief, however, the narrative summary does not establish that Mr. LaBonte was unfit while still in service.  Rather than address the deficiencies in his evidence head on, Mr. LaBonte proceeds as if they do not exist.  This is inappropriate and Mr. LaBonte's argument is invalid.

And even if Mr. LaBonte's reading of the narrative summary were not foreclosed by the document itself, and the legal framework that governs its use, there is no basis to overturn the board's reasonable conclusion that it related to his condition in 2018. The board's decision complies with the substantial evidence standard so long as a "'reasonable mind might accept'

---

[2] Indeed, Mr. LaBonte's argument demonstrates a fundamental misunderstanding of the military's disability evaluation process.  An MEB does not make fitness for duty determinations.  The Physical Evaluation Board (PEB) determines a service member's fitness for duty and entitlement to disability retirement after an MEB finds the service member might not meet military retention standards.  *Chambers v. United States,* 417 F.3d 1218, 1225 n.2 (2005).

[the] particular evidentiary record as 'adequate to support [the contested] conclusion.'"
*Dickinson v. Zurko,* 527 U.S. 150, 162 (1999) (quoting *Consolidated Edison Co. of N.Y. v.
NLRB,* 305 U.S. 197, 229 (1938)). "So long as the board considered the relevant evidence and
came to a reasonable conclusion, this Court will not disturb the board's decision." *Riser v.
United States,* 97 Fed. Cl. 679, 683-84 (2011) (quoting *Heisig,* 719 F.2d at 1157). Because the
board's conclusion was reasonable, it must be sustained, even if Mr. LaBonte had offered
another reasonable interpretation of the document, which, as already established, he has not.
This is especially true in this case where Mr. LaBonte challenges a fitness for duty
determination, because the Federal Circuit has noted that the "responsibility for determining who
is fit or unfit to serve in the armed services is not a judicial province[.]" *Heisig,* 719 F. 2d at
1156.

　　Beyond Mr. LaBonte's flawed use of the MEB narrative summary, he also fails to meet
other regulatory guidelines for determining fitness.  Most notably, Mr. LaBonte fails to identify
the appropriate duties that he was unable to reasonably perform – the very backbone of any
fitness determination.  He contends that he was unfit because his symptoms made him "unable to
perform his duties of working convoy security, serving as a guard, and fighting in combat." Pl.
Resp. 13-14. Further, he cites the narrative summary to support his contention that he "was 'not
deployable' and could not '[c]arry and fire [an] individual assigned weapon' or '[l]ive in an
austere environment without worsening' his medical condition." Pl. Resp. 14. However, the
alleged inability of a service member to "reasonably perform the duties of his or her office,
grade, rank, or rating" is not specific to an individual duty assignment. *See* DoDI 1332.38 ¶
E3.P3.2.1. The duties Mr. LaBonte describes are specific to an individual duty assignment, and
more specifically, a deployed duty assignment.

And apart from the fact that the narrative summary was referring Mr. LaBonte's condition approximately 10 years after his discharge, "deployability" is not crucial to fitness. *See* DoDI 1332.38 at ¶ E3.P3.4.1.3 (specifically addressing "[d]eployability," noting that the "[i]nability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will not be the sole basis for finding unfitness . . . ."). Even so, Mr. LaBonte has not established that he was "not deployable" when he was discharged. *See* Pl. Resp. 14. As we pointed out in our opening brief, the narrative summary states – in the present tense – that Mr. LaBonte "may not" "[c]arry and fire [an] individual assigned weapon (BH conditions)" or "[l]ive in an austere environment without worsening the medical condition (BH & TBI)." USA XMOT 40; AR61. Further, the narrative summary – as it is actually written, and referring to 2018 – opines that Mr. LaBonte is not deployable outside of the contiguous United States (OCONUS) "where definitive medical care is not available." USA XMOT 40 (citing AR61 (emphasis added)).

If that was not enough, Mr. LaBonte's own court-martial testimony about his deployability further rebuts his argument, as well as his contention, discussed further below, that his failure to raise his medical issues during his sentencing does not undermine his claim for medical retirement. During his court-martial sentencing proceedings, Mr. LaBonte provided an unsworn statement to the military judge, expressing that he was "eager to prove to [his] unit and all [his] fellow soldiers that [he] [was] worthy of the title 'Soldier' and worthy of their friendship once again." AR 1312-13. More specifically, he told the judge, "I know that if I'm allowed to remain in the Army, I will deploy again. I look forward to the opportunity to gain the trust and the respect as a Soldier . . ." AR 1313. Ultimately, Mr. LaBonte failed to identify the appropriate duties that he was unable to reasonably perform, and instead listed those of a specific

deployed duty assignment—which are not dispositive under the regulation and directly contradicted by facts in the record.

In fact, Mr. LaBonte's adequate duty performance actually contradicts his argument that he was unfit. *See* DoDI 1332.38 at ¶ E3.P3.3.3 ("If the evidence establishes that the Service member adequately performed his or her duties until the time the Service member was referred for physical evaluation, the member may be considered fit for duty *even though medical evidence indicates questionable physical ability to continue to perform duty*.") (emphasis added). This undermines Mr. LaBonte's position that he was unfit, as well as his argument, discussed further below, that the "absence of evidence is not substantive evidence" and is "legally irrelevant[.]" Pl. Resp. 21-22. Mr. LaBonte does not offer convincing evidence that his duty performance was inadequate at the time he claims he should have been referred to a MEB, which refutes his conclusory claims to the contrary. *See* Pl. Resp. 14-15.[3] In sum, this uncontroverted evidence of Mr. LaBonte's "'ability to perform so well militates against a conclusion of unfitness.'" *Krauss v. United States*, 40 Fed. Cl. 834, 841 (1998), *aff'd*, 185 F.3d 886 (Fed. Cir. 1999) (quoting *Blum v. United States*, 231 Ct. Cl. 739, 742 (1982)). *See also Chambers,* 417 Fed. Cir. at 1227 (due to plaintiff effectively performing his military duties, the Army correction board was correct in presuming he was fit for duty).

---

[3] Mr. LaBonte cannot reasonably rely on his court-martial misconduct to prove inadequate duty performance, as it was unrelated to any potential medical conditions he may have had at the time. *See* DoDI 1332.38 at ¶ E3.P3.3.4. ("Regardless of the presence of illness or injury, inadequate performance of duty, by itself, shall not be considered as evidence of unfitness due to physical disability unless it is established that there is a cause and effect relationship between the two factors."). As Mr. LaBonte explained to the military judge during his court-martial, the reason he was AWOL was to resolve "marital problems" and his wife's stress in dealing with his upcoming deployment. AR1311-12. This was corroborated by a letter from his wife. AR1338.

Moreover, even if Mr. LaBonte had identified relevant duties and provided competent evidence that he was failing to adequately perform them, specialized duties are subject to job reclassification or reassignment. *See* DoDI 1332.38 at ∥ E3.P3.4.1.4. ("For members whose medical condition causes a loss of qualification for specialized duties, [consider] whether the specialized duties comprise the member's current duty assignment; or the member has an alternate branch or specialty; or whether reclassification or reassignment is feasible."). Thus, even if Mr. LaBonte had particular specialized duties that he could not perform, he has provided no evidence that job reclassification or reassignment were unfeasible.

Given that the central issue is whether Mr. LaBonte had unfitting conditions, he spends remarkably little time addressing the issue. Indeed, while he cites to medical reports prepared years later, he primarily does so to support his argument that he had PTSD and TBI during service. *See* Pl. Resp. 2-3, 14-15. But the board did not deny that he had been diagnosed with those conditions, and that they were related to his service, but instead pointed out that the evidence did not establish that Mr. LaBonte "failed medical retention standards or had any unfitting conditions, to include PTSD or TBI, warranting a service separation/retirement prior to service separation." AR2408 ¶ 3.

Indeed, while expressly "acknowledging the diagnosed PTSD and TBI that existed prior to service separation and resultant mitigation of the misconduct by these conditions[,]" the board still concluded that "a preponderance of the evidence reflected that" Mr. LaBonte "met medical retention standards prior to service separation and referral into DES or disability separation/retirement was not warranted." AR2408-2409 ¶ 3. Yet, Mr. LaBonte barely addresses the issue of his fitness, other than his mistaken analysis of the narrative summary. While Mr. LaBonte argues that he "should have been medically retired because, prior to

separation, he had severe symptoms of PTSD, TBI, and a major depressive disorder,]" he cannot establish that he is entitled to medical retirement based on his conditions alone; he must establish that they were unfitting. Pl. Resp. 14.

And rather than point to evidence that proves his conditions were unfitting, Mr. LaBonte relies on his own conclusory assertion that "[i]t was clear at the time of separation that [his] conditions were permanent and stable, not present upon his entry to service, incurred through combat in Iraq, and were well over 30 percent disabling[,]" and he cites to documents that do *not* adequately back up his claim. Pl. Resp. 14-15. Mr. LaBonte also cites 10 U.S.C. § 1201(b), which provides that a service-member must have a 30 percent disabling condition to qualify for medical retirement, but again fails to establish that his conditions were unfitting, let alone that they qualified him for retirement, at the time of his discharge.

In his response to our cross-motion, Mr. LaBonte objects to our observation that he did not raise his medical issues during his sentencing hearing, notwithstanding his assertion that the Army should have uncovered his alleged unfitting medical conditions during his service. *See* Pl. Resp. 21-22. He similarly discounts that his wife did not discuss his medical issues, or his alleged fall from a 30-foot guard tower in an October 2006 letter that she wrote, stating that this one instance does not overcome "plenty of other evidence of his injuries[.]" Pl. Resp. 21-22. Mr. LaBonte contends that the lack of evidence should have no bearing on his case because "the absence of a litigating strategy, which may have been avoided or chosen for number of reasons" – and Mr. LaBonte does not explain that assertion – has little probative value. Pl. Resp. 22.

Despite his objection, it is reasonable to point out the absence of evidence to rebut Mr. LaBonte's claims. "Where the agency is entitled to exercise its discretion . . . great deference is to be given to its decisions, and the plaintiff has an unusually heavy burden of proof in showing

that the determination was arbitrary and capricious." *Zavislak v. United States,* 29 Fed. Cl. 525, 531 (1993) (citing *Balboa Ins. Co. v. United States,* 778 Fed. 2d 1158, 1164 (Fed. Cir. 1985)). In arguing that we cannot rely on his failure to raise his medical issues during his court-martial, Mr. LaBonte improperly seeks to shift the burden to the Government to disprove his claim.

And even assuming for the sake of argument that Mr. LaBonte were correct to assert that "the absence of evidence is not substantive evidence weighing against [his] claim" – and he is not correct – statements he made during his court-martial proceedings, as discussed above, actually provide *affirmative* evidence that rebuts his argument, and his claim that he should have been medically retired. *See* Pl. Resp. 12-13, 22.

Moreover, contrary to Mr. LaBonte's contention that the absence of evidence is not evidence, findings of fitness "will be made on the basis of objective evidence in the record as distinguished from personal opinion, speculation, or conjecture," and the "[b]enefit of unresolved doubt shall be resolved in favor of the fitness of the Service member under the rebuttable presumption that the member desires to be found fit for duty." *See* DoDI 1332.38, para E3.P3.6.1. Even viewed with liberal consideration, Mr. LaBonte's court-martial statements to the military judge alone foreclose any possibility that he desired to be found, or was, unfit for duty at the time.

Mr. LaBonte also objects to examining his claim that he fell from a 30 foot guard tower. *See* USA XMOT 36-37. But as we reasonably pointed out, the board expressly observed that there is "no documentation in the applicant's military service or medical records . . . which makes reference to [a] 30 foot fall from a guard tower or any subsequent medical treatment of his resultant injuries, including stitches or bed rest." AR2384 ¶ 10; *see generally* AR1366-1470; USA XMOT 36. Further, the record confirms that Mr. LaBonte had "very hazy memories of

what happened that night." AR800 ¶ 81; *see* USA XMOT 12. Similarly, a psychologist confirmed that "[Mr. LaBonte] does not remember what happened that caused the injury." *See* AR1362; *see* USA XMOT 12. And although Mr. LaBonte cited evidence that another soldier found him at the bottom of the guard tower unconscious in a pool of blood, and he was seen with a gash on his forehead, we pointed out the inescapable reality that this does not establish that he fell from the significant height of 30 feet from the guard tower, or eliminate other possible explanations, such as tripping and falling, or running into something. Pl. Br. 22-23 (citing AR217-218; AR249); *see* USA XMOT 37. Thus, Mr. LaBonte's contention that he fell 30 feet is a theory, not a proven fact, and does not establish that he was unfit even if correct.

Mr. LaBonte continues to object to the Army and board pointing out the fact that there were no witnesses that saw him fall 30 feet, he does not remember falling 30 feet and there is no other direct proof that he fell from 30 feet. *See* Pl. Resp. 22-23. Mr. LaBonte cites a photograph that he alleges corroborates his allegation, but the photograph only shows Mr. LaBonte's head injury and, consequently, does not prove that he fell from a 30-foot tower, as he asserts. Pl. Resp. 22 (citing AR2465). Nor does the rest of the evidence that Mr. LaBonte cites in his response establish a 30-foot fall. *See* Pl. Br. 22-23.

Although Mr. LaBonte's claims that it is offensive to point out that he does not remember the fall because his memory problems allegedly resulted from the fall, Mr. LaBonte has opened the door to that discussion by repeatedly referring to the alleged fall, including in the first sentence of his reply brief, to support his argument that he should have been medically retired. *See* Pl. Br. 1. Once again, Mr. LaBonte wants to have it both ways.

In any event, the board did not err in pointing out that Mr. LaBonte's in-service records did not substantiate that he fell from a 30-foot guard tower. AR2384 ¶ 10. And even accepting

that he did fall would not change the outcome of his case. The central issue is whether his conditions were unfitting.

In the end, Mr. LaBonte has failed to prove that he is unfit, and the board did not err in reaching finding that he failed to establish unfitness. Ultimately, Mr. LaBonte offers only speculation and conjecture. Mr. LaBonte has provided no basis to overturn the board's Remand Results.

Finally, Mr. LaBonte continues to press his due process claims, which we addressed in our opening brief. *See* USA XMOT 45-46. Mr. LaBonte continues to focus on the structure of the board's decision, elevating form over substance, and he continues to argue that the board did not consider all of the evidence, notwithstanding the board's exhaustive discussion of his evidence. Pl. Resp. 25-27. And Mr. LaBonte continues to rely on sweeping arguments that amount to little more than disagreeing with the board's conclusion and reweighing the evidence.

Mr. LaBonte's due process argument likewise fails to provide any basis to grant Mr. LaBonte relief. He discusses the same matters that we already have rebutted – his incorrect contentions that the board did not consider all the evidence and that had it done so, it would have granted him medical retirement. *See* Pl. Resp. 27-28. Missing from Mr. LaBonte's discussion, and from his response to our cross-motion in general, is any convincing argument that specific evidence that he alleges the board overlooked compelled the board to reach a different result than denying his claim. Pl. Resp. 27-28.

Mr. LaBonte also argues that the board violated his right to due process by treating him differently from other service members who allegedly were similarly situated. Pl. Resp. 28-30. Mr. LaBonte's argument, on its face, fails to establish that the service members were similarly-situated to Mr. LaBonte. Specifically, as we already have established, Mr. LaBonte was

precluded by regulation from participating in the disability evaluation system once the court-martial investigation and charges were initiated, he was convicted pursuant to his guilty plea, and he was discharged pursuant to his conviction (which he no longer can challenge). In addition, we previously established that three of the four administration decisions he cites do not establish disparate treatment, and Mr. LaBonte's discussion of ABCMR Docket No. 20150011462 (May 12, 2016) – does not contend that the service member was in the same posture, and had to overcome the same hurdles, as Mr. LaBonte. *See* Pl. Resp. 28-30; USA XMOT 46-47.

For these reasons, and for the reasons set forth in our opening brief, Mr. LaBonte's due process claims fail and must be rejected.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiff's motion, grant our cross-motion, and enter judgment in favor of the United States.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ *Douglas K. Mickle*
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:                          s/ *Richard P. Schroeder*

MAJOR NICHOLAS D. MORJAL            RICHARD P. SCHROEDER
Litigation Attorney                Trial Attorney
United States Army                 Commercial Litigation Branch
U.S. Army Legal Services Agency    Civil Division
                                   U.S. Department of Justice
                                   PO Box 480
                                   Ben Franklin Station
                                   Washington, D.C. 20044
                                   Tele: (202) 305-7788
                                   Fax: (202) 305-7643
                                   Email: Richard.Schroeder@usdoj.gov


Dated: October 8, 2020             Attorneys for Defendant